IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ENERGY TRANSFER EQUITY, L.P., and ENERGY TRANSFER PARTNERS, L.P., <br><br> Plaintiffs, <br><br> v. <br><br> GREENPEACE INTERNATIONAL (aka "STICHTING GREENPEACE COUNCIL"); GREENPEACE, INC.; GREENPEACE FUND, INC.; BANKTRACK (aka "STICHTING BANKTRACK"); EARTH FIRST!; and JOHN AND JANE DOES 1-20, <br><br> Defendants. | Case No. 1:17-cv-00173-CSM <br><br><br> **DEFENDANT GREENPEACE FUND, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS** |

Defendant Greenpeace Fund, Inc. ("GP-Fund") respectfully submits this Memorandum in Support of its Motion to Dismiss pursuant to Rule 12(b)(6).

GP-Fund moves for dismissal of the entirety of Plaintiffs Energy Transfer Equity, L.P. and Energy Transfer Partners, L.P.'s Complaint on the basis that there are not sufficient allegations of conduct committed by GP-Fund, and any ties alleged between GP-Fund and other alleged members of the enterprise are insufficient to state a claim upon which relief can be granted.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 1

This Brief serves to address the independent reasons why this Court should dismiss GP-Fund given Plaintiffs' failure to adequately plead *any* actionable conduct by GP-Fund.  In all other respects, however, GP-Fund refers the Court to the Greenpeace Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) and its Memoranda in Support.  GP-Fund fully joins the Greenpeace Defendants' Motion to Dismiss and supporting memorandum and incorporates it herein by reference.

## INTRODUCTION

As fully articulated in the Greenpeace Defendants' Memorandum in Support of their Motion to Dismiss, Plaintiffs' Complaint is an improper attempt to suppress First Amendment-protected, political speech through an unprecedented extension of federal racketeering law.  Plaintiffs base their claim of the existence of a "criminal enterprise" on nothing more than simple advocacy expressed by Defendants and others against Plaintiffs.  Allowing such claims to proceed would expand the Racketeer Influenced and Corrupt Organizations Act ("RICO") in an extraordinary fashion—federalizing common law defamation claims simply because such alleged defamatory remarks involved the use of mail or wire and bringing claims against a party that did not make any of the alleged defamatory statements.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 2

A different district court analyzing a strikingly similar attempt to bring civil RICO and Defamation claims against GP-Fund (and the other Greenpeace Defendants) dismissed that complaint for falling "far short" of the required pleading standard. *Resolute Forest Prod., Inc. v. Greenpeace Int'l*, No. 17-CV-02824-JST, 2017 WL 4618676 at *10-11 (N.D. Cal. Oct. 16, 2017). This Court should similarly dismiss Plaintiffs' claims.

Plaintiffs' Complaint, in an attempt to appear sufficiently pled, consists of 443 numbered paragraphs and attaches an appendix containing 238 separate statements purportedly made by Defendants and other members of an alleged criminal enterprise. It purports to state seven causes of action against all five named Defendants, including GP-Fund (as well as 20 currently unnamed Defendants): three counts allegedly arising under federal RICO, 18 U.S.C. Sections 1961-1968, one count brought under North Dakota's racketeering statute, N.D.C.C. Section 12.1-06.1-03(2), and claims of Defamation, Tortious Interference with Business, and Civil Conspiracy.

Despite the length of their Complaint, Plaintiffs fail to state a claim against GP-Fund under any of these theories. In their appendix of 238 separate allegedly defamatory statements made by Defendants or alleged non-party members of a "criminal enterprise", **Plaintiffs do not attribute a single statement to GP-Fund.**

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 3

These statements form the basis of all the claims brought by Plaintiffs.  Plaintiffs cannot plausibly state claims against GP-Fund without pleading any responsibility of GP-Fund for the alleged falsehoods published by third parties.

Plaintiffs try to tie GP-Fund to the allegations in the Complaint only by stating, without any support or specificity, that GP-Fund "authorized, underwrote, and facilitated GP-Inc.'s campaign against Plaintiffs" and "was actively involved in the operation, control, and planning of the campaign with GP-Inc. and other enterprise members."  (Complaint, ¶ 38(b)).

