## UNITED STATES DISTRICT COURT
### DISTRICT OF NORTH DAKOTA
### WESTERN DIVISION

| | |
|---|---|
| Energy Transfer Equity, L.P., *et al.*<br><br>      Plaintiffs,<br><br>v.<br><br>Greenpeace International<br>(aka "Stichting Greenpace Council"), *et al.*<br><br>      Defendants. | Case No. 1:17-cv-173<br><br><br>**BANKTRACK'S REPLY TO PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS PURSUANT TO RULES 12(B)(6) AND 12(B)(2)** |

## INTRODUCTION

Plaintiffs paint the Dakota Access Pipeline (DAPL) protests as a violent creation of outsiders with "hidden agendas." Opp. at 1. Ironically, Plaintiffs cite *Dakota Access, LLC v. Archambault*, No. 16-296, 2016 U.S. Dist. LEXIS 131570 (D.N.D. Sept. 16, 2016), a decision that "fully recognize[d] the unlawful and violent protestors arrested to date constitute *a very small percentage* of the entire entourage"; and, that the Standing Rock Sioux Tribe (SRST) "actually impacted by the pipeline project" has "legitimate interests." *Id.* at 6 (emphasis added). BankTrack's advocacy work in opposition to DAPL, which Plaintiffs seek to suppress, is likewise legitimate.

BankTrack did not take part in protests. It did not fund, support, or incite any protestors, much less violent ones. BankTrack only wrote letters to Plaintiffs' financiers, months after the protests began, voicing legitimate concerns, motivated by its long-term commitment to the environment, human rights, and corporate social responsibility. This is core protected speech recognized by the Supreme Court:

> A massive and prolonged effort to change the social, political, and economic structure of a local environment cannot be characterized as a violent conspiracy simply by reference to the ephemeral consequences of relatively few violent acts. Such a characterization must be supported by findings that adequately disclose the evidentiary basis for

concluding that *specific parties agreed to use unlawful means* . . . .

*NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 933-34 (1982) (emphasis added). This case is a classic example of strategic litigation against public participation and should be dismissed.

Plaintiffs' Opposition impermissibly lumps together all Defendants and makes almost no attempt to show how BankTrack is liable or subject to jurisdiction. *See Kerrigan v. Visalus, Inc.*, 112 F. Supp. 3d 580, 602 (E.D. Mich. 2015) (noting that "group pleading" makes analysis of claims "difficult, if not impossible" because "each Defendant is entitled to an individualized analysis of his, her, or its own RICO liability").

Plaintiffs do not refute BankTrack's showing that this Court lacks jurisdiction. *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007). RICO extends nationwide jurisdiction only to U.S. residents, which BankTrack is not. Absent nationwide jurisdiction, there can be no jurisdiction because BankTrack also lacks requisite contacts with North Dakota.

Plaintiffs have not plausibly pled claims. *Ashcroft v. Iqbal*, 556 U.S. 662, 682-83 (2009). They virtually ignore BankTrack's showing that its advocacy is protected by the First Amendment, and that its association rights recognized in *Claiborne* protect it from liability based on other parties' illegal acts. MTD at 20-21. And BankTrack's argument that there are no plausible allegations that it knew it was making false statements, MTD at 25, 34, is unrebutted. Plaintiffs have similarly failed to plausibly plead RICO or state law claims, relying wholly on conclusory statements.

## ARGUMENT

### I. The conduct at issue involves letter-writing.

The only conduct Plaintiffs allege BankTrack had any part in was letter writing. *See* Opp at 8. Writing letters is clearly constitutionally protected, and does not plausibly suggest that BankTrack is individually liable, or that it intended to join or participate in an illicit conspiracy.

Plaintiffs state that a desire to generate donations allegedly unified "enterprise" members. *See e.g.,*

Opp. at 5. Assuming that such individualized interests *could* be a unifying purpose, Plaintiffs have only a single conclusory allegation with respect to BankTrack. Compl. ¶ 38(j). *See also* MTD at 31. There are no *facts* in the Complaint suggesting BankTrack sought donations related to DAPL.

Plaintiffs suggest that the "enterprise" funded or incited violent DAPL protests. *See e.g.,* Opp. at 10-11. There are **no** allegations BankTrack played such a role. There are no allegations that BankTrack funded or knew of funding to the "Red Warrior Camp." *Cf.* Opp. at 11. Most of the "violent protests" that Plaintiffs reference occurred before BankTrack sent letters to banks. *Compare* Opp. at 11-13 (discussing "violent" incidents in August to October 2016) *with* Opp. at 21-22 (first BankTrack letter sent in November 2016).

Plaintiffs also suggest "Anonymous" made death threats and launched cyber-attacks between August 2016 and October 2016. Opp. at 23. But, there are no allegations that suggest, much less plausibly so, that "Anonymous" was even part of Plaintiffs' definition of the "Enterprise." And there are no allegations that BankTrack was involved or knew of the alleged role of "Anonymous."

**II.  Plausibility and a motion to dismiss: the difference between facts and conclusions.**

Plaintiffs confuse pled **facts** with **conclusory labels**. *Ashcroft v. Iqbal*, 556 U.S. 662, 680-81 (2009). They rely on pre-*Iqbal* cases, *see e.g.,* Opp. at 37 (citing *Gunderson v. ADM Inv'r Servs., Inc.*, 230 F.3d 1363 (8th Cir. 2000)); *id.* at 41 (citing *Abels v. Farmers Commodities Corp.*, 259 F.3d 910 (8th Cir. 2001)), but after *Iqbal*, well-pled facts must *plausibly* suggest liability. 556 U.S. at 678.

