UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| ENERGY TRANSFER EQUITY, L.P., and ENERGY TRANSFER PARTNERS, L.P.,<br><br>Plaintiffs,<br><br>vs.<br><br>GREENPEACE INTERNATIONAL (aka "STICHTING GREENPEACE COUNCIL"); GREENPEACE, INC.; GREENPEACE FUND, INC.; BANKTRACK (aka "STICHTING BANKTRACK"); EARTH FIRST!; and JOHN AND JANE DOES 1-20,<br><br>Defendants. | Case No.:  17-CV-00173-DLH-CSM |

**RESPONSE TO THE COURT'S ORDER OF MARCH 22, 2018**

Amicus Earth First! Journal hereby files its response to the Court's Order of March 22, 2018 (ECF No. 74), requiring undersigned counsel to "advise [the Court] and other counsel as to the details of Earth First! previously filing law suits as a plaintiff," citing three cases, and suggesting that counsel should "disclose such information that other counsel would need to effect service" on Earth First!.

As we have consistently stated throughout this litigation, it is our understanding, and that of our client, that Earth First! is not an entity or association amenable to suit under Rule 17(b), and therefore cannot be served with process. Although there are three reported cases in which Earth First! was listed as one among many environmental groups collectively seeking injunctive relief, nothing in the sparse records so far available of those cases indicates that any of those courts found that Earth First! was capable of bringing suit, and therefore nothing in those dec-

1

ades-old cases should lead this court to believe that any entity called "Earth First!" today exists and is amenable to suit.

## I. Earth First! and Earth First! Journal

As described in the exhibits submitted by Plaintiffs as well as in the attached Declaration of Grayson Flory, a staffer of the Earth First! Journal, "Earth First!" is a philosophical movement the basic principles of which were laid out by individuals who rejected the mainstream non-profit environmental organizations of the time.[1] Flory Decl. at ¶ 6. Earth First! is not an organization; it has no leaders, no offices, and no organizational structure. *Id.* ¶ 9. Rather, it is a philosophical movement; Earth First!ers are those who sympathize with its founding principles. *Id.* ¶¶ 7, 9. The absence of structure, hierarchy, and formal membership were intentional choices by the founders of the movement: In their view, traditional environmental organizations had become too bureaucratic and invariably lost touch with core principles or became ossified and unable to react to changed circumstances. *Id.* ¶ 10. Organizations exist to provide a structure that permits mediating compromise of competing interests, whether within the staff of the organization, among its membership, or with outside interests. Earth First!'s core founding principle was placing the Earth first, and not engaging in compromise with human interests in defense of wild nature. *Id*. ¶¶ 9-10. But given the movement's lack of centralized structure, even these basic founding ideas of biocentrism" and "no compromise" have not been etched in stone, and the "lack of structure and leadership is one of the things that has allowed the Earth First! idea to remain relevant by adapting quickly to social changes over the last 38 years." *Id*. ¶ 10.

Many local groups and events use "Earth First!" in their names as a marker of sympathies with the original principles of the movement, *id*. ¶¶ 11-12; as Plaintiffs themselves have correct-

---

[1] Ironically, given the allegations of this lawsuit, one of those rejected groups was Greenpeace.

ly indicated, "anyone can use the name." ECF No. 35-19, at 2; Flory Decl., ¶ 9. A number of publications use Earth First! in their name as well. *Id*. ¶¶ 4, 8. One such publication is the Earth First! Journal. *Id*. ¶ 3.

The Earth First! Journal is run as a collective, currently consisting of three full time staffers and two interns. *Id.* ¶¶ 1-3. Its "aim is two-fold: to report on actions by groups and individuals defending the Earth, and to spread information about environmental defense in general and the Earth First! movement in particular to the public." *Id.* ¶ 4. While it is probably the best-known publication covering the movement, it is not the only one, *id.*, and the Journal's organizational structure, location, and staffing has changed greatly over the years. *Id*. ¶ 3. No authority grants it permission to use the "Earth First!" title in its name, and it cannot speak for the entire movement. While the Journal often covers actions by individuals who believe in the Earth First! philosophy (as well as by others who do not, *id.* ¶ 4), it "does not set priorities for Earth First! groups or activists, approve or review their activities, or play any leadership role in the activities of other Earth First!ers." *Id*. ¶ 8.

