IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA

**ENERGY TRANSFER EQUITY, LP, *ET AL.***     **PLAINTIFFS**

VS.     1:17-CV-00173-BRW

**GREENPEACE INTERNATIONAL, *ET AL.***     **DEFENDANTS**

### ORDER

Pending is Defendant BankTrack's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. No. 37). Plaintiffs Energy Transfer Equity, L.P. and Energy Transfer Partners, L.P. (collectively "Energy Transfer") responded[1] and BankTrack replied.[2]

Energy Transfer failed to state a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim against BankTrack. Based on the record, amending these claims would be futile. Without this claim, this Court lacks personal jurisdiction over BankTrack to adjudicate the additional state law claims. For these reasons, BankTrack's Motion to Dismiss is GRANTED.

### I. BACKGROUND

The legal dispute over the Dakota Access Pipeline ("DAPL") is well-documented.[3] This case involves actions taken by groups opposing DAPL. BankTrack is one of the groups.

BankTrack is a Dutch not-for-profit foundation based in Nijmegen, Netherlands that uses engagement and public pressure to stop banks from financing specific projects it disagrees with.[4]

---

[1] Doc. No. 65.

[2] Doc. No. 78.

[3] The lengthy factual history of this dispute is outlined in *Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101 (D.D.C. June 14, 2017).

[4] Doc. No. 1, p. 13, 18-19.

Energy Transfer alleges BankTrack participates in an international criminal enterprise by "actively and aggressively [ ] disseminating to [banks funding Energy Transfer] extortive threats based on the Enterprise's materially false, misleading, and defamatory disinformation."[5] Energy Transfer alleges BankTrack benefitted from their participation in the alleged international criminal enterprise by fraudulently inducing donations to BankTrack that were used to sustain its continued operations.[6]

While the complaint vaguely attempts to connect BankTrack to acts of "radical eco-terrorist," an international drug distribution and money laundering enterprise, and violations of the Patriot Act, BankTrack's actual conduct in this case was allegedly writing a few letters to financial institutions and posting links to the letters on its website.[7] Energy Transfer disagrees with the contents of the letters,[8] but this disagreement fails to state a plausible RICO claim. In addition, BankTrack's actions were insufficient to sustain personal jurisdiction in this Court.

## II.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

### A.     Standard

When considering a motion to dismiss, a court "accept[s] as true all of the factual allegations contained in the complaint, and review[s] the complaint to determine whether its allegations show that the pleader is entitled to relief."[9] All reasonable inferences from the

---

[5]Doc. No. 1, p. 19; 23, 24-25.

[6]Doc. No. 1, p. 19.

[7]Doc. No. 1, p. 153, Table A; Doc No. 1, pp. 162, 164, Table B.

[8]BankTrack's letters are probably protected First Amendment speech. Because Energy Transfer failed to state a federal claim providing jurisdiction over BankTrack, I do not reach the First Amendment question.

[9]*Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008).

2

complaint are drawn in favor of the nonmoving party.[10] A motion to dismiss should not be granted merely because the complaint "does not state with precision all elements that give rise to a legal basis for recovery."[11] A complaint need only contain "'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[12] "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."[13]

"While a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."[14] Under the *Twombly* "plausibility standard," the allegations must be evaluated to determine whether they contain facts sufficient to "nudge[] [the] claims across the line from conceivable to plausible."[15]

    B.    **Racketeer Influenced and Corrupt Organizations Act**

Energy Transfer may bring a civil action for injuries caused by a RICO violation.[16] Energy Transfer alleges BankTrack was part of an "enterprise" that conducted a "pattern of

---

[10]*Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 590 (8th Cir. 2004).

[11]*Schmedding v. Tnemec Co. Inc.*, 187 F.3d 862, 864 (8th Cir. 1999).

[12]*Id.* (quoting Fed. R. Civ. P. 8(a)).

[13]*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1969 (2007) (overruling language from *Conley v. Gibson,* 78 S. Ct. 99, 102 (1957), which stated, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

[14]*Id.* at 1964-65 (citations omitted).