Plaintiffs admit that GP-Fund is a separate and distinct legal entity from GP-Inc.  (Complaint, ¶ 38(b)).  Plaintiffs do not make any allegations of a formal relationship between GP-Fund and any other Defendant or member of the alleged enterprise.  Even if Plaintiffs' theory was actionable, and it is not, it cannot extend liability to any organization loosely related to those committing criminal or fraudulent acts.  Absent any allegations of involvement in the allegedly criminal or fraudulent acts, Plaintiffs' Complaint cannot state a claim against GP-Fund.

Groundless RICO and defamation cases are ripe for early consideration and dismissal due to the stigma, high cost of litigation, and crippling effect on speech they inflict.  See *Williams v. Mohawk Indus.*, 465 F.3d 1277 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 4

GP-Fund cross references Section A(1) of the Greenpeace Defendants' Brief for additional arguments and citations of authority on the applicable pleading standard. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570). Of importance to the present Motion is the burden on Plaintiffs to plead allegations with the specificity required by Rule 9(b). RICO claims sounding in fraud, as Plaintiffs' claims do here, must meet the higher pleading standard required by Rule 9(b). *Murr Plumbing, Inc. v. Scherer Bros. Financial Services Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (citing *Flowers v. Continental Grain Co.*, 775 F.2d 1051, 1054 (8th Cir. 1985)); *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011).

## ARGUMENT

### I.   Plaintiffs have not Sufficiently Pleaded Claims against GP-Fund under Federal RICO.

Plaintiffs allege three federal RICO counts against GP-Fund in their Complaint. These are: Count I (for violation of Section 1962(c) pertaining to conducting an enterprise through a pattern of racketeering activity, ¶¶ 367-388), Count II (for violation of Section 1962(a) pertaining to investment of income derived from a pattern of racketeering activity, ¶¶ 389-396), and Count III (for

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 5

violation of 1962(d), conspiracy, ¶¶ 397-404).  The allegations specific to these three counts do not mention GP-Fund at all, referring merely to "Defendants".

In order to determine whether Plaintiffs have sufficiently alleged a case against GP-Fund pursuant to any of these three theories, one must search the first 366 allegations of the Complaint.  In doing so, GP-Fund finds only the following eight allegations made specifically against it:

(a) GP-Fund "falsely purports to be exclusively operated for a charitable purpose."  (Complaint, ¶ 38(b)).

(b) GP-Fund "collects 501(c)(3) tax exempt donations throughout the United States, including in North Dakota, and distributes those monies to GP-International in the Netherlands and GP-Inc. in the United States." (Complaint, ¶ 38(b)).

(c) GP-Fund "associate[s] in fact" with GP-Inc. "by publicly identifying themselves as 'Greenpeace USA,' and jointly planning, approving, directing, controlling, and funding GP-Inc.'s activities in the United States and by jointly funding and participating in GP-International's worldwide activities." (Complaint, ¶ 38(b)).

(d) GP-Fund "authorized, underwrote, and facilitated GP-Inc.'s campaign against Plaintiffs, published and republished the disinformation on its own webpages, and, along with GP-International, was actively involved in the operation, control, and planning of the campaign with GP-Inc. and other enterprise members."  (Complaint, ¶ 38(b)).

(e) GP-Fund's executive director Annie Leonard "directed and controlled the activities of GP-Inc., and Perry Wheeler and Mary Sweeters." (Complaint, ¶ 38(b)).

(f) GP-fund "benefitted from this participation by fraudulently inducing donations to itself directly that it used to sustain its continued operations, pay the salary of Annie Leonard and others, and fund even more fundraising for itself and GP-Inc."  (Complaint, ¶ 38(b)).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 6

(g) Annie Leonard "is the Executive Director of GP-Fund and GP-Inc. with responsibility for directing, operating, and managing the coordinated activities of these two organizations with each other, GP-Int., and the other regional Greenpeace organizations." (Complaint, ¶ 38(g)).

(h) GP Fund, joining other Defendants and enterprise members "sent letters to each of the seventeen banks financing DAPL, demanding that the banks immediately withdraw funding for the Project." (Complaint, ¶ 38(j)).