For example, Plaintiffs state BankTrack sent letters to several banks (Opp. at 8.), and then summarily conclude that BankTrack was part of an illicit conspiracy and that it sent letters for an ill-defined but impermissible reason. This conclusory pleading clearly fails to "nudge[] the[] claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In *Twombly*, plaintiffs were required to show an agreement between the defendants. *Id.* at 553. The Supreme Court was clear that "an allegation of parallel conduct and a bare assertion of

conspiracy will not suffice" because "[w]ithout more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts to adequate show illegality." *Id.* at 556-57. Here, Plaintiffs allege the existence of a conspiracy based on almost identical facts: the mere existence of parallel conduct, i.e., opposition to DAPL.

In *Iqbal*, plaintiff's *Bivens* claim required proof that defendants acted with discriminatory intent. 556 U.S. at 675-78. The Court found that many of the allegations—specifically those asserting defendant's purpose—"conclusory and not entitled to be assumed true." *Id.* at 680-81. Although *Iqbal* plaintiffs alleged that Muslim men were "disparate[ly]" impacted by detention policies, "given more likely explanations," the allegations did not plausibly plead the requisite intent. *Id.* at 681-82. Here, Plaintiffs have similarly pled no non-conclusory facts that suggest BankTrack was motivated by malice or that it acted fraudulently, *i.e.* that BankTrack did not believe its letters to be true.

There is an obvious and plausible explanation for why BankTrack wrote letters: it was genuinely concerned with the environmental and social issues implicated by DAPL. Where a plaintiff's theory of liability "is merely possible rather than plausible," as it is here, they must "do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation," they must also plead facts that "tend[ ] to exclude the [other] possibility." *Petzschke v. Century Aluminum Co.*, 728 F.3d 1104, 1108 (9th Cir. 2013). They have not done so here.

### III. Plaintiffs bury the lede: this Court lacks jurisdiction over BankTrack.

Personal jurisdiction is lacking. Plaintiffs invoke two bases for nationwide jurisdiction – RICO and Rule 4(k)(2) – but neither provides jurisdiction. Without nationwide jurisdiction, BankTrack plainly lacks the necessary contacts with North Dakota to satisfy its long-arm statute or due process.

#### A. *A weak federal RICO claim should not form a basis for nationwide jurisdiction.*

Plaintiffs suggestion that the plausibility of RICO claims has no bearing on jurisdiction is wrong. Opp. at 86-87. Courts refuse to permit plaintiffs to invoke nationwide jurisdiction based on

conclusory federal claims and conspiracy allegations. MTD at 11-13.  Because Plaintiffs have not pled a plausible RICO claim against BankTrack, this court should not exercise nationwide jurisdiction (even if it had the authority to do so), particularly where the exercise of jurisdiction must serve "the ends of justice." 18 U.S.C. § 1965(b). Similarly, Plaintiffs cannot use implausible federal claims to invoke jurisdiction under Rule 4(k)(2).

### B. *This Court does not have nationwide jurisdiction under RICO.*

The requirements of sections 1965(b) are not met. MTD at 10-13. Congress must expressly authorize nationwide jurisdiction. *See* MTD at 9-10; *cf.* Opp. at 85 n. 50. The authorizing statute has three prerequisites: (1) BankTrack must "resid[e]" in the United States; (2) "the ends of justice [must] require" its joinder; and, (3) process must be served on it in the United States. 18 U.S.C. § 1965(b). Plaintiffs failed to establish these prerequisites.

Plaintiffs do not contend that BankTrack is a U.S. resident. MTD at 11.[1] This ends the inquiry.

Plaintiffs rely on *Herbstein v. Bruetman*, 768 F. Supp. 79 (S.D.N.Y. 1991) to argue that a non-resident defendant can be subject to nationwide jurisdiction. Opp. at 85. In that case, neither the plain text nor statutory analysis was raised. Next, Plaintiffs suggest that they can invoke RICO nationwide jurisdiction because BankTrack agreed to accept service. *Id.* Not so. BankTrack agreed to not contest service–*not* jurisdiction–in exchange for additional time to file its motion to dismiss. Whether Plaintiffs served BankTrack is irrelevant: jurisdiction was not authorized by Congress in this instance. *Hade v. Kott*, Civ. No. 91-5897, 1993 U.S. Dist. LEXIS 2714, at *21-22 (S.D.N.Y. Mar. 5, 1999) ("Personal jurisdiction consists of two separate issues: the abstract notion of amenability to

---

[1] *See also Nocando Mem Holdings, Ltd. v. Credit Commer. De Fr., S.A.*, No. 01-1194, 2004 U.S. Dist. LEXIS 22513, at *27-28 (W.D. Tex. Oct. 6, 2004) ("[B]y its terms section 1965(b) does not apply to foreign defendants, as they do not 'reside in any other district' of the United States."). Plaintiffs' attempt to distinguish *Nocando* falls well short; neither the decision nor its plain text reasoning make a distinction between service on the defendant versus an agent. *Cf.* Opp. at 84 n. 49.

jurisdiction, and the physical notion of notice to the defendant through valid service of process.").