**II. Lawsuits that purported to include Earth First! as a plaintiff**

Between 1983 and 1993, there were three lawsuits filed in which "Earth First" was named as a plaintiff in multi-plaintiff cases. *See Earth First v. Block*, 569 F. Supp. 415 (D. Or. 1983); *Animal Defense Council v. Hodel*, 840 F.2d 1432, 1435 (9th Cir. 1988) (complaint filed in 1986), *amended*, 867 F.2d 1244 (9th Cir. 1989); *Pueblo of Sandia v. United States,* 50 F.3d 856, 858 (10th Cir. 1995) (original complaint filed in 1991). Our client—the Earth First! Journal—has no connection whatsoever to these lawsuits, nor do undersigned counsel. When the most recent of these three suits was filed, two of the Journal's staffers were children, and one was as yet unborn. Flory Decl. at ¶ 13. They obviously played no role in the lawsuits, and they have no information about how they came to be. *Id*. As set forth in the attached Declaration of Pamela Spees,

3

counsel also have no personal knowledge of the cases, and have inquired into these suits, but learned little regarding their genesis. *See generally* Spees Decl. The one complaint we have located makes no specific reference to any formal entity structure for Earth First! nor does it offer any argument for why Earth First! would have capacity to sue under Rule 17(b). *See* 2d Amended Complaint, *Pueblo of Sandia et al. v. United States et al.*, No. CIV91-755M (D.N.M. filed Jun. 8, 1992) (attached as Ex. A to Spees Decl.) at ¶ 16 (calling Earth First!, one of seven listed plaintiff groups, a "non-profit citizen organization" but offering no further detail, nor mentioning who claimed authority to authorize that putative organization's participation in the lawsuit).

Earth First!'s capacity to sue does not appear to have been considered in any of the three cases. We suspect that in each of these cases there was no argument raised by defendants about the capacity of "Earth First!" to sue under Rule 17, though given the great age of these three cases that may be impossible to prove. *See* Spees Decl., ¶¶ 2-9 (describing unsuccessful attempts to gain information about the nature of the cases); *id.* at ¶¶ 4, 8 (noting pending information requests, and promising to update this Court should further information be forthcoming from the National Archives facilities holding the relevant courts' records). Each of the three cases involved other plaintiffs, including individuals and established environmental groups, who clearly had capacity to bring the suits. *See Earth First v. Block*, 569 F. Supp. at 415 (along with "Earth First," plaintiffs included Oregon National Resources Council and nine individuals); *Animal Defense Council*, 840 F.2d at 1432 (along with "Earth First!," plaintiffs included six organizations and one individual); *Pueblo of Sandia*, 50 F.3d at 856 (six other organizations). In each case the large group of plaintiffs sought only injunctive relief (relating to the shortcomings of environmental impact statements (*Block*, *Animal Defense Council*) or cultural and historical surveys (*Sandia*) pursuant to various statutory or regulatory schemes). Under those circumstances it is

4

not at all surprising that defendants would not challenge the capacity to sue of each and every last plaintiff; some of the plaintiff groups were individuals or established organizations that clearly had capacity to sue, giving defendants no incentive to bother challenging whether Earth First! really existed for juridical purposes.[2] Barring a challenge from defendants, the courts would have little reason to take up and resolve that issue either.[3] Earth First! was never men-

---

[2]     Indeed, counsel in one of the cases noted that he beelived the Assistant U.S. Attorney defending the case he handled on appeal (*Pueblo of Sandia*) "would not have wasted his time" contesting Earth First!'s capacity to sue when it was clear other plaintiffs in that case had standing and capacity to sue. Spees Decl. at ¶ 5 (quoting Eric Ames). In another of the cases, *Earth First et al. v. Block*, counsel for plaintiffs "recalled that Earth First! was not formally organized at the time and that one of the intervenors may have suggested there was a problem with Earth First!'s 'nebulous' status but it never got briefed or argued and there was never any ruling from the court on the question." *Id.* ¶ 7.