[15]*Id.* at 1974.

[16]18 U.S.C. § 1964(c).

racketeering activity" that violated RICO section 18 U.S.C. § 1962(c).[17] Energy Transfer alleges BankTrack then used income derived from a pattern of racketeering activity to fund or operate the enterprise in violation of RICO § 1962(a).[18] Finally, Energy Transfer claims BankTrack conspired to further the enterprise's pattern of racketeering activity in violation of RICO § 1962(d).[19] These allegations are "premised on destruction of federal and state land and arson and destruction of pipeline and pipeline equipment, as well as verifiably false statements of fact."[20]

To plausibly allege a RICO violation, Energy Transfer must show the existence of an enterprise that was engaged in interstate commerce; BankTrack's association with the enterprise; BankTrack's participation in the conduct of the affairs of the enterprise; and that BankTrack's participation was through a pattern of racketeering activity.[21] It has failed on all four requirements.

Energy Transfer tenuously connects BankTrack to mail or wire fraud. Energy Transfer, however, was not the direct victim of these plausibly alleged predicate RICO violations. In addition, Energy Transfer's alleged injury did not fall into the "zone of interests" protected by the mail fraud statute.

### 1. Associated Enterprise

Defendants are not associated legal entities. So, to establish an enterprise beyond BankTrack's individual conduct, Energy Transfer must show association-in-fact for a common purpose of engaging in a course of conduct.[22] The common purpose here was to stop

---

[17]Doc. No. 1, pp. 150-169.

[18]Doc. No. 1, pp. 169-172.

[19]Doc. No. 1, pp. 172-176.

[20]Doc. No. 65, p. 45, fn 4.

[21]Eighth Circuit Model Jury Instructions 6.18.1962A.

[22]*United States v. Turkette*, 452 U.S. 576 (1981).

4

construction of DAPL, but there was no association regarding course of conduct. BankTrack's conduct was sending letters with the purpose of limiting funding for DAPL. Presumably Energy Transfer believes these letters gave rise to the alleged RICO predicate mail and wire fraud offenses.

Although unassociated individuals and groups may have used arson and violence to physically prevent the construction of DAPL, BankTrack's letter-writing is not reasonably or plausibly related to these activities to show association-in-fact with that course of conduct. None of BankTrack's actions promoted, assisted, or condoned violent criminal conduct. Without the required association regarding course of conduct, BankTrack is only liable for their own RICO predicate conduct.

To prevent application of RICO to every person who shares a common cause with extremists who act out criminally, RICO requires each person's predicate RICO acts to rise to the level of participation in the management or operation of the enterprise.[23] An extreme minority of DAPL protestors committed criminal acts that harmed Energy Transfer. But BankTrack's letters did not plausibly cause or further arson, bombing, destruction of an energy facility, transportation of stolen property, drug-trafficking, "acts of terrorism," or violation of the Patriot Act.[24] BankTrack's conduct, sending letters to financial institutions, is insufficient to show participation in the operation or management of any of this broader criminal conduct aimed at DAPL. BankTrack did not participate with, organize, or manage the individuals or groups associated with violence. Accordingly, the only plausible RICO predicate acts attributable to BankTrack are writing letters and blog postings.

---

[23] *Reves v. Ernst & Young*, 507 U.S. 170 (1993).

[24] Doc. No. 1, ¶¶ 372-373.

### 2. Victim, Injury, and "Zone of Interest"

Mail or Wire Fraud requires a victim. To satisfy this element, Energy Transfer alleges BankTrack fraudulently induced donations based on false or misleading mailings and postings.[25]

Energy Transfer does not provide a factual basis for any injury related to BankTrack's conduct. It has also failed to plausibly show it was the "victim" of BankTrack's alleged fraudulently induced donations. The only plausible victims of this conduct under mail and wire fraud statutes were the allegedly defrauded donors and possibly the banks.