A RICO plaintiff must plead: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (i.e., predicate criminal acts). *Craig Outdoor Advertising, Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). Here, Plaintiffs have not plausibly pled that GP-Fund was part of any alleged enterprise or that GP-Fund was involved with any racketeering activity. Under *Iqbol* and *Twombly*, this Court must disregard all conclusory allegations before determining whether the remaining allegations are sufficient to plausibly state a claim. Here, there are no sufficient allegations on these points.

### a. *Plaintiffs have Failed to Plead a RICO Enterprise Involving GP-Fund.*

In order to maintain a RICO claim against GP-Fund, Plaintiffs must establish that GP-Fund "conducted or participated, directly or indirectly, in the conduct of such enterprises affairs through the pattern of racketeering activity." 18 U.S.C. §1962(c). When evaluating Plaintiffs' Complaint and the allegations made specifically against GP-Fund, it becomes clear that Plaintiffs' claims are

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 7

exclusively based on GP-Fund's relationship to other Greenpeace entities or employees rather than GP-Fund's own conduct.

A RICO "enterprise" can include "any union or group of individuals associated in fact." *United States v. Turkette*, 422 U.S. 576, 580 (1981).   An "association-in-fact enterprise must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprises' purpose." *Boyle v. U.S.*, 556 U.S. 938, 946 (2009).  The Supreme Court has held that in order to participate directly or indirectly in conduct of an enterprise's affairs within the meaning of the federal RICO statute, *one must have some part in directing the enterprise's affairs*.  *Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993).

To be determined to be "associated in fact," there must be "some sort of discrete existence and structure uniting the members in a cognizable group." *Nelson v. Nelson*, 833 F.3d 965 (8th Cir. 2016).  *See also Turkette,* 422 U.S. at 583 ("The 'enterprise' is not the 'pattern of racketeering activity'; it is an entity separate and apart from the pattern of activity in which it engages.")  Here, there are no allegations plausibly establishing the existence of any such "enterprise." (See the Greenpeace Defendants' Brief, Section A(3)(b)).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 8

Plaintiffs only allege in general terms that GP-Fund "authorized, underwrote, and facilitated GP-Inc.'s campaign against Plaintiffs," and "was actively involved in the operation, control, and planning of the campaign with GP-Inc. and other enterprise members." (Complaint, ¶ 38(b)). Such conclusory and threadbare allegations are insufficient as they provide no detail at all. Plaintiffs fail to plead any facts regarding whether and how GP-Fund was involved in planning the activities of the enterprise, what role in the campaign GP-Fund played, or what individuals are responsible for those activities. Plaintiff has not alleged that GP-Fund even knew about the alleged enterprise at all.

The 8th Circuit has held, in upholding the dismissal of a RICO complaint which fails to specify each defendant's particular role in the alleged civil RICO violations, that it is not sufficient to simply lump all defendants together to meet the pleading requirement of *Iqbal* and *Twombly*, much less the heightened requirements of Rule 9(b). *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011) (allegations that all defendants were associated with or participated in an enterprise insufficient); *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 815–16 (8th Cir.1992) (when the only allegation of an association in fact is their direct or indirect participation in the alleged unlawful or fraudulent activity, plaintiff cannot establish the existence of an enterprise).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 9

Here, all of the pertinent substantive allegations in the Complaint group all Defendants together.  When the Complaint does separate out each Defendants' actions, it becomes clear that GP-Fund's alleged role is insufficient to support its status as a member of the alleged enterprise.

"In order to participate, directly or indirectly, in the conduct of such enterprise's affairs, one must have some part in directing those affairs." *Reves*, 507 U.S. at 179.  A party will only meet the statutory requirement if they exert control over the enterprise such that they "conducted or participated in the conduct of the enterprise's affairs, not just their own affairs." *Id.* at 184-85.

Plaintiffs' Complaint alleges that GP-Fund raises money, shares a name, and donates money to GP-Inc., another alleged member of the enterprise.  It does not make any specific allegation regarding GP-Fund's participation, direction, or control of "the enterprise's affairs", what those affairs are besides the alleged advocacy campaign against Plaintiffs, or GP-Fund's knowledge of any such enterprise.