Plaintiffs also fail to show that the "ends of justice" are served by subjecting BankTrack to nationwide jurisdiction. *See Kalika v. Bos. & Me. Corp.*, No. 15-14043, 2018 U.S. Dist. LEXIS 32530, at *18-19 (D. Mass. Feb. 28, 2018). Requiring the unavailability of an alternative forum where all defendants could be sued aligns with Congressional intent. MTD at 12. Plaintiffs sidestep the issue of an alternative forum, Opp. at 85, but their own cases show that "the existence of another district in which all of the defendants would be subject to personal jurisdiction is an important factor." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 311-12 (D.S.C. 1992). *See also Kaplan v. Reed*, 28 F. Supp. 2d 1191, 1204 (D. Colo. 1998) (same). Plaintiffs make no argument that this case could not be brought against all Defendants in another forum. *Cf.* Opp at 85 n. 51. BankTrack's letters were sent to Plaintiffs' lenders in California and New York. MTD at 12 n.6. These are, at least, plausible venues for this case, and Plaintiffs largely ignore BankTrack's other arguments why the "ends of justice" do not support jurisdiction. MTD at 12-13.

### C. *This Court does not have nationwide jurisdiction under Rule 4(k)(2).*

Rule 4(k)(2) does not provide nationwide jurisdiction over BankTrack. Plaintiffs assume BankTrack must identify a forum where suit could be brought, Opp. at 89; but fail to note the circuit split (the Eighth Circuit has yet to weigh in). While most courts seem to recognize that a plaintiff need not negate jurisdiction in 50 states, they differ on whether the burden shifts to a defendant to identify a forum where they are subject to jurisdiction. *See e.g.*, *United States v. Swiss. Am. Bank, Ltd.*, 191 F.3d 30, 41 (1st Cir. 1999) (a plaintiff "must certify that, based on the information that is readily available to the plaintiff and his counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state").

This distinction is not that important because, either way, Rule 4(k)(2) is inapplicable. Plaintiffs have made no effort to show that BankTrack is not subject to jurisdiction in other fora, based on

readily available information. Thus, if the burden is theirs, they failed to meet it. If the burden is BankTrack's, it has been satisfied by identifying fora of probable personal jurisdiction, *i.e.* New York and California. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("Naming a more appropriate state" satisfies Rule 4(k)(2)).

> **D.**  *Without nationwide jurisdiction, jurisdiction in North Dakota is impermissible because BankTrack lacks the requisite minimum contacts.*

Plaintiffs do not contest allegations against BankTrack are "limited to 'speech activities that took place outside' the state." *See* Opp. at 87. Plaintiffs fail to show how speech establishes jurisdiction under either North Dakota's long-arm statute or the due process clause. Only BankTrack's own contacts with North Dakota, not those of third parties, can support jurisdiction. MTD at 14-15.

To begin with, Plaintiffs do not explain how letters to banks outside North Dakota defamed them or caused any impact in North Dakota. MTD at 16-17. The Complaint admits no banks withdrew loans from DAPL. MTD at 16. And it is implausible that these letters to out-of-state banks incited violence in North Dakota. *Cf.* Opp. at 88.

Plaintiffs' own cases confirm that jurisdiction does not exist. In *Atkinson v. McLaughlin*, 343 F. Supp. 2d 868, 878 (D.N.D. 2004), and *Zidon v. Pickrell*, 344 F. Supp.2d 624, 632 (D.N.D. 2004), the plaintiffs were North Dakota residents allegedly defamed by communications "directed uniquely toward" or that "directly targeted" North Dakota. Here, Plaintiffs are not North Dakota residents, and communications went to places other than North Dakota. MTD at 17-19.

In *Northstar Founders, LLC v. Hayden Capital USA, LLC*, 855 N.W.2d 614, 629 (N.D. 2014), a North Dakota resident entered into contracts with defendants to build a factory in Minnesota. *Id.* at 621. While there may be jurisdiction when a non-resident contracts with a North Dakota company, where the resident plaintiff relied on representations in North Dakota, and where there were, presumably, direct contacts and communications made to North Dakota, *Id.* at 628-29, none of that occurred here.

**IV. BankTrack's speech and association is protected by the First Amendment.**

BankTrack's only act was raising concerns about DAPL by writing letters to banks. This "mere advocacy" was not extortionate, defamatory or violent. It was protected speech. *Chevron Corp. v. Donziger*, No. 13-80038, 2013 U.S. Dist. LEXIS 49753, at *9 (N.D. Cal. Apr. 5, 2013) ("there are no cases in which courts have found that running a pressure campaign brings speech outside the protection of the First Amendment"); MTD at 21-22.

Plaintiffs assume wrongly that the First Amendment does not apply to claims pled under fraud or RICO. *Cf.* Opp. at 29-30. Constitutional rights do not vanish based on the type of claim plaintiffs file. "Conduct alleged to amount to . . . one of the . . . somewhat elastic RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal." *Nat'l Org. For Women, Inc., v. Scheidler*, 510 U.S. 249, 264 (1994) (Souter, J. concurring). Courts should scrupulously test pleadings and dismiss where speech is at issue, so RICO is not used in ways that "could deter protected advocacy." *Id.* at 265. *See also Associated Bodywork & Massage Professionals v. Am. Massage Therapy Ass'n*, 897 F. Supp. 1116-21 (N.D. Ill. 1995) (dismissing RICO mail fraud claim due to First Amendment); *Savage v. Council on Am.-Islamic Rels., Inc.*, Civ. No. 07-6076, 2008 U.S. Dist. LEXIS 60545, at *32-35 (N.D. Cal. July 25, 2008).