[3]     It is worth noting that in a large number of environmental cases in the federal courts, non-human animals or animal species have been named as plaintiffs and have been granted relief (including, in one case, attorney's fees) alongside human individuals and organizations that clearly had capacity to sue under Rule 17. *See Cabinet Mountains Wilderness/Scotchman's Peak Grizzly Bears, et al. v. United States Forest Service,* 685 F.2d 678 (D.C. Cir. 1982) (two types of grizzly bear); *Northern Spotted Owl (Strix Occidentalis Caurina), et al. v. Hodel,* 716 F. Supp. 479 (W.D. Wash. 1988) (northern spotted owl); *Mt. Graham Red Squirrel, et al. v. Yeutter,* 930 F.2d 703 (9th Cir. 1991) (Mt. Graham Red Squirrel); *Northern Spotted Owl, et al. v. Lujan,* 758 F. Supp. 621 (W.D. Wash. 1991) (northern spotted owl); *The American Bald Eagle, et al. v. Bhatti,* 9 F.3d 163 (1st Cir. 1993) (American bald eagle); *Florida Key Deer, et al. v. Stickney,* 864 F. Supp. 1222 (S.D. Fla. 1994), 386 F.Supp.2d 1281 (S.D. Fla. 2005), 522 F.3d 1133 (11th Cir. 2008) ("eight endangered or threatened species"); *Northern Crawfish Frog, et al. v. Federal Highway Administration,* 858 F. Supp. 1503 (D. Kan. 1994) (Northern Crawfish Frog); *Loggerhead Turtle v. County Council of Volusia County,* 307 F.3d 1318 (11th Cir. 2002) (affirming award of attorney's fees to human plaintiffs alongside multiple turtle species specifically noted to be plaintiffs in opinion).

In all the cases cited above, it appears that a Rule 17 challenge was never mounted by defendants to the animals' capacity to sue. Presumably that was because the human plaintiffs clearly had capacity to sue and standing; at least one court explicitly so reasoned. *See Coho Salmon, et al. v. Pacific Lumber Co.*, 30 F. Supp. 2d 1231, 1238 (N.D. Cal. 1998) ("Because [the environmental groups] have pointed to sufficient facts to survive summary judgment on the issue of standing, the court decline's [defendant's] invitation to determine whether the Coho salmon has standing to sue on its own behalf under the ESA."); 61 F. Supp. 2d 1001, 1008 (N.D. Cal. 1999) (same).

In such circumstances, later courts should exercise caution in assuming that the failure to challenge capacity to sue (or be sued) means that a putative party necessarily met the requirements of Rule 17. *See also United States ex rel Mayo v. Satan and his Staff*, 54 F.R.D. 282 (W.D.

tioned in any of the decisions. In short, while the name "Earth First!" appears in a long list of plaintiffs in each case, its presence had no apparent impact on the outcome of the litigation.

This Court's order stated that "if Earth First! can sue, it seems to me that it is subject to being sued." Order, ECF No. 74.[4] But for the foregoing reasons, it is not at all clear that the presence of the name "Earth First!" among a number of plaintiffs in these decades-old suits means that there was an entity or unincorporated association Earth First! that actually had capacity to sue, or that any court decided the same. As both Plaintiffs' own submissions and the Flory Declaration make clear, "Earth First!" is a name "anyone can use." *See* ECF No. 35-19, at 2; Flory Decl., ¶ 9. When anyone can use a name, it will be used in various ways--including ways that violate Rule 17.

On this fragmentary record there is certainly no ground to find that judicial estoppel should dictate that Earth First!, which Plaintiffs themselves characterize as a "non-entity," should be amenable to suit because, in the past, a handful of plaintiffs' attorneys named it as a party without adverse consequence. Judicial estoppel "protects the integrity of the judicial process" by preventing a party from asserting a claim or position in a legal proceeding that is inconsistent with the claim or position taken by that party in a previous proceeding. *Stallings v. Hussmann Corp.,* 447 F.3d 1041, 1047 (8th Cir. 2006) (*quoting Total Petroleum, Inc. v. Davis,* 822 F.2d 734, 738 n.6 (8th Cir.1987)); *see generally* 18B CHARLES ALAN WRIGHT, ARTHUR MILLER, &

---

Pa. 1971) (dismissing for failure to advise marshals as to how precisely to serve defendant, not for failure name a non-fictional defendant under Rule 17).

[4]  As a technical matter, the Court's statement may not be correct: given that Rule 17(b) adverts to the "law of the state where the court is located" to determine the capacity of an "unincorporated association" to sue or be sued, the fact that a party can sue in one state does not mean as a matter of law that it can sue or be sued in another state. But that is entirely irrelevant here, where Earth First! lacks capacity to sue or be sued in any state.

EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4477 (2d ed. 2002).[5] As a threshold matter, questions of estoppel are only relevant here if the "Earth First!" sued in the instant case is the same as whoever acted as a plaintiff under the name "Earth First!" on three different occasions thirty-some-odd years ago. Again, there is no reason to believe it is; more to the point, Plaintiffs have not claimed it is. Indeed, they have nowhere in their papers mentioned the three cases at issue.[6]

*Even if* an unincorporated association named "Earth First!" had been responsible for all three of the historical suits, judicial estoppel would not apply to determine the issue of its ability to be sued today. The Eighth Circuit has identified three factors to consider in applying judicial estoppel:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.*; *see also Van Horn v. Martin,* 812 F.3d 1180, 1181 (8th Cir. 2016) (endorsing *Stallings'* three-factor test). Here, even if the question of identity could be overcome, estoppel does not

---

[5] Because judicial estoppel is meant to protect the integrity of the judiciary, it applies when a court has adopted the prior position. *Antitrust Inc. v. Larson,* 388 F.3d 594, 600 (8th Cir. 2004). The closely related doctrine of equitable estoppel precludes a party from denying previously asserted facts when an opposing party has relied on the information, even if a court did not. *Id., see also Total Petroleum, Inc. v. Davis*, 822 F.2d 734, 737 (8th Cir. 1987) ("Equitable estoppel prevents a party from denying a state[ment] of facts that he has previously asserted to be true if the party to whom the representation was made has acted in reliance on the representation and will be prejudiced by its repudiation."). Since ETP was not a party to any of the three cases cited by this Court, it is clear that equitable estoppel does not apply. *See id.* (holding plaintiff company could not assert equitable estoppel because none of the prior misrepresentations were made to it).

[6] *Cf.* Plaintiffs' briefs, ECF Nos. 34, 67, 72 (nowhere mentioning any of the three cases).

apply because the second and third *Stalling* factors have not been met. Earth First!'s capacity to sue (or be sued) does not appear to have been considered in any of the three cases, thus there was no "judicial acceptance" of the issue. "Absent success in a prior proceeding, a party's later inconsistent position introduces no risk of inconsistent court determinations, and thus poses little threat to judicial integrity." *Stallings,* 447 F.3d at 1047, *see also, Warner Bros. Entm't v. X One X Prods.*, 840 F.3d 971, 979 (8th Cir. 2016) (denying estoppel because "Warner's statement is not an argument it persuaded the district court to accept ... indeed, the lower court's resulting order does not even mention it."). Finally, as one purported plaintiff among many, in cases seeking only injunctive relief, these three suits would have gone forward in an identical manner without Earth First! being listed as a party. Because the question of Earth First!'s status and capacity has not been previously considered, and has not provided past unfair benefits, there is no detriment to a proper determination, now, of whether Earth First! has the capacity to be sue and be sued. *See Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.*, 617 F.3d 1040, 1051 (8th Cir. 2010) (because prior court did not accept party's estimate of fees and costs, there is no risk of inconsistent court determinations threatening judicial integrity and no unfair advantage or detriment to allowing a subsequent, accurate accounting of the fees and costs).

### III. The Equities

For the reasons set forth at length in our previous filings, ECF Nos. 51, 64, & 70, our clients firmly believe that no entity or association named Earth First! exists for juridical purposes under Rule 17. That conviction is the reason we have filed so many pleadings seeking to explain this to the Court. At the risk of repeating ourselves, Plaintiffs' *own submissions* show that Earth First! is a "non-entity," a name "anyone can use" because it refers to a set of philosophical commitments rather than any kind of entity or organization. *Cf. Doe v. McKesson*, 272 F. Supp. 3d

841, 848 (M.D. La. 2017) ("Although many entities have utilized the phrase 'black lives matter' in their titles or business designations, 'Black Lives Matter' itself is not an *entity* of any sort.") That comports with our understanding as well. We know of nothing further "that other counsel would need to effect service" because it is impossible to effect service on an idea incapable of being sued. If Plaintiffs have a reasonable basis to believe that individuals committed the fanciful acts they attribute to Earth First!, nothing prevents them from identifying those individuals in an amended complaint—subject to the requirements of Rule 11 and the bounds of the litigation defamation privilege—and seeking to serve them individually.