Energy Transfer "may not use RICO to complain about injuries derivatively caused by mail frauds perpetrated against [donors], because only the [donors] are the beneficiaries of the statutory protection."[26] Stated differently, Energy Transfer must have suffered a direct injury from the predicate RICO violations, rather than a derivative injury.[27] Only direct victims may recover through RICO.[28]  If donors were the victims of mail or wire fraud, they could seek recovery. The financial institutions who BankTrack "pressured" may arguably have a claim if any of them suffered harm. But Energy Transfer has not plausibly shown the RICO violation related injury required to be a "victim." BankTrack did not get money, property, or anything of value from Energy Transfer through the mailings and postings. The complaint provides only conclusory catchall injuries that:

---

[25]Doc. No. 1, p. 19, 28-29, 58, 61, 67, 87, 95, 99, 102-103, 105, 107, 109-110, 153, 162, 164.

[26]*Israel Travel Advisory Service, Inc. v. Israel Identity Tours, Inc.*, 61 F.3d 1250, 1258 (7th Cir. 1995).

[27]*Phoenix Bond & Indemnity Co. v. Bridge*, 477 F.3d 928, 933 (7th Cir. 2007).

[28]*Id.* at 932 (citing *Mid Atlantic Telecom, Inc. v. Long Distance Services, Inc.*, 18 F.3d 260, 263-264 (4th Cir. 1994); *Systems Management, Inc. v. Loiselle*, 303 F.3d 100, 103-104 (1st Cir. 2002); *Ideal Steel Supply Corp. v. Anza*, 373 F.3d 251, 263 (2d Cir. 2004), reversed on other grounds, *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)).

include, but are not limited to: impaired access to the capital markets and increased cost of capital; decreased market capitalization; lost profits; lost relationships with investors, lending partners, and other contractual relationships; business disruption losses and expenses; mitigation costs, substantial damages to Plaintiffs' property, brand, goodwill, business reputation, and standing in the global marketplaces, communities, and government agencies critical to Plaintiffs' business; and the expenditure of substantial resources and management time to mitigate the damage caused by the Enterprise's illegal campaign, including legal fees.[29]

Plaintiff must provide more than "labels and conclusions."[30] And, it must suffer an injury proximately caused by RICO predicate conduct.[31] Allegations must contain facts sufficient to show the proximately caused RICO injury is plausible.[32]

In the 187-page complaint, Energy Transfer fails to directly connect any of the catchall injuries to BankTrack's RICO predicate conduct. Some banks possibly sold loans or shares related to DAPL. Which loans, what institutions, investors, lending partners, or contractual relationships, how and to what degree capital markets decreased, the amount of increase in cost of funding, are all left to the imagination. Energy Transfer's "naked assertion[s] devoid of further factual enhancement" are insufficient to satisfy this element of a RICO claim.[33]

Energy Transfer's application of RICO to BankTrack is dangerously broad. It is as attenuated as other applications of RICO rejected by the Supreme Court.[34]

---

[29]Doc. No. 1, p. 169, 172, 175, 180, 182, 184.

[30]*Twombly*, 127 S. Ct. at 1964-65 (citations omitted).

[31]See *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918 (1982).

[32]*Twombly*, 127 S. Ct. at 1974.

[33]*Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 769 (8th Cir. 2012).

[34]See *Hemi Group, LLC v. City of New York, N.Y.*, 130 S.Ct. 983 (2010) (city's loss of tax revenue not "reason of" RICO violation for failure to provide information needed to implement tax); *Holmes v. Securities Investor Protection Corp.*, 112 S.Ct. 1311, 1312 (1992) (insurer forced to cover losses when broker-dealers became insolvent due to securities fraud was not directly

Energy Transfer compares its RICO claim to that in *Bridge v. Phoenix Bond & Indemnity Co.*.[35] In *Bridge*, Justice Thomas broadly applied federal power in the face of "'over-federalization' of traditional state-law claims."[36] The holding in *Bridge*, however, was simply that a plaintiff need not rely on a defendant's misrepresentations to bring a RICO claim predicated on mail fraud.[37] There is no issue of reliance here. Moreover, the injured party in *Bridge* was the only party to suffer an injury, and the injury was straightforward.[38] Here, defrauded donors would incur the straightforward injury. Potential injury to the banks in lost interest, business opportunities, and business relationships would be secondary. Energy Transfer's alleged injury was not the "reason of" fraudulent solicitation of donations. Expanding RICO to cover remote, indirect injuries would require supreme judicial activism in support of limitless federal power.