Simply having a business relationship with or performing valuable services for an enterprise, even with knowledge of an enterprise's illicit nature, is not enough to subject an individual to RICO liability.  *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997).  Here, there are no allegations of any illegal or illicit

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 10

conduct that the Greenpeace Defendants were engaged in or that GP-Fund would have had knowledge of, much less conduct that GP-Fund participated in as required to find it to be part of any enterprise.

Plaintiffs allege that GP-Fund funds some of GP-Inc.'s activities in the United States and that GP-Fund "underwrote" the campaign against Plaintiffs. (Complaint, ¶ 38(b)).  While there is an allegation that GP-Fund donates funds to GP-Inc. and GP-Int., there is no allegation that GP-Fund directs or controls how its donations are used or how any funds were used in connection with the alleged advocacy campaign against Plaintiffs.  Transferring money, without any role in directing an enterprise, is insufficient to sustain a RICO claim.  *In re: Mastercard Intl. Inc.*, 132 F. Supp. 2d 468, 487 (E.D. La. 2001), *aff'd,* 313 F.3d 257 (5th Cir. 2002).

Plaintiffs allege in a conclusory fashion that GP-Fund, along with GP-Int., "was actively involved in the operation control, and planning of the campaign with GP-Inc., and Perry Wheeler and Mary Sweeters."  This control was allegedly "exercised" through GP-Fund's executive director Annie Leonard, who also serves as executive director of GP-Inc.  Again, there is no information or allegations regarding GP-Fund's "active involvement" with any alleged campaign of the

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 11

enterprise or any allegation about Leonard's activities other than conclusory allegations.  This is not sufficiently pled.

Plaintiffs allege that GP-Fund "published and republished the disinformation on its own webpages."  Despite listing hundreds of specific publications of parties not even involved in this lawsuit, Plaintiffs do not list any example of such a publication or facts regarding GP-Fund's involvement in the creation and publication of such information.  Further, even if true, the fact that a charitable organization might share similar links or stories on its website or social media accounts as another organization with a similar mission does not create the existence of an enterprise under RICO.  *See Raineri Constr., LLC v. Taylor*, No. 4:12-cv-2297(CEJ), 2014 WL 348632, at *4  (E.D. Mo. Jan. 31, 2014) ("plaintiff must allege facts 'tending to make it plausible that the Court is confronted with something more than parallel conduct of the same nature and in the same time frame by different actors in different locations.'").

Alleging generally that GP-Fund was merely related to or contributed to an alleged enterprise is not enough.  "The mere use of the words 'conspiracy' and 'aiding and abetting' without any more explanation of the grounds . . . is insufficient."  *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010).

### b.  *Plaintiffs Allege No Sufficient Predicate Acts By GP-Fund.*

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 12

None of the claimed defamatory statements alleged to constitute mail or wire fraud by Plaintiffs are attributed to GP-Fund.  (Complaint, pgs. 153-166).

Only one allegation of a predicate act could be read to apply to GP-Fund. Following its listing of all alleged defamatory statements, the Complaint states, "[t]he Defendants have also processed millions of dollars in fraudulently induced donations over the wires in thousands of individual transactions" and that "[e]ach such transaction constitutes a predicate act."  (Complaint, ¶ 377).  Even this allegation does not mention GP-Fund by name or explain its supposed role in the alleged fraud.

Plaintiffs also do not explain what this purported fraud was and do not claim to be an injured party subject to any fraudulent solicitation.  As such, Plaintiffs would not have standing to state a claim arising from allegedly fraudulent solicitation committed by Defendants.  *Anze*, 547 U.S. at 459-460; see also *Kimberlin v. Natl. Bloggers Club*, 2015 WL 12426 (U.S.D.C. Maryland 2015) ("the direct victims of the mail fraud, wire fraud, and money laundering are the individuals who were induced into making donations . . . . these individuals may pursue their own remedies under the law.")  (See the Greenpeace Defendants' Brief at Section (A)(3)(e)((2))).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 13

Further, Plaintiffs have pleaded no information about any one of these thousands of individual transactions or about these transactions generally as to any of the Defendants, including GP-Fund.  Plaintiffs have not alleged any facts regarding (a) fraudulent statements made to potential GP-Fund donors; (b) statements GP-Fund made while fundraising; (c) what donors have been defrauded; (d) which donations have been fraudulently obtained; (e) an intent by GP-Fund to defraud donors; or (f) whether any donations have been used for any purpose other than as promised.