Plaintiffs have not pled facts suggesting BankTrack's statements were fraudulent, defamatory, or extortionate, and do not satisfy the "heightened" burden of showing why that speech falls outside First Amendment protection. *See Oregon Nat. Res. Council v. Mohla*, 944 F.2d 531, 533 (9th Cir. 1991).

*BankTrack's statements were not plausibly made with fraudulent intent or actual malice; no facts suggest BankTrack did not believe what it was saying.* To plead fraud or actual malice[2] –a burden Plaintiffs recognize they must satisfy if they hope to evade the First Amendment–they must plausibly show that BankTrack knew or was recklessly indifferent to the fact it was making false statements.

---

[2] Plaintiffs do not dispute that they must plead actual malice here. *See* Opp. at 69; MTD at 21-25.

*Gunderson v. ADM Investor Servs., Inc.*, 85 F. Supp. 2d 892, 903 (N.D. Iowa 2000) (fraud requires plaintiffs to plead "specific facts that make it reasonable to believe that defendant[s] knew that a statement was materially false or misleading"); *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (to plead actual malice plaintiffs must plead facts that suggest defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false"). These are "[e]xacting proof requirements." *Ill. ex rel. Madigan v. Telemarketing Assocs.* 538 U.S. 600, 620-21 (2003).

Plaintiffs have only conclusory allegations suggesting BankTrack did not believe in the truth of its statements; but, an inference of "actual malice" is plausible when the statement "is fabricated by the defendant or is the product of his imagination;" "is based wholly on an unverified anonymous [sources]" or on "allegations [that] are so inherently improbable that only a reckless man would" believe them; or, "where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports." *Michel*, 816 F.3d at 703. None of those conditions exist or have been pled here. BankTrack's letters reiterated and cited concerns reported in major media outlets (including concerns voiced publicly by the SRST itself). MTD at 22-23 & n.13-16. *See also Archambault*, 2016 U.S. Dist. LEXIS 131570, at *7 (citing David Archambault II, Op-Ed., *Taking a Stand at Standing Rock*, N.Y. Times, Aug. 24, 2016 *available at* https://www.nytimes.com/2016/08/25/opinion/taking-a-stand-at-standing-rock.html).[3]  It is implausible that BankTrack made knowingly false statements without "any reasonable foundation." *Cf.* Opp. at 2.

Plaintiffs also suggest the First Amendment does not apply, because they alleged that BankTrack

---

[3] The piece by Chairman Archambault II included statements nearly identical to those BankTrack made in its letters, including that DAPL "would snake across our treaty lands and through our ancestral burial grounds," that "permits for the project were approved and construction began with without meaningful consultation," and that "the state has militarized my reservation."

threatened their financiers. Opp. at 8. There was no threat in BankTrack's letters, explicit or implied. The letters requested banks live up their commitments under, for example, the Equator Principles; but, they did not threaten banks with violence, boycotts, or any economic harm. MTD Exs. A, B. Even if they had, the Supreme Court is clear that boycotts, "'[t]hreats' of vilification or social ostracism," even when they result in business losses, are "constitutionally protected." *Claiborne Hardware Co.*, 458 U.S. at 910, 926; *accord id.* at 921, 933. *See also* MTD at 21-22.

*BankTrack is not liable for any violence allegedly committed by third parties.* Under *Claiborne Hardware*, the First Amendment protects a defendant from incurring civil liability on account of the illegal acts of others, unless the defendant had a specific intent to support that lawlessness. *Clairborne Hardware*, 458 U.S. at 920 (1982). *See also* MTD at 21.[4] Plaintiffs try to escape *Claiborne Hardware* by arguing it was not a pleading case, Opp. at 30 n.7, but the only difference on a motion to dismiss is that Plaintiffs must plausibly plead (as opposed to prove) specific intent.[5] This Court recognized that "unlawful and violent protesters . . . constitute a very small percentage of the entire entourage." *Dakota Access, LLC v. Archambault*, No. 1:16-cv-296, 2016 U.S. Dist. LEXIS 131570, *6 (D.N.D. Sep. 16, 2016). No allegations suggest BankTrack supported violence, and Plaintiffs have not plausibly pled that BankTrack intended or desired violence. *Supra* § II.

### V. Plaintiffs have not plausibly pled RICO liability.

Plaintiffs admit they must plausibly plead BankTrack "(1) conducted, (2) an enterprise, (3) through a pattern, (4) of racketeering activity, (5) resulting in damages to [Plaintiffs'] business or property." Opp. at 31. "The requirements of § 1962(c) must be established as to each individual

---

[4] Plaintiffs' cases deal with *direct* liability for specific violent threats and other acts. *See e.g., United States v. Larson*, 807 F. Supp. 142, 164 (W.D.N.Y. 2011) (noting defendant directly committed "overt acts" in furtherance of conspiracy), *Ne. Women's Ctr., Inc. v. McMonagle*, 868 F.2d 1342, 1345-46 (3d Cir. 1989) (addressing defendants' direct physical trespass and destruction of equipment).