In our system of adversary justice, Plaintiffs bear the burden of properly identifying parties responsible for conduct giving rise to their claims. Energy Transfer Partners has a market capitalization in excess of eighteen billion dollars. The Kasowitz and Fredrikson law firms together employ over 500 lawyers, and Plaintiffs have employed a large, well-resourced private investigative firm (TigerSwan) throughout the progress of the DAPL protests. If there were more to the Complaint's far-fetched account of the involvement of Earth First! adherents in the protests, Plaintiffs would have been able to identify it long ago and could have sought to name and serve those individuals. The fact that they have not done so to date should lead this Court to question whether there was ever a good-faith factual basis for the claims the Complaint attributes to Earth First!.

We take the Court's statement that "[i]t appears … that Earth First! and/or the journal is dancing around" as a reference to the apparent incongruity of Earth First! Journal urging the Court to dismiss claims against Earth First!. However, Earth First! Journal's involvement in this case began only when Plaintiffs decided to dump a copy of their complaint, *addressed to Earth First!*, in the post office box of the Journal. The offense of being forced to deal with a 187-page

legal document is reason enough for the Journal to seek dismissal of these frivolous claims against a non-entity.[7] As noted in our previous filings, the district court in *McKesson* dismissed claims against another non-entity, the "Black Lives Matter" social movement, *sua sponte*. *McKesson*, 272 F. Supp. 3d at 850. Beyond that, the Journal's efforts to ensure Plaintiffs' improper attempts to sue a philosophy have simply sought to save the Court the time of dealing with these claims, a classic role for an amicus.

Undersigned counsel value this Court's time and do not wish to see it wasted. The three cases the Court has cited do not in any way alter the fact that Earth First!, which Plaintiffs concede to be a "non-entity," lacks legal capacity to be sued. Plaintiffs have offered no coherent argument to the contrary. Accordingly, we urge the Court to dismiss *sua sponte* Plaintiffs' claims against Earth First! for failure to meet the requirements of Rule 17.

---

[7] Plaintiffs have suggested that the proper course of action was for the Journal to "ignore the summons and complaint" as they were directed at Earth First!. Of course, that would have been extraordinarily convenient for Plaintiffs. They could then have claimed without opposition that they properly effectuated service on Earth First!, which would then default on the claims in the Complaint. At that point Plaintiffs could argue that even if all the actions they attributed directly to the defendant organizations that actually exist—Greenpeace, BankTrack, *et al.*—were protected by the First Amendment, those groups still conspired with Earth First! to share liability for the funding of anonymous terrorists through the provision of a half million dollars in cash and the proceeds from a vast drug-dealing operation at the DAPL site, and therefore, the lawsuit should not be dismissed against those mainstream environmental organizations. In fact, Plaintiffs have argued as much. *See* Pls. MTD Opp., ECF No. 65, at 8 (Earth First! has "deep ties" to Greenpeace, "regularly collaborates … on their campaigns," and "worked in concert with Greenpeace to fund, direct, and incite acts of violence and terrorism on the ground" at DAPL sites); *id.* at 40 ("longstanding interpersonal relationships" between unnamed individuals at Greenpeace and Earth First! support "inference of an association" between groups); *id.* at 48-49 (Greenpeace liable for violations of Patriot Act via incitement of terrorism). The "non-entity" Plaintiffs hoped to serve through a dump-and-run on the Journal's post office box is mentioned *twenty-five times* in their opposition to Greenpeace and BankTrack's motions to dismiss.
   Moreover, Plaintiffs have argued that personal jurisdiction over certain defendants in North Dakota is appropriate given "co-conspirator" Earth First!'s "contacts … in this state *which are not disputed on this motion*." *Id.* at 88 n.54 (emphasis added). Again, by suing a non-entity (which obviously cannot "dispute[]" its purported contacts or anything else) Plaintiffs hope to (inappropriately) keep this case in their chosen forum.

Dated: April 2, 2018

                                  Respectfully submitted,

                                  */s/ Pamela Spees*
Pamela Spees (admitted *pro hac vice*)
Rachel Meeropol
Shayana Kadidal
A. Azure Wheeler
Lorenzo Di Silvio
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, Floor 7
New York, NY 10012
212-614-6431
pspees@ccrjustice.org

*Attorneys for Amicus Earth First! Journal*