If BankTrack is liable here, then every anti-abortion group that mails donor solicitations alleging "abortion is murder," or urges individuals not to do business with abortion providers on that basis, may be part of a RICO enterprise responsible for abortion clinic bombings and physician murders carried out by a minority of extremists. Under Energy Transfer's interpretation, President Trump, who has solicited donations to help him end illegal immigration

---

injured, for RICO liability, by the fraud); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 460-461 (2006) (competitor's tax fraud, which allowed competitor to undercut prices and harm business, too attenuated for RICO claim because the direct victim of fraud was state who lost tax revenue, not business).

[35]553 U.S. 639 (2008).

[36]*Id*. at 559.

[37]*Id*. at 661.

[38]See *Hemi Group, LLC*, 130 S.Ct. at 985-986 (explaining why *Bridge* did not expand federal RICO power to every imaginable injury).

and stated immigrants are rapist, drug dealers, and animals, would be part of a RICO enterprise with racist criminals who have violently attacked immigrants on these express grounds. It is the remote connection to extreme criminality, not the content of the communication, that makes these statements or actions insufficient for RICO liability based on mail or wire fraud.

Energy Transfer may seek damages for the letters and posts through a defamation claim.[39] The allegedly defamatory communication here, however, is outside the "zone of interests" protected by the mail and wire fraud statutes.[40] Otherwise, the Government, individuals, corporations, and interest groups could use criminal and civil liability under RICO to curtail almost any disagreeable, arguably protected speech.[41]

### III. MOTION TO DISMISS FOR LACK OF JURISDICTION

A plaintiff must prove personal jurisdiction by a preponderance of the evidence at trial or after an evidentiary hearing.[42] To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff need only make a *prima facie* showing.[43] To defeat a plaintiff's *prima facie* showing, a defendant must show that "some other considerations would render jurisdiction unreasonable."

---

[39] The current complaint, however, fails to state how writing allegedly defamatory letters proximately caused any injury, much less a direct injury, to Energy Transfer's "business and reputation; Doc. No. 1, p. 152.

[40] See *Holmes v. Securities Investor Protection Corporation*, 503 U.S. 258, 287-288 (1998) (Scalia, J., concurring).

[41] The parties argue over whether or not the communications at issue are protected speech. Because there is no basis for RICO liability here, I do not reach the First Amendment issue.

[42] *Creative Calling Solutions, Inc. v. LF Beauty Ltd.*, 799 F.3d 975, 979 (8th Cir. 2015) (citing *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1387 (8th Cir. 1991)).

[43] *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 561 (8th Cir. 2003).

A forum state may exercise personal jurisdiction over a defendant when a plaintiff shows: (1) the defendant has "minimum contacts" with the forum state;[44] and (2) personal jurisdiction is consistent with "traditional notions of fair play and substantial justice."[45] The "central question" is whether a defendant "purposefully availed itself of the privilege of conducting activities within the forum state," thus invoking the benefits and protections of its laws.[46]

Energy Transfer argues for personal jurisdiction based on the federal RICO statute, North Dakota's long-arm statute, or Rule 4(k)(2).[47] Nationwide RICO personal jurisdiction and Rule 4(k)(2) require a valid RICO claim. As noted, BankTrack's allegedly defamatory letters and posts are insufficient to sustain valid RICO claims. Accordingly, North Dakota's long-arm statute must provide the basis for jurisdiction.

North Dakota's long-arm provision permits personal jurisdiction to the fullest extent allowed by due process.[48] So the question here is "whether the assertion of personal jurisdiction would violate" due process.[49]

When determining whether personal jurisdiction over a party is consistent with due process, a court considers five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relationship of those contacts with the cause of

---

[44] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980).