As this Court recently recognized in *Olin v. Dakota Access, LLC*, Case No. 1:17-cv-007 (Oct. 10, 2017), Rule 9(b)'s heightened pleading requirement requires more than simply conclusory allegations of fraud.  Plaintiffs must specify who made fraudulent statements, when they were made, what such fraudulent statements were, and to whom they were made.  *Id.* (citing *U.S. ex rel. Costner v. URS Consultants, Inc.*, 317 F.3d 883, 888 (8th Cir. 2003); *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007)).

Here, Plaintiffs' allegations are even more sparse than those of the Plaintiffs in *Olin*.  The Plaintiffs here have not even specified the factual circumstances of any one of the allegedly "thousands" of fraudulently obtained donations, including how GP-Fund "induced" such donations.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 14

The court analyzing the similar complaint brought in the *Resolute* case held that this identical allegation of  processing "millions of dollars in fraudulently induced donations over the wires in thousands of individual transactions" failed to meet the requirements of Rule 9(b) and did not put Defendants on notice of the particular misconduct alleged to have taken place.   *Resolute Forest Prod., Inc.*, 2017 WL 4618676 at *10.  This same allegation, now in this case, is still insufficient to put GP-Fund on notice of what conduct constitutes its alleged wrongdoing.

For the reasons more fully briefed in the Greenpeace Defendants' Motion to Dismiss, Plaintiffs' failure to articulate any facts relating to GP-Fund's involvement in any statements or other alleged wrongdoing means that Plaintiffs have not plausibly alleged that GP-Fund is involved in any of the predicate acts listed in their Complaint at Paragraphs 372-373.  GP-Fund specifically cross references Sections A(3)(a-f) of the Greenpeace Defendants' Brief for additional arguments and citations of authority regarding those issues.

For the foregoing reasons, Plaintiffs have failed to state a claim for any RICO violation against GP-Fund and these claims should be dismissed.

All of the remaining claims brought by Plaintiff are only claimed to be before this Court under 28 U.S.C. § 1367 pendent jurisdiction.  (Complaint, ¶ 27).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 15

Should the Court dismiss Plaintiffs' federal RICO claims, it may dismiss Plaintiffs' state law claims for lack of jurisdiction.

GP-Fund also provides the following brief arguments for dismissal of these claims on the merits.  Additionally, because Plaintiffs' federal RICO claims are based on alleged defamatory statements, the arguments regarding Plaintiffs' failure to plead defamation (including the lack of any facts to support a claim of actual malice necessary for such a claim) is relevant to defeat Plaintiffs' federal RICO claim in addition to the arguments briefed above.

## II.     Plaintiffs have not Sufficiently Alleged Claims against GP-Fund under North Dakota's RICO Statute.

Plaintiffs' claim against GP-Fund brought under the North Dakota RICO statutes should be dismissed for the same reasons that Plaintiffs' federal RICO claims should be dismissed.  Claims brought under the North Dakota's RICO statute still must be pled with particularity.  Plaintiffs' allegations under North Dakota's RICO statute closely track the allegations made under federal RICO. Importantly, there is no conduct attributable to GP-Fund.  The items identified above in connection with Plaintiffs' federal claims apply equally to bar Plaintiffs' state law claim.  *Neubauer v. FedEx Corp.*, 849 F.3d 400 (8th Cir. 2017).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 16

### III.   Plaintiffs have not Sufficiently Alleged Claims against GP-Fund under North Dakota Common-Law Defamation.

Plaintiffs' purported defamation claim (Complaint, ¶¶ 423-429) alleges generally that "Defendants" knowingly and intentionally published false and injurious statements about Plaintiffs.  Plaintiffs allege that these statements include six supposedly false categories of statements.  (Complaint, ¶ 424).  **Critically, absolutely no statements are alleged to have been made by GP-Fund.**

Only the party that takes a responsible part in publication of a defamatory statement can be held liable for its publication.  *Universal Commc'n Sys., Inc. v. Turner Broad. Sys., Inc.*, 168 F. App'x 893 (11th Cir. 2006) (per curium); *Buttons v. National Broadcasting Co.*, 858 F. Supp. at 1027; *Kahn v. iBiquity Digital Corp.*, No. 06 CIV. 1536 (NRB), 2006 WL 3592366, at *5 n.23 (S.D.N.Y. Dec. 7, 2006), aff'd, 309 F. App'x 429 (2d Cir. 2009).