[5] *Claiborne* applies at all stages of litigation. *See Chevron Corp. v. Donziger*, Civ. No. 13-80038, 2013 U.S. Dist. LEXIS 49753, at *9 (N.D. Cal. Apr. 5, 2013) (quashing subpoenas).

defendant. Failure to present sufficient evidence of any one element of a RICO claim means the entire claim fails." *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027-28 (8th Cir. 2008). Plaintiffs fail to show how any of these elements are satisfied.

        **A.** *Plaintiffs have not shown any concrete injury to business or property.*

"[I]njuries [ ] are not actionable under RICO unless they result in [concrete,] tangible financial loss to the plaintiff." *Oscar v. Univ. Students Co-Operative Ass'n*, 965 F.2d 783, 789 (9th Cir. 1992). While they cite to a string of more than 50 paragraphs in the Complaint, nearly none of the cited "injuries" are cognizable under RICO. Opp. at 58-59.

Plaintiffs allege that certain financial institutions sold their equity holdings in the Plaintiffs. Compl. ¶¶ 239, 259. This is not a cognizable RICO injury. Shares were sold to another investor, and Plaintiffs have not suggested they lost money as a result of the sale between two third parties–no "tangible financial loss." *Oscar*, 965. F.2d at 789.

Similarly, Plaintiffs suggest that they suffered a RICO injury when their financiers sold interests in the DAPL credit facility. *See* Compl. ¶¶ 275, 277. Plaintiffs do not allege any DAPL loans were cancelled, and the Complaint contains no allegation that the terms of its credit facility were less favorable afterwards. Plaintiffs did not suffer a loss based on a portion of their loan being assumed by a successor creditor; divestment from a credit facility is not a "tangible financial loss." *Supra*.

While Plaintiffs suggest they have suffered from "impaired access and increased costs of financing," there are no facts pled to support this speculation. Plaintiffs do not allege that they can no longer access credit, or provide facts that suggest credit is more expensive; nor would any such allegation be plausible. Only a single Norwegian bank is alleged to have cut ties with Plaintiffs. Compl. ¶ 265. Plaintiffs may have suffered reputational damages–far more plausibly traced to concerns over DAPL than letters sent by BankTrack–but an amorphous potential impact on future business is not cognizable under RICO, which requires a "concrete" loss. MTD at 28.

The only pled injury that *could* satisfy the requirements of a RICO is physical damage to Plaintiffs' pipeline, which was clearly not plausibly or proximately caused by BankTrack.

    **B.** *Plaintiffs have not shown that "injuries" were proximately caused by alleged racketeering.*

For BankTrack to be liable under RICO, it must have proximately caused harm to Plaintiffs through its own pattern of alleged racketeering activity. *See Fenner v. GM, LLC*, Civ. No. 17-11661, 2018 U.S. Dist. LEXIS 26543, at *77 (E.D. Mich. Feb. 20, 2018) ("the proximate causation analysis must be conducted for each defendant in a RICO case"). Plaintiffs argue courts "regularly sustain RICO claims" where the plaintiffs are the "primary and intended victims of Defendants' scheme to defraud." Opp. at 55. By their own definition of the "scheme," Plaintiffs were not its primary target. Plaintiffs have alleged a decades-long scheme, which only recently involved them, and which was targeted at Defendants' unidentified (and, in the case of BankTrack, non-existent) *donors*. Opp. at 5.

BankTrack is not arguing that the mere fact that allegedly "false" statements were made to third-parties defeats causation. *Contra* Opp. at 55-57. Plaintiffs have failed to plausibly plead proximate cause because there are no allegations (much less plausible ones) of third-party reliance, i.e., that investors or creditors acted *because of* BankTrack's supposedly fraudulent letters, or that unnamed protestors damaged Plaintiffs' property based on those letters. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008).

*The Banks.* Plaintiffs have not alleged (much less plausibly so) that investors or creditors made decisions to divest shares or sell their interests in DAPL's credit facility *because of* purportedly fraudulent statements. *Anza v. Ideal Steel Supply Co.*, 547 U.S. 451, 459-60 (2006) (rejecting proximate cause because "[b]usinesses lose and gain customers for many reasons, and it would require a complex assessment to establish what portion of Ideal's lost sales were the product" of the racketeering). In reality, there is an obvious and alternative explanation: banks were actually concerned with either human rights violations as widely reported in the media, or the reputational

risks associated with the public reporting on DAPL.[6] Even if the DAPL controversy had not been so widely reported on, it would still be implausible that large, sophisticated financial institutions relied on and were somehow misled by the letters of a small nonprofit organization like BankTrack.

*Pipeline Damage.* Plaintiffs made no real effort to challenge BankTrack's showing that its letters did not plausibly incite any violence or property destruction. Indeed, much, if not all, of the damage Plaintiffs claim was caused by "violent" protestors occurred prior to BankTrack's letters. There are no allegations that BankTrack sent or targeted protestors with letters, and it is simply implausible that letters sent to global financial institutions incited protestors in North Dakota to violence. And even if they had, the causal nexus is far too remote to satisfy the proximate cause requirement.

## C. *Plaintiffs do not establish the existence of a RICO enterprise.*

Plaintiffs' Opposition focuses on what they (mistakenly) think they need not plead, as opposed to whether they have plausibly pled the existence of an enterprise. *See* Opp. at 39.