[45] *Asahi Metal Indus. Co. v. Superior Court of Calif.*, 480 U.S. 102, 113 (1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[46] *Pecoraro,* 340 F.3d at 562 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[47] Doc. No. 65, pp. 103-108.

[48] *Bolinske v. Herd*, 689 N.W.2d 397, 401 (N.D. 2004).

[49] *Eagle Tech. v. Expander Americas, Inc.*, 783 F.3d 1131, 1136 (8th Cir. 2015).

action; (4) the state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties.[50]

Is personal jurisdiction established in North Dakota when a Dutch foundation sends letters to a California and a New York Bank urging them not to fund a North Dakota project operated by two Delaware partnerships headquartered in Dallas, Texas? Based on the allegations in this case, personal jurisdiction over BankTrack is inconsistent with due process.

A.   **Nature and Quality of Contacts with Forum State**

Energy Transfer alleges Defendants had "numerous contacts" with North Dakota.[51] However, the allegations against BankTrack individually show that it had no direct contact with North Dakota.

Energy Transfer acknowledges BankTrack's "speech activities" took place outside the state.[52] So, Energy Transfer claims BankTrack is responsible for almost every action committed by every DAPL protestor. This is insufficient. BankTrack, separate Defendants, and "extremist" protestors are not related entities. But even if they were, activities of "related entities acting in other capacities" is insufficient to establish personal jurisdiction.[53] This is true even if the same people are administrators for the entities.[54] That is not the case here. The relevant question is whether BankTrack, based solely on writing letters to a California and a New York bank, should reasonably expect to be "haled into court" in North Dakota.[55]

---

[50]*Id.*

[51]Doc. No. 65, p. 103-104 (citing Doc. No. 1, ¶¶355-360).

[52]Doc. No. 65, p. 107.

[53]*Pecoraro*, 340 F.3d at 562.

[54]*Id.*

[55]*Id.* at 562-563.

### B. Quantity of Contacts

Energy Transfer has not established any direct contacts between BankTrack and North Dakota.[56]

### C. Contacts Related to this Case

BankTrack's contacts with out-of-state banks related to a project in North Dakota. Dissemination of allegedly false claims began in the Netherlands and reached both California and New York.[57] The complaint does not state where loan and funding agreements were executed. These out-of-state conducts do not support personal jurisdiction in North Dakota.

### D. Forum for Residents

None of the Plaintiffs or Defendants are residents of North Dakota.[58] No bank or entity targeted by BankTrack's conduct is a resident of North Dakota.

### E. Convenience to the Parties

It is likely the many of witnesses to the violent conduct that occurred opposing DAPL are located in North Dakota. BankTrack, however, did not participate or support those actions.

Energy Transfer failed to identify a single witness located in North Dakota who could testify to the alleged defamatory letters or their effect.[59] It is not clear if witness from either American bank is located in North Dakota. No Plaintiff is located in North Dakota. No Defendant or officer is located in North Dakota.[60] The only potential in-state witnesses may

---

[56] Doc. No. 1, p. 153, Table A; Doc No. 1, pp. 162, 164, Table B.

[57] Doc. No. 1, p. 58.

[58] Doc. No. 1; Doc. No. 65, p. 99-100.

[59] Doc. No. 65, p. 99-100.

[60] Doc. No. 65.

testify regarding the nature of the criminal acts occurring during the protests, which is not relevant to the alleged defamation.[61]

BankTrack has not had "minimum contacts" with North Dakota. None of BankTrack's actions purposefully availed itself of the privilege of conducting activities within the forum state.

## CONCLUSION

BankTrack's Motion to Dismiss for Lack of Jurisdiction and for Failure to State a Claim (Doc. No. 37) is GRANTED.  Energy Transfer's federal RICO claims against BankTrack[62] are DISMISSED for failure to state a plausible claim.  Energy Transfer's state claims[63] against BankTrack are DISMISSED for lack of personal jurisdiction.

IT IS SO ORDERED this 24th day of July, 2018.

/s/ Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[61]*Id.*

[62]Counts I-III, Doc. No. 1, pp. 150-176.

[63]Counts IV-VII, Doc. No. 1, pp. 176-186.