To the extent Plaintiffs allege that other Greenpeace entities received funding from GP-Fund to execute their campaign of publishing defamatory statements, this is insufficient to support a defamation claim.  *Matson v. Dvorak*, 40 Cal. App. 4th 539, 549, 46 Cal. Rptr. 2d 880, 886-887 (1995) ("One whose only contribution to a political campaign is financial, and who is not involved in the preparation, review or publication of campaign literature, cannot be subjected to liability in a defamation action . . . .").  The Complaint contains no facts that GP-

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 17

Fund had any oversight over any of the other Defendants.  Without such facts, GP-Fund cannot be held liable for defamation for any publication made by these other entities.

Plaintiffs do attribute some defamatory statements to "Greenpeace" generally without alleging who among the "Greenpeace enterprise" made the statements.  As the *Resolute* court articulated in dismissing the similar Complaint brought against the Greenpeace entities, this lack of specificity fails to meet the burden of pleading actual malice by a party.  *Resolute Forest Prod., Inc.*, 2017 WL 4618676 at *7 ("When there are multiple actors involved in an organizational defendant's publication of a defamatory statement, the plaintiff must identify the individual responsible for publication of a statement, and it is that individual the plaintiff must prove acted with actual malice.") (internal citations omitted); *New York Times v. Sullivan*, 376 U.S. 254, 287 (1964).

Because Plaintiffs' allegations do not assert that GP-Fund was responsible for the publication of any alleged defamatory statements by other parties or entities, dismissal of Plaintiffs' defamation claim against GP-Fund is warranted.

Importantly, as briefed extensively by the Greenpeace Defendants, Plaintiffs must prove that GP-Fund acted with actual malice to prevail on a claim for defamation (and necessarily on all of its other claims for RICO, Tortious

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 18

Interference, and Civil Conspiracy).  (Section A(1)(e) of the Greenpeace Defendants' Memorandum in Support of Motion to Dismiss).  Plaintiffs do not allege any facts supporting actual malice by GP-Fund.  Here, Plaintiffs' sole contention regarding malice concludes their defamation claim, stating "[a]t all relevant times, Defendants' conduct was willful and done with legal malice." (Complaint, ¶ 441).  This is insufficient.  Courts have routinely dismissed cases requiring actual malice containing no plausible allegations regarding such actual malice.  *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761-62 (D. Md. 2015) (dismissing complaint that "does nothing more than deliver a bare recitation of the legal standard for malice.").  Plaintiffs' allegations do not and cannot support a claim of actual malice against any Defendant, including GP-Fund.

Finally, Plaintiffs' defamation claim is barred by the First Amendment.  As more fully set forth in the Greenpeace Defendants' Memorandum in Support of their Motion to Dismiss, GP-Fund similarly asserts: (1) Plaintiffs' claims implicated the First Amendment; (2) all of Plaintiffs' claims are based on protected speech; and (3) Plaintiffs fail to state a claim for defamation.  GP-Fund cross-references Sections A(2)(a-f) of the Greenpeace Defendants' Brief for additional support of these arguments.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 19

**IV.     Plaintiffs have not Sufficiently Alleged Claims against GP-Fund under North Dakota Common Law of Tortious Interference.**

To make a claim for tortious interference with business, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferer of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferer; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted." *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1057-58 (D.N.D. 2006) (citing *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 126 (N.D. 2005). The "independently tortious" act required to be proven under the third element requires a plaintiff to "prove that the defendant's conduct would be actionable under a recognized tort." *Id.* (citing *Trade 'N Post, L.L.C. v. World Duty Free Americas, Inc.*, 628 N.W.2d 707, 720 (N.D. 2001).