First, a RICO enterprise requires plausible and non-conclusory allegations of a "common purpose," which are absent here. MTD at 31. *See also, Riley v. MoneyMutual, LLC*, Civ. No. 16-4001, 2017 U.S. Dist LEXIS 139377, at *17 (D. Minn. Aug. 30, 2017) ("To adequately plead an enterprise, the plaintiff must show that all persons joined the enterprise for a common racketeering purpose."). This argument is unaddressed and fatal to Plaintiffs' RICO claim.

Plaintiffs seem to suggest that an amorphous desire to "fraudulently induce" donations unified the "Enterprise." *See e.g.*, Opp at 54-55. As discussed above, it is implausible that BankTrack had any such intent because it did not seek funding related to DAPL and has no reason to drive donations to other organizations. MTD at 31. *See also Riley*, 2017 U.S. Dist. LEXIS, at *18 (no common purpose where "Plaintiffs fail[ed] to explain why supposedly racketeering lenders would join a network where they openly compete with one another").

---

[6] By the time BankTrack's letters were sent, the DAPL protests were well in the public sphere.

The sheer breadth of the alleged enterprise also makes it implausible. *See In re. S. African Apartheid Litig.*, 346 F. Supp. 2d 538, 557 (S.D.N.Y. 2004) ("Conclusory allegations that a group of corporations, whose sole common feature was the doing of business in a nation of millions of people at some point in a period of over forty years, is a RICO enterprise are simply insufficient to survive a motion to dismiss."). Plaintiffs direct attention to allegations of a "decades-long pattern and practice perpetrated by a core group of ENGOs," which they suggest raises an "inference of a 'continuing unit that functions with a common purpose.'" Opp. at 40-41. Those allegations simply detail discrete actions taken by a wide-ranging group of NGOs–notably, without reference to BankTrack, and contain no non-conclusory allegations of coordination. *See generally* Compl. ¶¶ 41-59. *Stanissis v. DynCorp Int'l LLC,* Civ. No. 14-CV-2736, 2015 U.S. Dist. LEXIS 172412, at *11-12 (even allegations that entities "regularly worked" together and "each entity committed the predicate acts" did "not permit the court to draw the reasonable inference that these entities coordinated or functioned as a continuing unit as shown by a hierarchical or consensual decision making structure." (internal quotation marks omitted)).

BankTrack does not deny that there has been some joint action with respect to opposition to DAPL. Greenpeace, for example, was *one* of *dozen*s of other nonprofit organizations to sign onto one of BankTrack's letters. *See* Opp. at 42. But that does not plausibly suggest that signatories shared the ill-defined common purpose Plaintiffs posit. All it plausibly suggests is that signatories had concerns about DAPL. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1074 (11th Cir 2017) (an agreement by the defendants made in a joint contract "in no way evidences a meeting of the minds beyond the meeting of the minds expressed in the Contract's terms, which in and of themselves had nothing to do with the alleged enterprise"). It is, simply put, implausible that dozens of NGOs have been secretly working together, for decades, not to address real social and environmental issues, but to manufacture controversies to generate donations; no pled facts support this fanciful speculation.

14

D. *Plaintiffs do not allege control of an enterprise.*

Plaintiffs do not dispute that they must plausibly plead that BankTrack participated in the operation and management of a RICO enterprise. Opp. at 42. But "it is not enough to allege that a defendant provided services that were helpful to an enterprise, without alleging facts that, if proved, would demonstrate some degree of control over the enterprise." *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 307-08 (S.D.N.Y. 2010). Plaintiffs have not shown that BankTrack acted for an enterprise, and there are no allegations that suggest if, how, and when BankTrack controlled it.

First, Plaintiffs must plausibly show that BankTrack participated in the "Enterprise" and not merely that it "conduct[ed] its own affairs" in parallel. *Dahlgren v. First Nat'l Bank*, 533 F.3d 681, 690 (8th Cir. 2008). *See also* MTD at 28. BankTrack's publicly-stated mission "is to promote fundamental changes in the operations of banks so that, while conducting their business in a fully transparent and accountable way, they contribute to the ecological wellbeing of the planet and to offering a decent life free of poverty for all people."[7] This mission explains why BankTrack sent letters to banks: it is what BankTrack does. There are no facts that support Plaintiffs' competing and implausible explanation, i.e., that it sent letters to drive up donations to other members of the alleged RICO enterprise. *Supra Petzschke*, 728 F.3d at 1108 (9th Cir. 2013) (plaintiffs with implausible theories must plead facts that "tend[ ] to exclude the [other plausible] possibilit[ies]"). Plaintiffs try to evade their burden by suggesting that the "enterprise" "intentionally foster[ed]" the "appearance of parallel conduct." Opp. at 44. This conclusory allegation cannot be credited and is implausible; such tactics could always be pled to relieve a plaintiff of its burden.

Second, Plaintiffs have not shown *how* BankTrack exercised control or directed an "enterprise" in any way. Plaintiffs describe BankTrack's conduct (writing letters), but do not plead any facts

---

[7] https://www.banktrack.org/page/about_banktrack.

suggesting BankTrack participated in or directed a "decades long" pattern of conduct; the only allegations relate to DAPL advocacy.