In order to avoid dismissal of this claim, Plaintiffs must have properly pled the existence of an "independently tortious or otherwise unlawful act of interference" by GP-Fund.  Again, Plaintiffs' Complaint lacks any allegation of such independent wrongdoing by GP-Fund.  Plaintiffs' claim for tortious interference merely groups the conduct of all "defendants" together without any specific allegation of what constitutes the tortious or unlawful conduct by any particular party.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 20

The only relevant conduct that Plaintiffs' Complaint alleges that GP-Fund engaged in is (1) the funding of an advocacy campaign against Plaintiffs by the Greenpeace Defendants, and (2) "joining" a letter to banks financing Plaintiffs' pipeline project demanding that the banks immediately withdraw funding for the Project.  (Complaint, ¶¶ 38(b), 38(j)).

GP-Fund denies both of these allegations.  Even if taken as true for purposes of this Motion to Dismiss, however, Plaintiffs make no allegations to support that either of these actions (ostensibly exercising a right to political speech and protest) would be tortious or unlawful in any way.

Plaintiffs are generally relying on their claim for defamation to support the conduct necessary to constitute a claim for tortious interference against Defendants.[1]  Because there are no sufficient or plausible allegations of defamatory statements made by GP-Fund, and no sufficient or plausible allegations of actual malice, Plaintiffs have not plausibly pled a claim for tortious interference.  For the reasons set forth above and in the Greenpeace Defendants' Brief, the alleged defamatory statements by Defendants are not actionable.  Necessarily, if Plaintiffs' defamation claim is dismissed, then there is no improper action or wrongful conduct to sustain this cause of action.

---

[1] While Plaintiffs also attempt to rely on claims of cyber-attacks and terrorism, neither of these actions are alleged to have been conducted by GP-Fund or any Defendant.  (Complaint, ¶ 433).

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 21

**V.      Plaintiffs have not Sufficiently Alleged Claims against GP-Fund under North Dakota Common-Law Civil Conspiracy.**

Plaintiffs' final claim alleges a general conspiracy to commit all the unlawful acts alleged in Plaintiffs' claims for Defamation and Tortious Interference.

Under North Dakota law, a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." *Hurt v. Freeland*, 1999 ND 12, ¶ 37, 589 N.W.2d 551 (quoting *Burr v. Kulas*, 1997 ND 98, ¶ 18 n. 3, 564 N.W.2d 631).

Plaintiffs' claim for civil conspiracy should be dismissed for the same reasons their claims for defamation and tortious interference fail. Without an underlying tort, there is no liability for civil conspiracy. *Id.* Further, without any non-conclusory allegations of an agreement between GP-Fund and any other Defendant, there can be no conspiracy.

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 22

## CONCLUSION

Notwithstanding its voluminous nature, Plaintiffs' Complaint reveals just a few allegations specific to Defendant GP-Fund.  These sparse allegations do not involve any actionable conduct by GP-Fund and are wholly insufficient, under both the *Iqbal* and *Twombly* plausibility standard and Rule 9(b), to support the claims brought against GP-Fund.  The attempted grouping of GP-Fund with the conduct of other defendants and non-parties, without any facts to support GP-Fund's involvement with an alleged enterprise, does not satisfy the heightened pleading requirement of Rule 9(b) or even the *Iqbal* and *Twombly* standard.  Plaintiffs have failed to state a claim upon which relief can be granted against GP-Fund.  In addition to the reasons briefed by the Greenpeace Defendants supporting dismissal of Plaintiffs' Complaint as a whole, GP-Fund should be dismissed as a Defendant to this action without leave to amend.

RESPECTFULLY SUBMITTED this 28th day of November, 2017.

By */s/ Matt J. Kelly*
Matt J. Kelly
TARLOW STONECIPHER
WEAMER & KELLY, PLLC
1705 West College Street
Bozeman, MT  59715
(406) 586-9714
mkelly@lawmt.com
*Attorneys for Greenpeace Fund, Inc.*

*Energy Transfer Equity, L.P. v. Greenpeace International et al*
Defendant Greenpeace Fund, Inc.'s Memorandum in Support of Motion to Dismiss
Page 23