### E.   *BankTrack did not engage in or conspire to engage in a pattern of racketeering activity.*

Plaintiffs must plausibly plead BankTrack engaged in its own pattern of racketeering activity. *Supra Craig Outdoor Advert., Inc.*, 528 F.3d at 1027-28, *Fenner*, 2018 U.S. Dist. LEXIS 26543, at *77. They failed to do so. While Plaintiffs suggest that the "decades long" pattern of conduct alleged suffices, Opp. at 46-47, BankTrack is only alleged to have engaged in two supposed acts of "racketeering activity" in one month, November 2016. Compl., Table B. This is insufficient. *See Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 357-58 (8th Cir. 2011).

Plaintiffs also fail to refute BankTrack's argument that mail or wire fraud requires plausible allegations of fraudulent intent. Opp. at 49. There are no plausible allegations that BankTrack knew it was making false or misleading statements (assuming *arguendo* that its statements were false). Plaintiffs' cases do not suggest that their pleadings suffice. For example, in *Feld Entertainment Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, the defendants' statements included representations that they knew were false because the defendants had paid a witness. 873 F. Supp. 2d 288, 301-02 (D.D.C. 2012).

Likewise, Plaintiffs make no argument as how BankTrack extorted anyone. *See* Opp. 47-48 n.24. There are no allegations suggesting BankTrack sought, received or deprived anyone of property.

Finally, there are no allegations BankTrack knew of, condoned, financed or participated in any violence. Plaintiffs argue that all Defendants are liable "for Red Warrior's violations of the Patriot Act ..." Opp. at 49. To be liable as a co-conspirator under RICO, Plaintiffs must plausibly allege: "(1) that each defendant agreed to maintain an interest in or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity and (2) that each defendant further agreed that someone would commit at least two predicate acts to accomplish those goals."

16

*Jackson v. Klein*, Civ. No. 16-10499, 2017 U.S. Dist. LEXIS 120939, at *17 n. 7 (N.D. Ill. Aug. 1, 2017) (citing *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 732 (7th Cir. 1998)). Two agreements must be plausibly pled, and "conclusory allegations are insufficient." *Id.* Plaintiffs have not plausibly pled BankTrack's participation in any RICO enterprise, and there are no non-conclusory allegations that BankTrack agreed anyone else should commit any predicate acts.

### VI. Plaintiffs have not plausibly pled defamation.

Defamation requires plausible allegations of a false statement made with actual malice. Opp. at 61. As discussed above, BankTrack's statements were based on publicly reported and cited facts, making actual malice implausible. *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d Cir. 2001) ("actual malice" measures "the speaker's subjective doubts").[8] Plaintiffs allege that BankTrack made defamatory statements in four categories. Compl. App'xs A, B, D, F. But they pled no facts that suggest *BankTrack* doubted the veracity of these statements. Plaintiffs are free to disagree with BankTrack, but they must do more to plausibly plead defamation. Likewise, the failure of Plaintiff's defamation claim eviscerates its tortious interference claim.[9]

---

[8] Plaintiffs argue that BankTrack should have investigated the facts, Opp. at 70-71, and uncovered the errors in its statements. This is wrong as a factual matter, but, on the law, a defendant must only investigate if they have "reason to doubt the veracity of its source." *McFarlane*, 91 F.3d at 1510. Plaintiffs have not pled any non-conclusory facts suggesting why BankTrack could not reasonably trust the public reports its statements were based on.

[9] Plaintiffs argue that they need not prove an independent tort to establish an independently tortious act, Opp. at 77, but where they have failed to plausibly plead other claims, including defamation, they cannot have plausibly pled tortious interference. *See, e.g.*, *Unity Healthcare, Inc. v. Cty. of Hennepin*, 308 F.R.D. 537, 563 (D. Minn. 2015) ("where a tortious interference claim is based on the same conduct as that underlying a defamation claim which lacks evidentiary support, the tortious interference claim must also be dismissed."). The First Amendment protects BankTrack from accusations of tortious interference, because Plaintiffs "may not avoid the protection afforded by the Constitution . . . merely by the use of creative pleading." *Beverly Hills Foodland v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994); *see also Unelko Corp. v. Rooney*, 912 F.2d 1049, 1058 (9th Cir. 1990) (holding a claim for tortious interference with business relationships properly dismissed because the claim was "subject to the same first amendment requirements that govern actions for defamation."). The Eighth Circuit has additionally recognized that "the malice standard required for actionable defamation claims . . . must equally be met for a

Plaintiffs argue that because DAPL is half a mile north of the official boundary of the SRST reservation (Opp. at 15) and pipelines, in their opinion, rarely leak (Opp. at 15-16), BankTrack defamed them by stating a "growing global resistance opposes DAPL because the pipeline trajectory is cutting through Native American sacred territories and unceded Treaty lands, and because it threatens air and water resources in the region and further downstream." MTD, Ex. A. This statement is not false. BankTrack is describing the position of a "growing global resistance," which Plaintiffs do not suggest is inaccurate.[10] But even if BankTrack was stating its own opinion–i.e., that DAPL traverses "unceded Treaty lands" and it "threatens air and water resources"–it was neither false nor made with actual malice. To find otherwise would mean that people are not at liberty to disagree with either the Supreme Court about the scope and sanctity of SRST's treaty rights (a deeply political issue) (Opp. at 15), or a company's positions on the acceptable risks of pipelines (Opp. at 15-16).[11] This cannot be.

Plaintiffs also contend that raising concerns about excessive force used against "peaceful protestors," was defamatory because they suggest protestors were "anything but peaceful." Opp. at 17. Not so. Most of the actors BankTrack identified by BankTrack for their use of excessive force, were police forces, and not Plaintiffs; statements about the police could not conceivably defame

---

tortious interference claim based on the same conduct or statements." *Beverly Hills Foodland v. United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196 (8th Cir. 1994) (dismissing a claim for tortious interference surrounding a consumer boycott where actual malice was not alleged in another count).

[10] At the time of the letters, groups were publicly describing territory as unceded. *See, e.g.*, https://www.reuters.com/article/us-usa-pipeline-dakotaaccess/dakota-access-pipeline-opponents-occupy-land-citing-1851-treaty-idUSKCN12O2FN. This debate continues. *See Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 2018 U.S. Dist. LEXIS 44142, at *6-7 (D.D.C. Mar. 19, 2008).

[11] *Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 255 F. Supp. 3d 101, 140 (D.D.C. 2017) (the Corps "needed to offer more than a bare-bones conclusion that Standing Rock would not be disproportionately harmed by a spill. Given the cursory nature of this aspect of the [environmental assessment's] analysis . . .").

Plaintiffs. *See* MTD, Ex. A.[12] It is strange that Plaintiffs would claim that statements about the use of excessive force by their private security defames them, because, surely, Plaintiffs would argue that they are not responsible for the conduct of those security forces? But it makes little difference because the statements were neither false nor made with actual malice. Serious force *was* used against the SRST and protestors, and that use of force was widely reported.[13] And, it is hard to comprehend why even if BankTrack was wrong about the protests being "strictly peaceful," how that makes the statements about "excessive force" defamatory? The existence of a few violent protestors, which "constitute[d] a very small percentage of the entire entourage," *supra, Dakota Access, LLC v. Archambault*, does not negate the force used by police and private security. And even if it could, the majority protestors *were* nonviolent; BankTrack's (perhaps) "hyperbolic" statement should not be read too literally and was certainly not made with actual malice.

Next, Plaintiffs have failed to plausibly plead that BankTrack did not believe that "DAPL personnel deliberately desecrated documented burial grounds and other culturally important cites." MTD Ex. A., B. There was ample public reporting on such damage[14] and the issue was being litigated in federal court.[15]

---

[12] Commentary on law enforcement is exactly the type of speech our Constitution protects from chilling: "speech about government and its officers, about how well or badly they carry out their duties, lies at the very heart of the First Amendment." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1305 (8th Cir. 1986) (internal citations omitted).

[13] *See,* United Nations, Office of the High Commissioner on Human Rights, *Native Americans facing excessive force in North Dakota pipeline protests – UN expert*, 15 Nov. 2016 (UN Special Rapporteur accusing law enforcement of excessive force, noting that demonstrators had suffered degrading and inhumane treatment in detention); Available at: http://www.ohchr.org/EN/NewsEvents/Pages/DisplayNews.aspx?NewsID=20868&LangID=E

[14] *See e.g.,* http://thenaturalhistorymuseum.org/archaeologists-and-museums-respond-to-destruction-of-standing-rock-sioux-burial-grounds/; http://www.foxnews.com/us/2016/09/04/oil-pipeline-protest-turns-violent-after-american-indian-burial-sites-destroyed.html; https://www.washingtonpost.com/posteverything/wp/2016/11/04/heres-what-no-one-understands-about-the-dakota-access-pipeline-crisis/?utm_term=.e3f4d5722fdc.

[15] *See Standing Rock Sioux Tribe v. United States Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 26 (D.D.C.

Finally, statements of opinion are protected. Advocacy organizations of all stripes "have a tradition of more colorful, even feisty language," and a "generally freer style of personal expression," which should "signal the reader to expect a fair amount of opinion." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1304 (8th Cir. 1986). "Statements made in the course of a political debate are also more likely to be understood as opinion." *Price v. Viking Penguin*, 881 F.2d 1426, 1432-33 (8th Cir. 1989). The Supreme Court has not, as Plaintiffs seem to suggest, removed the distinction between statements of fact and opinion. Opp. at 62. In *Milkovich v. Lorain Journal Co.*, the Court merely held that opinions *may be* defamatory, if they are reasonably interpreted as making false assertions of fact. 497 U.S. 1, 25 (1990). Plaintiffs must still plead falsity and actual malice with respect to those statements, but courts should not "take [] an overly literal approach to obviously overemphatic speech," when assessing whether an opinion statement implies false statements of fact. *Resolute Forest Prods. v. Greenpeace Int'l*, No. 17-cv-02824-JST, 2017 U.S. Dist. LEXIS 170927, at *28 (N.D. Cal. Oct. 16, 2017).

## CONCLUSION

BankTrack should be dismissed from this case because the Plaintiffs have failed to establish jurisdiction and plead plausible facts establishing liability under RICO and state law claims.

Dated this 30th day of November 2017.        THE MARTINEZ LAW FIRM, LLC

                                              By:    /s/ Robin S. Martinez
                                                     Robin S. Martinez, MO #36557/KS #23816
                                                     1150 Grand Blvd., Suite 240
                                                     Kansas City, Missouri 54106
                                                     816.979.1620 telephone
                                                     816.398.7021 facsimile
                                                     Email: robin.martinez@martinezlaw.net

                                                     *Attorney for BankTrack*

---

2016).