**UNITED STATES DISTRICT COURT**
**DISTRICT OF NORTH DAKOTA**
**WESTERN DIVISION**

| | |
|---|---|
| ENERGY TRANSFER EQUITY, L.P., *et al.*, | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 17-CV-00173-DLH |
| GREENPEACE INTERNATIONAL, *et al.*, | |
| Defendants. | |

**GREENPEACE INTERNATIONAL, GREENPEACE, INC., AND CHARLES BROWN'S
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ iii

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 5

   A.   Greenpeace Entities ...................................................................................... 5

   B.   Charles Brown ............................................................................................... 6

   C.   Plaintiff ......................................................................................................... 6

   D.   Other Parties and Non-Parties ...................................................................... 6

ARGUMENT ......................................................................................................... 7

   A.   The Complaint Should Be Dismissed For Failure to State a Claim ............... 7

      1.   Applicable Pleading Standards and Choice of Law ............................... 7

      2.   ETP Fails to Plead a Plausible Claim Under RICO ............................... 9

          a.   The RICO Elements ...................................................................... 9

          b.   ETP Has Not Plausibly Pled a RICO "Enterprise" ...................... 10

          c.   ETP Has Not Plausibly Pled A "Pattern" Of Racketeering Activity ...................... 16

          d.   ETP Has Not Plausibly Pled Any Predicate Criminal Acts ................... 16

              (1)   Defamation Is Not A Predicate Act ..................................... 16

              (2)   ETP Cannot Plausibly Plead Mail And Wire Fraud ............. 17

          e.   ETP Cannot Plausibly Plead Proximate Cause ........................... 19

      3.   Plaintiff Fails to Plead a Plausible Claim for Defamation ..................... 21

          a.   Traditional Advocacy is Protected by the First Amendment ................. 21

          b.   Failure To Plead Statements With Specificity ............................. 23

          c.   Greenpeace's Challenged Statements Are Protected Opinion ................. 24

          d.   ETP Cannot Plausibly Plead Statements Made With Actual Malice ................... 30

i

      e.      Greenpeace's Statements Are Privileged.................................................. 35

    4.    The Tortious Interference Claims Should Be Dismissed................................. 36

    5.    The Criminal Trespass Claims Should Be Dismissed .................................... 38

  B.    The Court Should Dismiss GPI and Charles Brown for Lack of Jurisdiction Pursuant to Rule 12(b)(2)............................................................................................ 39

CONCLUSION..................................................................................................................... 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
   783 F.3d 1328 (D.C. Cir. 2015) (Kavanaugh, J.)....................................................25

*Abbas v. Foreign Policy Grp., LLC*,
   975 F. Supp. 2d 1 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015)................9

*Adelson v. Harris*,
   402 P.3d 665 (Nev. 2017)........................................................................................36

*Adelson v. Harris*,
   973 F. Supp. 2d 467 (S.D.N.Y. 2013)......................................................................36

*Almanza v. United Airlines, Inc.*,
   851 F.3d 1060 (11th Cir. 2007) ...............................................................................15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)................................................................................7, 9, 23, 33

*Atkinson v. McLaughlin*,
   462 F. Supp. 2d 1038 (D.N.D. 2006)..................................................................36, 37

*Atlas Pile Driving Co. v. DiCon Fin. Co.*,
   886 F.2d 986 (8th Cir. 1989) ..............................................................................11, 17

*Avery v. Ward*,
   No. 1:16-cv-00055, 2017 WL 5451743 (D.N.D. Nov. 15, 2017)...............................9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................................7

*Bennett v. Berg*,
   685 F.2d 1053 (8th Cir. 1982) ..................................................................................8

*Bennett v. Berg*,
   710 F.2d 1361 (8th Cir. 1983) .................................................................................13

*Beverly Hills Foodland, Inc. v United Food & Commercial Workers Union, Local 655*,
   39 F.3d 191 (8th Cir. 1994) ....................................................................................38

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015).....................................................................................23

*Biro v. Conde Nast*,
  963 F. Supp. 2d 255 (S.D.N.Y. 2013)....................................................................33

*Bothuell v. Grace*,
  No. 16-11009, 2017 WL 892343 (E.D. Mich. Feb. 16, 2017), *report and
  recommendation adopted sub nom. Bothuell v. Grace*, No. 16-11009, 2017
  WL 878026 (E.D. Mich. Mar. 6, 2017) ..................................................................35

*Bowman v. W. Auto Supply Co.*,
  985 F.2d 383 (8th Cir. 1993) ..................................................................................10

*Boyle v. United States*,
  556 U.S. 938 (2009).................................................................................................11

*Brodkorb v. Minn.*,
  No. Civ. 12-1958, 2013 WL 588231 (D. Minn. Feb. 13, 2013)..............................30

*Brown & Williamson Tobacco Corp. v. Jacobson*,
  713 F.2d 262 (7th Cir. 1983) ..................................................................................32

*Browning v. Flexsteel Indus., Inc.*,
  955 F. Supp. 2d 900 (N.D. Ind. 2013) ....................................................................12

*CACI Premier Tech. v. Rhodes*,
  536 F.3d 280 (4th Cir. 2008) ..................................................................................34

*Campbell v. Citizens for an Honest Gov't, Inc.*,
  255 F.3d 560 (8th Cir. 2001) ............................................................................24, 34

*Catchai v. Fort Morgan Times*,
  No. 15-CV-00678-MJW, 2015 WL 6689484 (D. Colo. Nov. 3, 2015),
  *judgment entered*, No. 15-CV-00678-MJW, 2015 WL 6689485 (D. Colo.
  Nov. 3, 2015) ..........................................................................................................35

*Citizens Against Rent Control/Coal. for Fair Hous. v. Berkeley*,
  454 U.S. 290 (1981).................................................................................................21

*Cleveland v. United States*,
  531 U.S. 12 (2000)...................................................................................................17

*Compuware Corp. v. Moody's Inv'rs Servs.*,
  499 F.3d 520 (6th Cir. 2007) ..................................................................................32

*Container Mfg. Inc. v. CIBA-GEIGY Corp.*,
  870 F. Supp. 1225 (D.N.J. 1994) ............................................................................31

*Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*,
  528 F.3d 1001 (8th Cir. 2008) ..........................................................................10, 11

*Deripaska v. Associated Press*,
    No. CV 17-00913 (ESH), 2017 WL 4685297 (D.D.C. Oct. 17, 2017) ...................................33

*Deupree v. Iliff*,
    860 F.2d 300 (8th Cir. 1988) ......................................................................................23, 28

*Diario El Pais, S.L. v. Nielsen Co. (US)*,
    No. 07cv11295(HB), 2008 WL 4833012 (S.D.N.Y. Nov. 6, 2008)....................................33

*DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*,
    No. 12-CV12867, 2012 WL 5906870 (E.D. Mich. Nov. 26, 2012) .......................................35

*Dodds v. Am. Broad. Co.*,
    145 F.3d 1053 (9th Cir. 1998) .........................................................................................25

*Doe v. Salisbury Univ.*,
    123 F. Supp. 3d 748 (D. Md. 2015) ...................................................................................33

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998) ..............................................................................39

*Egiazaryan v. Zalmayev*,
    No. 11 Civ. 2670 (PKC), 2011 WL 6097136 (S.D.N.Y. Dec. 7, 2011) .................................33

*Elsevier Inv. v WHPR, Inc.*,
    692 F. Supp. 2d 297 (S.D.N.Y. 2010)..................................................................................8

*Fairbanks v, Roller*,
    Case No. 1:17-cv-01052, 2018 WL 2727897 (D.D.C. June 6, 2018)...................................33

*Farah v. Esquire Magazine*,
    736 F.3d 528 (D.C. Cir. 2013) ........................................................................23, 24, 25, 38

*Fladeland v. Satrom*,
    No. 2:12-cv-20, 2012 WL 12914317 (D.N.D. Oct. 26, 2012)..........................................10, 11

*Garrison v. Louisiana*,
    379 U.S. 64 (1964).............................................................................................................32

*Gertz v. Robert Welch, Inc.*,
    418 U.S. 323 (1974)..............................................................................................24, 31, 32

*H&Q Props., Inc. v. Doll*,
    793 F.3d 852 (8th Cir. 2015) ..........................................................................................17

*Handeen v. Lemaire*,
    112 F.3d 1339 (8th Cir. 1997) .......................................................................................10, 16

*Hanks v. Wavy Broad., LLC*,
   Civ. No. 2:11cv439, 2012 WL 405065 (E.D. Va. Feb. 8, 2012) ...........................................33

*Hargrave v. Washington Post*,
   No. Civ. A. 09-0357(HHK), 2009 WL 1312513 (D.D.C. May 12, 2009), *aff'd*,
   365 F. App'x 224 (D.C. Cir. 2010) ...........................................................................35

*Hill v. Cosby*,
   665 F. App'x 169 (3d Cir. 2016) ...............................................................................25

*Hourani v. Mirtchev*,
   796 F.3d 1 (D.C. Cir. 2015) ......................................................................................17

*Humann v. KEM Elec. Coop.*,
   450 F. Supp. 2d 1006 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007) .......................24, 35

*Hustler Magazine, Inc. v. Falwell*,
   485 U.S. 46 (1988) ..................................................................................................23

*Hutchinson v. Proxmire*,
   443 U.S. 111 (1979) ..................................................................................................1

*Jacobus v. Trump*,
   55 Misc. 3d 470, 51 N.Y.S.3d 330 (N.Y. Sup. Ct. 2017), *aff'd,* 2017 N.Y. Slip
   Op. (1st Dep't Dec. 12, 2017) ...................................................................................29

*Janklow v. Newsweek, Inc.*,
   759 F.2d 644 (8th Cir. 1985) ................................................................................28, 4

*Janklow v. Newsweek, Inc.*,
   788 F.2d 1300 (8th Cir. 1986) ...................................................................................28

*Kahl v. Bureau of Nat'l Affairs*,
   856 F.3d 106 (D.C. Cir. 2017) (Kavanaugh, J.) ...........................................................35

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996), *aff'd,* 113 F.3d 1229 (2d Cir. 1997) ................................8

*Kimberlin v. Nat'l Bloggers Club*,
   No. GJH-13-3059, 2015 WL 1242763 (D. Md. Mar. 17, 2015) .....................................17, 20

*Kimm v. Lee*,
   No. 04-Civ-5724(HB), 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005) .....................................17

*Klayman v. City Pages*,
   No. 5:13-cv-143-Oc-22PRL, 2015 WL 1546173 (M.D. Fla. Apr. 3, 2015),
   *aff'd*, 2016 WL 3033141 (11th Cir. May 27, 2016) .......................................................34

*Koch v. Goldway*,
    817 F.2d 507 (9th Cir. 1987) ........................................................................28

*Kuhn v. Chesapeake Energy Corp.*,
    No. 1:12-cv-086, 2012 WL 4442798 (D.N.D. Sept. 25, 2012) ...............................33

*Lee v. TMZ Prods. Inc.*,
    No. 16-2736, 2017 WL 4675710 (3d Cir. Oct. 17, 2017).......................................35

*Levin v. McPhee*,
    119 F.3d 189 (2d Cir. 1997)...........................................................................25

*Liberty Lobby, Inc. v. Dow Jones & Co.*,
    838 F.2d 1287 (D.C. Cir. 1988)......................................................................33

*Lohrenz v. Donnelly*,
    350 F.3d 1272 (D.C. Cir. 2003)......................................................................32

*Magee v. Trustees of Hamline Univ., Minn.*,
    747 F.3d 532 (8th Cir. 2014) ...........................................................................8

*Mayfield v. NASCAR, Inc.*,
    674 F.3d 369 (4th Cir. 2012) .....................................................................23,33

*McColl Farms, LLC v. Pflaum*,
    837 N.W.2d 359 (N.D. 2013) ........................................................................20

*McDonald v. Wise*,
    769 F.3d 1202 (10th Cir. 2014) ......................................................................23

*McFarlane v. Sheridan Square Press, Inc.*,
    91 F.3d 1501 (D.C. Cir. 1996)........................................................................35

*McNally v. United States*,
    483 U.S. 350 (1987)....................................................................................17

*Miami Herald Publ'g Co. v. Tornillo*,
    418 U.S. 241 (1974)....................................................................................35

*Michaelis v. CBS, Inc.*,
    119 F.3d 697 (8th Cir. 1997) .........................................................................36

*Michel v. NYP Holdings, Inc.*,
    816 F.3d 686 (11th Cir. 2016) .....................................................................9, 23

*Milkovich v. Lorain Journal Co.*,
    497 U.S. 1 (1990)........................................................................................24

*Miranda v. Ponce Fed. Bank*,
   948 F.2d 41 (1st Cir. 1991) ........................................................................................8

*Moldea v. N.Y. Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) ..................................................................................23

*Montgomery v. Risen*,
   197 F. Supp. 3d 219 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 709
   (D.C. Cir. 2017) .......................................................................................................34

*Mott v. Anheuser-Busch, Inc.*,
   910 F. Supp. 868 (N.D.N.Y. 1995), *aff'd*, 112 F.3d 504 (2d Cir. 1996) ...............31

*Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*,
   48 F.3d 1066 (8th Cir. 1995) ....................................................................................8

*NAACP v. Alabama ex rel. Patterson*,
   357 U.S. 449 (1958) .................................................................................................21

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) .................................................................................................21

*Nelson v. Nelson*,
   833 F.3d 965 (8th Cir. 2016) ..................................................................................11

*Neubauer v. FedEx Corp.*,
   849 F.3d 400 (8th Cir. 2017) ..................................................................................20

*New York Times Co. v. Sullivan*,
   376 U.S. 254 (1964) ...............................................................................22, 25,28, 35

*Newton v. Tyson Foods, Inc.*,
   207 F.3d 444 (8th Cir. 2000) ............................................................................10, 19

*Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*,
   111 F.3d 1386 (8th Cir. 1997) ................................................................................32

*Ollman v. Evans*,
   750 F.2d 970 (D.C. Cir. 1984) ................................................................................28

*Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*,
   829 F.3d 576 (8th Cir. 2016) ..................................................................................25

*Pan Am. Sys., Inc. v. Hardenbergh*,
   871 F. Supp. 2d 6 (D. Me. 2012) ...........................................................................33

*Parisi v. Sinclair*,
   845 F. Supp. 2d 215 (D.D.C. 2012) ........................................................................33

*Pauling v. Globe-Democrat Publ'g Co.*,
    362 F.2d 188 (8th Cir. 1966) .................................................................34

*Pippen v. NBCUniversal Media, LLC*,
    734 F.3d 610 (7th Cir. 2013) ................................................................23

*Polensky v. Continental Cas. Co.*,
    397 F. Supp. 2d 1164 (D.N.D. 2005) ......................................................9

*Price v. Viking Penguin, Inc.*,
    881 F.2d 1426 (8th Cir. 1989) ...............................................................28

*Ragland v. Blue Cross Blue Shield of N.D.*,
    No. 1:12-cv-080, 2012 WL 5511006 (D.N.D. Nov. 14, 2012)..............23

*Raineri Constr., LLC v. Taylor*,
    No. 4:12-CV-2297 (CEJ), 2014 WL 348632 (E.D. Mo. Jan. 31, 2014)............12, 13

*Reliance Ins. Co. v. Barron's*,
    442 F. Supp. 1341 (S.D.N.Y. 1977)........................................................32

*Resolute Forest Prods., Inc. v. Greenpeace Int'l*,
    No. 17-CV-02824-JST, 2017 WL 4618676 (N.D. Cal. Oct. 16, 2017).......................... *passim*

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993)................................................................................13

*Riemers v. Mahar*,
    748 N.W.2d 714 (N.D. 2008) ................................................................31

*Riley v. Harr*,
    292 F.3d 282 (1st Cir. 2002)..................................................................26

*S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*,
    284 F.3d 518 (4th Cir. 2002) ................................................................18

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012)...............................................................23, 33

*Scheidler v. Nat'l Org. for Women, Inc.*,
    739 F. Supp. 1210 (N.D. Ill. 1990) .......................................................36

*Schuster v. U.S. News & World Report, Inc.*,
    602 F.2d 850 (8th Cir. 1979) ................................................................27

*Sebrite Agency, Inc. v. Platt*,
    884 F. Supp. 2d 912 (D. Minn. 2012) ...................................................16

*Secrist v. Harkin*,
   874 F.2d 1244 (8th Cir. 1989) ...................................................................24, 28, 29

*Sedima, S.P.R.L. v. Imrex Co., Inc.*,
   473 U.S. 479 (1985)........................................................................................20

*Snyder v. Phelps*,
   562 U.S. 443 (2011)........................................................................................21

*Soentgen v. Quain & Ramstad Clinic, P.C.*,
   467 N.W.2d 73 (N.D. 1991) .......................................................................34, 35

*St. Amant v. Thompson*,
   390 U.S. 727 (1968)....................................................................................31, 33

*Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*,
   No. 16-1534 (JEB),2017 WL 2573994 (D.D.C. June 14, 2017) ...........................26

*State Farm Mut. Auto. Ins. Co. v. Cohan*,
   No. CV 09-2990(JS)(WDW), 2009 WL 10449036 (E.D.N.Y. Dec. 30, 2009)......................11

*Stepnes v. Ritschel*,
   663 F.3d 952 (8th Cir. 2011) ......................................................................24, 32

*Summit Bank v. Rogers*,
   206 Cal. App. 4th 669 (2012) ..........................................................................29

*Sura v. National Oilwell Varco, L.P.*,
   Case No. 1:15-cv-127, 2016 WL 4217766 (D.N.D. Apr. 6, 2016)............................9

*Tavoulareas v. Piro*,
   817 F.2d 762 (D.C. Cir. 1987) (*en banc*)..........................................................32

*Thornhill v. Alabama*,
   310 U.S. 88 (1940)..........................................................................................21

*Turkish Coal. of Am., Inc. v. Bruininks*,
   678 F.3d 617 (8th Cir. 2012) ...........................................................................25

*U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop.*,
   690 F.3d 951 (8th Cir. 2012) .............................................................................7

*Underwager v. Channel 9 Australia*,
   69 F.3d 361 (9th Cir. 1995) .............................................................................30

*United States v. Bradley*,
   644 F.3d 1213 (11th Cir. 2011) .......................................................................18

x

*United States v. Chavis*,
　461 F.3d 1201 (10th Cir. 2006) ....................................................................18

*United States v. Eiland*,
　738 F.3d 338 (D.D.C. 2013) ........................................................................13

*United States v. Takhalov*,
　827 F.3d 1307 (11th Cir. 2016) ....................................................................18

*United States v. Turkette*,
　452 U.S. 576 (1981)................................................................................10, 11

*Vill. of Schaumburg v. Citizens for a Better Env't*,
　444 U.S. 620 (1980)......................................................................................21

*Ward v. Bullis*,
　748 N.W.2d 397 (N.D. 2008) ......................................................................38

*Watts v. United States*,
　394 U.S. 705 (1969)......................................................................................28

*White v. Fraternal Order of Police*,
　909 F.2d 512 (D.C. Cir. 1990) ...............................................................35, 36

*Wilkow v. Forbes, Inc.*,
　No. 99 C 3477, 2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d
　552 (7th Cir. 2001)........................................................................................35

*Williams v. Mohawk Indus.*,
　465 F.3d 1277 (11th Cir. 2006) ......................................................................8

*Zappin v. Daily News, L.P.*,
　No. 16 CIV. 8762 (KPF), 2017 WL 3425765 (S.D.N.Y. Aug. 9, 2017) ................36

*Zidon v. Pickrell*,
　344 F. Supp. 2d 624 (D.N.D. 2004)..............................................................39

*Zutz v. Kamrowski*,
　787 N.W.2d 286 (N.D. 2010) ........................................................................9

**Statutes**

18 U.S.C. § 1343.................................................................................................18

18 U.S.C. § 1961(4).............................................................................................10

18 U.S.C. § 1962(c).............................................................................................10

18 U.S.C. § 1962(d).............................................................................................10

28 U.S.C. § 1404(a) .................................................................................39

N.D. Cent. Code § 12.1–22–03.................................................................38

N.D. Cent. Code § 12.1-06.1-05 ...............................................................20

N.D. Cent. Code § 14-02-03 ......................................................................24

N.D. Cent. Code § 14-02-05 ......................................................................35

Racketering Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968.............. *passim*

U.S. Patriot Act .....................................................................................4, 38

**Constitutional Provisions**

U.S. Const. amend. I ......................................................................... *passim*

**Other Authorities**

S. Rep. No. 91-617 (1969) .........................................................................11

**Federal Rules of Civil Procedure**

Rule 9(b) ...........................................................................................8, 11, 18

Rule 11(b) ..................................................................................................3

Rule 12(b)(2).............................................................................................40

Rule 12(b)(6)................................................................................... *passim*

Defendants Greenpeace International ("GPI"), Greenpeace, Inc. ("GP Inc.") (collectively "Greenpeace" or "Greenpeace Defendants"), and Charles Brown hereby move under Rule 12(b)(6) to dismiss with prejudice the First Amended Complaint of Energy Transfer Equity, L.P. ("ETE") and Energy Transfer Partners, L.P. ("ETP") (collectively "Energy Transfer").

## <u>INTRODUCTION</u>

This Court properly rejected a sprawling, ill-considered attempt by ETP to apply the RICO statute to environmental advocacy by Greenpeace and a disparate list of non-parties, and to find the speech at issue defamatory merely because it takes positions contrary to those advanced by ETP to support its oil pipeline operations. ECF No. 88 ("GP Order"). Finding that ETP's original, 442-paragraph, "vague" complaint "failed to state plausible RICO claims against Greenpeace" or "comply with basic rules of pleading"  (GP Order 2, 5), the Court invited ETP to carefully reconsider its claims and file – if it could – an amended pleading with "concise and direct allegations" against each defendant, or face dismissal (*id.* at 5).

ETP has utterly failed to follow the Court's direction. Instead, unwilling to concede that its claims are meritless, ETP has doubled down, and its new, 263-paragraph amended complaint contains much the same inflammatory, insubstantial language as its prior pleading, introducing chiefly cosmetic changes that fail to remedy the fundamental problems that led to the Court's Order on the Greenpeace Defendants' motion, and the dismissals of BankTrack, ECF No. 87 ("BankTrack Order") and Earth First!, ECF No. 99 ("Earth First! Order").

Notably, ETP does not substantively address the deficiencies the Court identified in its RICO claims at all, yet it re-asserts all of these claims in the Amended Complaint. It continues to allege Greenpeace conspired with Earth First!, even though the Court has concluded "no such entity exists and it has not been served." GP Order 4; *see also* Earth First! Order 2-3. ETP continues to allege that Greenpeace engaged in fundraising and supply drives for protestors,

which this Court previously found insufficient as allegations for claimed "'direct and indirect'
funding of an alleged international criminal enterprise." GP Order 4. And, rather than name the
"Red Warrior Camp" as a party, GP Order 4, ETP has joined individual defendants without
plausibly alleging that Greenpeace and those individuals devised an enterprise to intentionally
engage in criminal or even fraudulent conduct, nor has it named any individual members of Earth
First! who purportedly provided "seed money" to Red Warrior Camp members. EarthFirst!
Order 2-3; *see also* ECF No. 100 (ordering Plaintiff to "identify and serve all Doe Defendants").
ETP thus has done nothing to answer the Court's concern that its RICO claim does not
specifically address or allege "[t]he details concerning the 'donation drives,' Greenpeace's
precise role in them, to whom Greenpeace gave funds, [or] how housing and feeding individuals
in cities across the country furthered violent protests in North Dakota." GP Order 4.

Other than generalized and implausible allegations that Greenpeace's political speech and
advocacy must have convinced unnamed individuals to not only join DAPL protests, but engage in
criminal activities there – and that those non-parties may have received food and other supplies
purchased through donations coordinated by Greenpeace – ETP continues to fail to "properly plead
any of the particulars of the alleged fraudulent activities" and how Greenpeace played any role in
the purported fraud. GP Order 5. ETP does not identify the "misconduct" or "specific content" of
Greenpeace's publications it claims defrauded donors and others, nor does it specify the location,
content, and individuals involved in the protest "trainings" it alleges Greenpeace had a hand in
conducting. *See Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2017 WL 4618676,  at *10-11
(N.D. Cal. Oct. 16, 2017). ETP thus fails to remedy the lack of specificity around its RICO claims,
further demonstrating that the RICO claims are merely disguised defamation claims. Indeed,
ETP's defamation claim, which fails for the reasons set forth *infra* § A.3, remains the criminal
predicate for the RICO claim – but such claims, as a matter of law, do not state predicate criminal

acts for RICO. The statements in suit are the same or not materially different than what the Court found insufficient against BankTrack, noting there that although "Energy Transfer disagrees with the contents," of a defendant's advocacy, "this disagreement fails to state a plausible RICO claim." BankTrack Order 2. In light of ETP's wholesale failure to remedy the fatal flaws in its complaint under RICO, the Court should dismiss those claims again, this time with prejudice.

Rather than correct the absence of detail regarding Greenpeace's alleged role in a purported criminal enterprise surrounding the DAPL protests, ETP seeks to expand the scope of its already wide-ranging and incoherent claims by adding allegations regarding Greenpeace's alleged protest activities targeting ETP's projects in Louisiana and Pennsylvania. Here, the connection between the so-called enterprise members is even more tenuous. ETP's baffling decision to join Charles Brown – a Greenpeace employee hired long after the DAPL protests at issues here concluded – as a defendant is not only frivolous and in bad faith, but possibly sanctionable.[1] Failing, still, to identify any Greenpeace associate who engaged in any criminal or fraudulent activity in North Dakota, ETP stretches the bounds of plausibility to their breaking point by joining Brown as a defendant for his alleged recent advocacy on behalf of Greenpeace in Louisiana and Pennsylvania. These allegations, like so many in ETP's pleading, are vague and fail to make any claim for RICO, defamation, or otherwise. Indeed, ETP's minimal allegations regarding Brown fail to specifically allege any illegal conduct, fail to specifically allege any fraudulent conduct, and once again place the onus for any sort of viable RICO claim on the supposed connection between Brown and Earth First! – a non-entity that has been dismissed from the case. As this court observed, ETP's ire with

---

[1] The Court has already noted that ETP's incoherent and baseless pleadings may warrant sanctions pursuant to Rule 11. ECF No. 94, Order n.4 ("It is clear from Plaintiff's voluminous filings of historical, irrelevant web postings that Plaintiffs did not, at the time of filing, have evidentiary support for the specific allegations against [EarthFirst!]. Plaintiffs are reminded of their obligations under Rule 11(b) of the Federal Rules of Civil Procedure.").

protestors of its projects has devolved into no more than allegations comprised of "the airing of years-long, unrelated grievances," and "irrelevant hyperbole." GP Order 5.

Not surprisingly, the Amended Complaint in many ways minimizes its focus on Greenpeace's supposed false and defamatory statements. Rather than cite 238 alleged false statements as it did before, the Amended Complaint focuses on 35 Greenpeace publications. This Court has dismissed, however, many of the same or similar challenged statements as to BankTrack. BankTrack Order 9. The statements at issue simply do not plausibly allege actual malice – and the Amended Complaint does nothing more than plead the constitutional standard and allege that the statements must have been false because they were in service of a vague and implausible RICO conspiracy. ETP makes no attempt to explain why its new allegations do not suffer from the same deficiencies previously identified by Greenpeace beyond the failure to plead actual malice – that is, that the underlying statements were (i) traditional advocacy protected by the First Amendment; (2) not pled with necessary specificity; and/or (3) protected opinion. ETP continues to conflate the requirements of defamation and RICO/conspiracy, arguing that statements made by non-defendant "enterprise members" or other Greenpeace entities can be attributed to all Greenpeace Defendants.

The impact on Greenpeace from this suit – even if ultimately dismissed, as it should be – remains enormous, especially in terms of the potential chilling effect on further speech by Greenpeace and other advocacy groups. The barrenness of ETP's amended complaint only serves to emphasize that imposing extraordinary costs on the defendants, stigmatizing them with outlandish charges of drug-trafficking and terrorism under the U.S. Patriot Act, and inhibiting public criticism, is the very point of this SLAPP lawsuit. Further, even the mere possibility of an award of treble damages – here $900 Million – under RICO heightens the perceived threat. This Court should reject ETP's scorched-earth tactics, and dismiss its claims with prejudice.

## FACTUAL BACKGROUND

**A.      Greenpeace Entities**

Greenpeace is a network of independent non-profit legal entities with nearly 3 million

individual supporters globally. The 26 national and regional Greenpeace organizations ("NROs")

pursue environmental conservation on many fronts, across many campaigns, without relying on

financial support from corporations or government. *See* ECF No. 40-3, Declaration of Lacy H.

Koonce, III ("Koonce Decl.") Ex. 1. Indeed, Greenpeace's funding is nearly all provided by

small, individual donations from 250,000 members in the U.S. and 2.8 million members

worldwide. *Id*. GPI, whose ambit is limited to top-line global issues and strategies and whose

governance structure is based on voting rights held by the NROs, is based in Netherlands. *Id*.

GPI is involved in setting the current overarching global campaign goals, which include climate

and energy, oceans, forests, sustainable agriculture and toxics, but each NRO develops its own

national campaign strategy for advancing those goals. *Id*. GP Inc. is the independent, non-profit

entity that oversees all campaign activities in the United States. *See id.*; ECF No. 40-2,

Declaration of Thomas W. Wetterer.

For four decades, Greenpeace has been campaigning for a green and peaceful future for the

Earth by investigating, exposing, and confronting environmental abuse, championing environ-

mentally responsible solutions, and advocating for the rights and well-being of all people, including

Indigenous groups. Among many other things such as protecting forests and oceans, Greenpeace

has long publicly objected to, and protested against, the construction of oil and gas pipelines be-

cause they perpetuate reliance on and expansion of the use of fossil fuels, and represent a potential

source of toxic spills. Greenpeace's specific advocacy against DAPL thus fits within its mission.

**B.      Charles Brown**

Charles Brown, mentioned only four times in the Amended Complaint, Am. Compl. ¶¶
16, 34, 62, 154, was hired by GP Inc. in spring 2018. Declaration of Charles Brown  ¶ 3. ETP
submitted to the Court the relevant job posting, which sought to fill a one-year contract position
in "the Grassroots Department" to "work on Greenpeace's priority project of 2018 – stopping
pipelines and holding ETP accountable for their bad practices." *See* ECF No. 90, Decl. Ex. 18.
According to the ad, the applicant, if hired, would "make frequent and extended site visits to key
communities to engage with partners, run trainings, work with leaders, hold events, and engage
in other key on the ground organizing."  The candidate, if hired, would "[r]epresent Greenpeace
on the national StopETP coalition call and liaise between coalition and Greenpeace team on
priorities and output." ETP does not allege – nor can it – that Charles Brown had any role in or
participated in protests of the DAPL project.

**C.      Plaintiff**

There are two direct owners of DAPL: Dakota Access, LLC (75%) and Phillips 66 (25%).
Koonce Decl. Ex. 2. Neither are plaintiffs here. Rather, this action was brought by ETE and its
wholly-owned subsidiary ETP, both Delaware partnerships headquartered in Texas. BankTrack
Order 11. As of January 2018, DAPL had experienced five spills in its first six months of
operation.[2]

**D.      Other Parties and Non-Parties**

The parties to this suit have altered since originally filed. This Court dismissed identical
claims brought against BankTrack because Plaintiffs failed to state a plausible RICO claim, and
because without the federal claim, the Court lacked personal jurisdiction over the Dutch non-
profit. BankTrack Order 1. Earth First! has also been dismissed as a party because ETP failed to

---

[2] https://theintercept.com/2018/01/09/dakota-access-pipeline-leak-energy-transfer-partners/.

effect service or even establish the defendant was "an entity subject to suit, despite allegations against John and Jane Does 'operating as associates' or 'holding themselves out as representatives' of EF!." Earth First! Order 2-3. The Court has ordered Plaintiffs to "identify and serve all Doe Defendants," or risk dismissal of claims against them as well. ECF No. 100.

While some defendants have been dismissed, ETP added several individual defendants to their Amended Complaint, including Cody Hall, Krystal Two Bulls, Jessica Reznicek, and Ruby Montoya, but Plaintiffs have not yet filed returns of service for these individuals. It is unclear from the Amended Complaint why these defendants are only being joined now. And, although not named as parties, the Amended Complaint continues to allege Greenpeace coordinated a "false narrative" with RAN, Sierra Club, Bold Alliance, and 350.org, and that they were part of so-called enterprise, including their statements in Appendix B. Am. Compl. ¶ 58.

## ARGUMENT

### A.     The Complaint Should Be Dismissed For Failure to State a Claim

#### 1.      Applicable Pleading Standards and Choice of Law

As this Court noted in requiring ETP to amend its original complaint, "[t]he most basic requirement of pleading is 'simply, concise, and direct' allegations." GP Order 2 (citing Fed. R. Civ. P. 8(d)(1)). With 263 paragraphs, and meandering, inflated claims, ETP's amended complaint still fails to meet this "most basic requirement." While on a Rule 12(b)(6) motion courts assume as true all alleged facts and construe reasonable inferences favorably to the plaintiff, a complaint "must contain facts with enough specificity 'to raise a right to relief above the speculative level.'" *U.S. ex rel. Raynor v. Nat'l Rural Utils. Coop.*, 690 F.3d 951, 955 (8th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*,

550 U.S. at 570); *see also* BankTrack Order 3. Neither "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" nor "'naked assertion[s]' devoid of 'further factual enhancement'" meet the plausibility standard. *Magee v. Trustees of Hamline Univ., Minn.*, 747 F.3d 532, 535 (8th Cir. 2014) (citations omitted).

Fraud claims, including RICO claims sounding in fraud, such as those asserted here, must meet the higher pleading standard set forth in Rule 9(b). *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (citing *Flowers v. Cont'l Grain Co.*, 775 F.2d 1051, 1054 (8th Cir. 1985)). Because all of the RICO claims pled against Greenpeace sound in fraud, ETP's allegations must be scrutinized to determine if they adequately set forth circumstances constituting fraud, including "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982); *see also* GP Order 5 ("Energy Transfer must also plead any allegations of fraud with particularity."). Likewise, fraudulent intent must be pled with particularity. *Residential Funding Co., LLC v. Bell State Bank & Tr.*, 637 F. App'x 970, 971 (8th Cir. 2016).

Additional independent grounds require careful scrutiny of ETP's amended pleading. First, courts have recognized that because "[c]ivil RICO is … the litigation equivalent of a thermonuclear device," *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991),[3] courts must "flush[]out frivolous RICO allegations at the earliest possible stage of litigation." *Elsevier Inv. v WHPR, Inc.*, 692 F. Supp. 2d 297, 300 (S.D.N.Y. 2010); *see also Williams v. Mohawk Indus.*, 465 F.3d 1277 (11th Cir. 2006) (citing *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006)). Second, where defamation claims are brought by public figures and thus require

---

[3] *See also Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

plaintiff to prove actual malice, courts apply the *Iqbal/Twombly* plausibility requirements to prevent "inappropriate suits" from moving forward and chilling speech. *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (citing five other circuits); *infra* § A.3.D.

On ETP's defamation and interference claims, California or District of Columbia substantive law would apply, because the locus of the Greenpeace Defendants' speech activities at issue is their offices, not North Dakota. *Avery v. Ward*, 2017 WL 5451743, at *7 (D.N.D. Nov. 15, 2017); *Polensky v. Continental Cas. Co.*, 397 F. Supp. 2d 1164, 1168-69 (D.N.D. 2005) (aim to identify forum that "because of its relationship or contact with the occurrence or the parties has the greatest concern with the specific issue raised in the litigation"); *Sura v. National Oilwell Varco, L.P.*, 2016 WL 4217766, at *4 (D.N.D. Apr. 6, 2016) (noting importance of *lex loci delicti* doctrine for tort claims); *Zutz v. Kamrowski*, 787 N.W.2d 286, 291 (N.D. 2010) (agreeing Minnesota law applied to claim by Minnesota plaintiff against North Dakota defendant who made defamatory statements in report published to Minnesota municipality). Greenpeace is availing itself of those jurisdictions' robust protections from SLAPP suits and moving to strike and dismiss Energy Transfer's Amended Complaint for the reasons set forth herein. In *Resolute Forest Prods., Inc. v. Greenpeace Int'l*, 2017 WL 4618676, at *14, the court granted Greenpeace's motion to strike and awarded fees on state law claims under the California anti-SLAPP Act. The District of Columbia has an anti-SLAPP law modeled on California's statute. *Abbas v. Foreign Policy Grp., LLC*, 975 F. Supp. 2d 1, 9 (D.D.C. 2013), *aff'd*, 783 F.3d 1328 (D.C. Cir. 2015) (but joining minority of courts refusing to apply SLAPP statute in federal court).

> **2.    ETP Fails to Plead a Plausible Claim Under RICO**
>
> > **a.    The RICO Elements**

ETP brings claims under Sections 1962(c) and (d) of the RICO statute.[4] As this Court has explained: "To plausibly allege a RICO violation, Energy Transfer must show the existence of an enterprise that was engaged in interstate commerce, [the Greenpeace Defendants'] association with the enterprise; [the Greenpeace Defendants'] participation in the conduct of the affairs of the enterprise; and that [the Greenpeace Defendants'] participation was through a pattern of racketeering activity." BankTrack Order 4.[5] A plaintiff has standing to bring a RICO claim if it suffered a sufficiently direct injury and proximate causation. *Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 446-47 (8th Cir. 2000) (citing *Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 265-68 (1992)). ETP has not sufficiently pled any of the necessary elements, including causation, much less pled the elements with the requisite specificity under Rule 9(b).

### b.      ETP Has Not Plausibly Pled a RICO "Enterprise"

The goal of the federal RICO statute was "the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce." S. Rep. No. 91-617, at 76 (1969). The law also has been interpreted to cover operation of illegitimate entities. *United States v. Turkette*, 452 U.S. 576 (1981). A RICO enterprise is defined as "any individual, partnership, corporation, association or other legal entity, and any union or group of individuals associated in fact though not a legal entity." 18 U.S.C. § 1961(4).

Plaintiff alleges an "association-in-fact" enterprise comprised of various environmental groups, a few identified individuals, and a host of unnamed persons who this Court has ordered ETP to identify and serve. BankTrack Order 4. While the definition of an association-in-fact is

---

[4] A claim under section 1962(d) for conspiracy to violate RICO cannot stand unless a plaintiff can sustain a viable claim for commission of predicate acts under another subsection, which Plaintiff cannot do here. *Bowman v. W. Auto Supply Co.*, 985 F.2d 383, 388 (8th Cir. 1993).
[5] *See also Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008); *Handeen v. Lemaire*, 112 F.3d 1339 (8th Cir. 1997); *Fladeland v. Satrom*, 2012 WL 12914317 (D.N.D. Oct. 26, 2012).

not rigid, "it does need some sort of discrete existence and structure uniting its members in a cognizable group." *Nelson v. Nelson*, 833 F.3d 965 (8th Cir. 2016). The Supreme Court, in *Boyle v. United States*, held that an "association-in-fact" enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit."  556 U.S. 938, 944-45 (2009) (citing *Turkette*, 452 U.S. at 583); *State Farm Mut. Auto. Ins. Co. v. Cohan*, 2009 WL 10449036, at *8 (E.D.N.Y. Dec. 30, 2009) (warning a plaintiff cannot "simply tack[] on entities" to the alleged enterprise "which do not in fact operate as a 'continuing unit' or share a 'common purpose.'"). An association-in-fact thus must have (1) a common purpose of engaging in a course of conduct, (2) relationships among those associated with the enterprise, and (3) sufficient longevity to permit the associates to pursue the purpose. *Boyle*, 556 U.S. at 946. Plaintiff has failed to plausibly allege any of these elements.

The Amended Complaint fails to plausibly allege a common racketeering purpose. *Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001 (8th Cir. 2008).[6] As was the case for BankTrack, none of Greenpeace's actions "promoted, assisted, or condoned violent criminal conduct." BankTrack Order 5. There are no alleged communications between the purported enterprise members for the claimed purpose of using false information to fraudulently obtain donations and incite violence. Instead, ETP claims that "Greenpeace and the other ENGOs understood and intended that a certain percentage of such protestors could be coopted to engage in acts of violence and eco-terrorism," Am. Compl. ¶ 8; *see also id.* ¶ 80, ¶ 83, but it does not specify any facts to support that speculation. The Greenpeace publications identified by ETP, rather, assert non-violent calls to action, *e.g.*, direct appeals to President Obama to take government action, Am. Suppl. App. Tabs 1, 10; requests to sign online petitions urging the

---

[6] *See also Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 995 (8th Cir. 1989); *Fladeland*, 2012 WL 12914319, at *2-3.

11

President to "take action and stop the Dakota Access Pipeline," *id.* Tabs 3, 15; requests for donations of "camping, cooking, art and other supplies to keep the growing peaceful opposition to the pipeline going," *id.* Tabs 3, 4; requests to engage in effort to close personal Citibank accounts due to the bank's DAPL investment, *id.* Tab 23; and reports highlighting the peaceful nature of the Standing Rock protests and marches worldwide, *id.* Tabs 13, 14, 25, 35.[7] As its name suggests, Greenpeace promotes peaceful and non-violent environmental advocacy.

Bare allegations that the Greenpeace Defendants offered "legal representation and bail when the protestors, who intentionally perpetrated criminal acts at the behest of Greenpeace Defendants, were arrested," Am. Compl. ¶ 9; *see also id.* ¶ 81, are similarly insufficient to establish an associated enterprise. ETP does not point to a single communication from Greenpeace inducing criminal activity, *see infra* 13-15, nor does it allege which (if any) particular protestor believed they were acting "at the behest of Greenpeace," or what criminal act they engaged in. And, even if true, paying the costs of legal representation is simply not fraudulent or illegal racketeering conduct. Thus, although ETP claims Greenpeace agreed with the so-called enterprise members to create violent conflicts, once again, "the factual basis for the claims appears intentionally obscured." GP Order 3. Indeed, no such factual basis exists.

ETP similarly fails to assert any factual allegations that the purported enterprise members were working together on a common illegal scheme. *Raineri Constr., LLC v. Taylor*, 2014 WL 348632, at *4 (E.D. Mo. Jan. 31, 2014); *Browning v. Flexsteel Indus., Inc.*, 955 F. Supp. 2d 900, 913 (N.D. Ind. 2013). ETP fails to identify relationships that connect the parties. The Amended

---

[7] Claims that Greenpeace "advertised Red Warrior Camp's and Mississippi Stand's violent activities," Am. Compl. ¶ 13, are implausible in view of the absence of any specific publication or statement notwithstanding numerous Greenpeace publications identified in ETP's pleadings. *See* Am. Compl. App. A. An essay by Defendant Krystal Two Bulls published on the GP Inc. website asks only that supporters "participat[e] in peaceful actions and protests near you," or "organiz[e] your community to travel to Standing Rock." Am. Suppl. App. Tab 7.

Complaint does no more than assert that the various so-called enterprise members' engaged in "parallel conduct" at the same time to draw national and international attention to their shared environmental concerns that the DAPL project posed significant harms. *Raineri*, at *4; *see also United States v. Eiland*, 738 F.3d 338, 360 (D.D.C. 2013). But as this Court already explained when dismissing BankTrack, "[t]o prevent application of RICO to every person who shares a common cause with extremists who act out criminally, RICO requires each person's predicate RICO acts to rise to the level of participation in the management or operation of the enterprise." BankTrack Order 5. Here, "[a]n extreme minority of DAPL protestors committed criminal acts that harmed Energy Transfer," *id*, but the Greenpeace Defendants' publications, letters, and donation drives, "did not plausibly cause or further arson, bombing, destruction of an energy facility, transportation of stolen property, drug-trafficking, 'acts of terrorism,' or violation of the Patriot Act." *Id*.

        Plaintiff has also failed to sufficiently allege the role – fixed or not – of Greenpeace in the alleged enterprise. *See Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993); *Bennett v. Berg*, 710 F.2d 1361, 1364 (8th Cir. 1983); BankTrack Order 5. ETP alleges, yet again without factual support, that the so-called enterprise was "[l]ed by Greenpeace," Am. Compl. ¶ 8, but also alleges that unnamed "John and Jane Does operating as Earth First! directed, controlled, and operated the Enterprise's campaign against Energy Transfer and DAPL." Am. Compl. ¶ 67.

        As for alleged criminal actors, Defendants Reznicek and Montoya, nowhere does ETP allege why these individuals should be considered enterprise members – and why they should be linked to Greenpeace. To the extent they, or any other non-specified actors, were "incited" by the so-called enterprise's misinformation campaign, responding to a public campaign on a matter of public concern does not make these individuals members of a RICO enterprise or mean that Greenpeace even agreed to – much less directed or controlled – their alleged illegal acts. Otherwise, the allegations of violent protests do not mention Greenpeace, or any individual

13

associated with Greenpeace – a telling omission further illustrating the tenuous nature of

Greenpeace's alleged participation in the so-called "criminal enterprise." *See* Am. Compl. ¶¶

122, 131, 136. As this Court noted in dismissing BankTrack, "[i]t is the remote connection to

extreme criminality, not the content of the communication, that makes these statements or

actions insufficient for RICO liability based on mail or wire fraud." BankTrack Order 9.

   For example, while ETP includes inflammatory allegations that Greenpeace sent "direct

action trainers" to North Dakota in October 2016 to "conduct[] additional technical lockdown

blockade trainings" (Am. Compl. ¶ 130) – whatever that may entail – the complaint fails to

identify a single individual purportedly associated with Greenpeace who engaged in this

"training" or whether such alleged, unnamed individuals did so at the direction of the named

Defendants. Allegations that Greenpeace "organized donation drives to fund, feed, and house

members of Red Warrior camp," that Greenpeace "held trainings in its warehouses and at protest

camps in North Dakota," on "property destruction, monkeywrenching, and tactics to get

arrested," Am. Compl. ¶ 11; *see also id.* ¶¶ 38, 39, 40, 57, 59, 61, 117,118, 126, fail to identify

(or name as a defendant) any individual associated with Greenpeace who engaged in these acts,

identify any of the alleged "thousands of protestors" Greenpeace purportedly "trained … to

engage in direct actions and criminal sabotage," *id.* ¶ 59, identify any communications by

Greenpeace or any of its employees discussing these activities, identify when any of these

alleged events took place, or specify where these purported "warehouses" are located. Thus,

rather than address this Court's concern that its pleading failed to provide sufficient "details"

regarding "Greenpeace's precise role" in donation drives, or "to whom Greenpeace gave funds,

how housing and feeding individuals in cities across the country furthered violent protests in

North Dakota," or otherwise provide sufficiently "concise and direct allegations," GP Order 4-5,

ETP's Amended Complaint fails again because it seeks to mask the absence of necessary factual specificity with "irrelevant hyperbole," *id.* at 5, and vague, inflammatory allegations.

Bare allegations that Greenpeace provided its employees with "unlimited paid time to travel to DAPL camps," Am. Compl. ¶ 11, without more specific allegations that those employees were told to engage in criminal or fraudulent conduct, fails to establish any basis for ETP's racketeering claim. And, even assuming *arguendo* the truth of allegations that Greenpeace sent supplies "to fund, feed and house" members of Red Warrior Camp after "initial attacks on DAPL property," Am. Compl. ¶ 126, such donations would not equate with an agreement to support or promote violent activities sufficient to allege a RICO claim.

The Amended Complaint otherwise merely alleges independent activities of "enterprise" members that do not evince parties working towards a common, criminal purpose – just various groups and individuals engaged in environmental advocacy around a particular, wholly legal, cause – opposition to the pipeline. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060 (11th Cir. 2007). Without some specific, plausible factual allegation that Greenpeace agreed to a plan to engage in violent criminal conduct and agreed that its supplies would directly aid in those efforts, Greenpeace's activities as alleged would be no different than those of thousands of other supporters of peaceful DAPL protests who wished to share their parallel concerns that ETP's pipeline was ill-advised and environmentally harmful. Taken together, ETP has not come close to plausibly pleading the existence of a RICO enterprise, much less pleading a RICO claim with the necessary specificity. The Amended Complaint fails, as the original pleading did, to allege how the enterprise was formed, how the common purpose was agreed upon, who (if anyone) was in charge, how decisions were made, or how the alleged enterprise members communicated a common illegal purpose. Instead, ETP asks the Court, once again, to presume that coordination and development must have occurred based on no more than rank speculation.

###### c.      ETP Has Not Plausibly Pled A "Pattern" Of Racketeering Activity

The original complaint alleged an "open-ended" series of RICO predicate acts committed

"on an on-going basis," Orig. Compl. ¶¶ 369-370, but did not allege any predicate acts after

April 2017. *See Handeen*, 112 F.3d at 1353 (citing *H.J., Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229,

239 (1989). The Amended Complaint adds allegations focusing on the Greenpeace Defendants'

advocacy concerning other pipelines in locales outside of North Dakota, Am. Compl. ¶¶ 153-

154, but Plaintiff does not allege any specific criminal activities occurring at its other pipelines

nor does it, again, explicate how the protests that it vaguely identifies in Louisiana or

Pennsylvania have any connection to the so-called enterprise, a common plan or purpose, or any

coordination among the alleged members.[8] The joinder of Brown as a defendant is thus not only

implausible, but frivolous, as the four paragraphs mentioning him make no attempt to connect his

hiring to any enterprise member, to any common criminal plan or purpose, to any hierarchical

leadership structure, or even allege specifically any criminal or fraudulent conduct or

communications he might have taken part in anywhere, much less North Dakota. *See supra* 6. As

a court in this Circuit has held, where facts indicate "all criminal activities [have] ceased," the

plaintiff does not plausibly allege the requisite predicate acts to plead RICO. *Sebrite Agency, Inc.

v. Platt*, 884 F. Supp. 2d 912, 921 (D. Minn. 2012) (citing *H.J. Inc. v. Nw. Bell*, 492 U.S. at 242).

Here, where the only facts pled by Plaintiff point to a cessation of (wholly legal) activity, not

criminal acts, its RICO claims must fail.

###### d.      ETP Has Not Plausibly Pled Any Predicate Criminal Acts

###### (1)      Defamation Is Not A Predicate Act

---

[8] There is no allegation that North Dakota protestors were involved in Louisiana and
Pennsylvania protests, and thus no continuing enterprise with same "enterprise members."

The law is clear that mere defamation is not, by itself, a predicate act under RICO. *Hourani v. Mirtchev*, 796 F.3d 1, 10 n.3 (D.C. Cir. 2015); *Kimberlin v. Nat'l Bloggers Club*, 2015 WL 1242763, at *9 (D. Md. Mar. 17, 2015); *Kimm v. Lee*, 2005 WL 89386 (S.D.N.Y. Jan. 13, 2005); BankTrack Order 9. Although in appropriate cases the same underlying facts may support separate causes of action if additional elements are present, that is not the case here. The alleged acts – at the very least all those pled against Greenpeace (none are pled against Brown) – are no more than garden-variety defamation claims. As such, Plaintiff's effort to transform defamation claims into fraud cannot be sustained.

### (2)    ETP Cannot Plausibly Plead Mail And Wire Fraud

As the Eighth Circuit has explained, "[w]hen pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *H&Q Props., Inc. v. Doll*, 793 F.3d 852, 856-57 (8th Cir. 2015). A plaintiff must also plead "some degree of planning by the perpetrator," and "it is essential that the evidence show the defendant entertained an intent to defraud." *Id.* (citing *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989)). Mail and wire fraud claims are "limited in scope to the protection of property rights." *McNally v. United States*, 483 U.S. 350, 360 (1987). Thus, the alleged fraudulent scheme must be intentionally directed towards obtaining from another party property that is in their hands. *Cleveland v. United States*, 531 U.S. 12, 15 (2000).

ETP has eliminated the voluminous tables of alleged fraudulent communications from its amended complaint and now focuses entirely on 35 Greenpeace publications. *See* Am. Suppl. App. Yet the Amended Complaint still fails to meet the heightened pleading requirements of Rule 9(b) because it does not identify the misconduct or specific content that constitutes fraud in the publications. Courts in other Circuits have held that, given the focus on fraud directed toward

17

property rights, mere (alleged) false statements, without more, cannot rise to the level of mail and wire fraud for RICO purposes. *See United States v. Takhalov*, 827 F.3d 1307, 1312-13 (11th Cir. 2016) (under 18 U.S.C. § 1343, "a defendant 'schemes to defraud' only if he schemes to 'depriv[e] [someone] of something of value by trick, deceit, chicane, or overreaching.'"  (citing *United States v. Bradley*, 644 F.3d 1213, 1240 (11th Cir. 2011)). Where a defendant does not intend to cause harm to the victim by "obtain[ing], by deceptive means, something to which [the defendant] is not entitled," there is no intent to defraud. *Id.* at 1240 (citations omitted). Here, ETP cannot simply plead that Greenpeace made false statements, but must plausibly plead that any such statements were made with the intent to defraud someone of their property.

ETP has not plausibly pled that Greenpeace deceived ETP or anyone else, much less defrauded anyone, and certainly not that it intended to do so. *See infra* § A.3.d (no facts supporting actual malice). *See S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 531-32 (4th Cir. 2002) (defendant's good faith belief it provided true information complete defense to mail or wire fraud); *United States v. Chavis*, 461 F.3d 1201, 1208 (10th Cir. 2006) (same).

Even if *arguendo* ETP has pled that Greenpeace defrauded donors, it has failed to do so with specificity because it has not alleged any facts demonstrating: any specific statements made to potential donors, any specific statements made in connection with fundraising, the identity of any defrauded donor(s), any donations that were fraudulently obtained, an intent on the part of Greenpeace to defraud donors, or that any donations have been used for purposes other than as promised. And, as this Court explained in dismissing ETP's similar RICO claim against BankTrack, the Plaintiff "must have suffered a direct injury from the predicate RICO violations, rather than a derivative injury," or any putative injury experienced by donors. BankTrack Order 6. Similarly, to the extent ETP alleges the allegedly fraudulent statements pressured investors, such statements were dismissed per Order on BankTrack. BankTrack Order 9.

As for wiring funds, ETP does not specifically allege the dates of such wire transfers, the amounts, the recipients, and for what purpose the alleged wired funds were used – other than the specious and wildly implausible allegation that they were to be used for "drug trafficking." Am. Compl. ¶ 200; *see also id.* ¶ 82. The claims for interstate and foreign travel in aid of racketeering, Am. Compl. ¶ 207, and interstate transportation of stolen property, are similarly implausible as pled because the generalized allegations lack the factual specificity required to allege conduct in support of a "fraudulent scheme."

> ### e.     ETP Cannot Plausibly Plead Proximate Cause

Claims, like ETP's, alleging reputational harm, such as defamation claims, are insufficient to confer RICO standing. "To have standing under RICO, a plaintiff must allege that the RICO violation proximately caused injury to its business or property." *Resolute*, 2017 WL 4618676, at *11 (*citing Holmes v. Secs. Inv'r Protection Corp.*, 503 U.S. 258, 268 (1992); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 463-64 (2006)). The Eighth Circuit has made clear that the proximate cause requirement for RICO standing is intended to prevent plaintiffs from bringing claims of damages based on wholly "attenuated" chains of causation purportedly leading from the supposed racketeering conduct, such as the one advanced by ETP here. *Newton v. Tyson Foods, Inc.*, 207 F.3d 444, 447 (8th Cir. 2000). For similar reasons this Court dismissed ETP's RICO claims against BankTrack, noting that "Energy Transfer fails to directly connect any of the catchall injuries" to the alleged predicate conduct, and warning that the Plaintiff's desired application of the racketeering statute was "dangerously broad" and "attenuated." BankTrack Order 7.

To the extent ETP alleges the enterprise defrauded donors to environmental groups such as Greenpeace, ETP lacks standing because none of its injuries would have stemmed directly from such alleged fraud. As the *Resolute* court held, a RICO plaintiff like ETP cannot claim to

19

be the victim of an advocacy campaign directed toward them "given that the only persons who could have been defrauded were the donors who gave the money" to support the campaign. *Resolute*, 2017 WL 4618676, at *11; *see also Kimberlin*, 2015 WL 1242763, at *13.

Furthermore, ETP has failed once again to plausibly plead a direct link between Greenpeace (or any Defendants, or the enterprise as a whole) and any actual loss of creditors or investors caused by racketeering activity – as opposed to the more general, First Amendment protected, public advocacy campaign regarding DAPL. *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496-97 (1985); BankTrack Order 9. In those instances where it alleges loss of investors, ETP does not specify whether and how those customers' departure flowed specifically from any deceptive or false statement. Even though the amended complaint no longer individually lists the various ENGO signatories, the publications themselves make clear that these letters were jointly issued by numerous organizations – the vast majority of which are no longer even alleged to be defendants or enterprise members. *See* Am. Suppl. App. Tabs 1, 11, 22. Where banks did allegedly terminate their investments in DAPL, it was always in response to the very public criticism levelled by environmental groups, and not specifically in response to particular alleged fraudulent statements, making the alleged damage even more attenuated. *See, e.g.*, Am. Compl. ¶¶ 158-177.

In light of the above, ETP has not plausibly pled a cognizable injury under RICO, and for this and all the reasons stated previously, its RICO claims must be dismissed.[9]

---

[9] North Dakota's RICO statute recognizes a civil claim for "a person who sustains injury to person, business, or property by a pattern of racketeering activity," and largely tracks the federal claim. N.D. Cent. Code § 12.1-06.1-05. Thus, all of the flaws identified in connection with plaintiff's federal claims apply equally to bar plaintiff's state law claim. *Neubauer v. FedEx Corp.*, 849 F.3d 400 (8th Cir. 2017). Further, the statute requires plaintiff to plead with particularity that the alleged predicate acts are criminal – that is, a plaintiff must allege either a prior conviction or probable cause – both absent here. *McColl Farms, LLC v. Pflaum*, 837 N.W.2d 359, 369 (N.D. 2013) (citing *Rolin Mfg., Inc. v. Mosbrucker*, 544 N.W.2d 132, 138 (N.D. 1996) (merely "stating an act is criminal is not enough to make it true").

### 3.  Plaintiff Fails to Plead a Plausible Claim for Defamation

### a.  Traditional Advocacy is Protected by the First Amendment

While the original complaint focused on an alleged "pattern of criminal and other misconduct," Orig. Compl. ¶ 1, the Amended Complaint is even more squarely premised on speech, focusing on a so-called "campaign of misinformation." Am. Compl. ¶ 1. Greenpeace's political advocacy criticizing ETP's practices is within the core of First Amendment protection. Public reports, petitions, articles, and protests are types of speech and expression clearly entitled to protection – regardless of how "hurtful" they are to the recipient. *Snyder v. Phelps*, 562 U.S. 443, 446 (2011). Accordingly, although ETP complains that Greenpeace and the so-called enterprise seek to further a "no fossil fuel agenda," Am. Compl. ¶ 2, such viewpoints are entirely protected and there is nothing inherently libelous or criminal about holding these alleged beliefs – even if they run counter to ETP's business objectives.

Such speech encompasses calls for boycotts, *Thornhill v. Alabama*, 310 U.S. 88 (1940), and charitable appeals, *Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620, 632 (1980). It is long-established that an advocacy group like Greenpeace cannot be held liable for non-violent expressive speech activities. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). Particularly troubling, ETP's claims not only seek to extinguish Greenpeace's freedom of speech, they also attack the right of association. *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958). ETP's complaint regarding the DAPL protests appears to be that they were the result of a "highly organized and orchestrated scheme," Am. Compl. ¶ 4, but organized political associative speech is fully protected under the First Amendment. "There are, of course, some activities, legal if engaged in by one, yet illegal if performed in concert with others, but political expression is not one of them." *Citizens Against Rent Control/Coal. for Fair Hous. v. Berkeley*, 454 U.S. 290, 296 (1981). The effectiveness of the groundswell of expression by association seems to be ETP's real

gripe because the common criticism subjected the DAPL project and its environmental and cultural impact to substantial public scrutiny. Greenpeace represents millions of supporters to advance their concerns, and ETP cannot use RICO laws to trample their associational rights.[10]

ETP's pleadings demonstrate that each of its claims is based on Greenpeace's expression about issues of public interest – and its efforts to amplify its political message by associating with like-minded environmental organizations and individual protestors and charitable donors. Each of the topics ETP identifies as "defamatory" self-evidently pertains to issues in the public interest. ETP itself breaks down the purported speech into categories that highlight the public issues being discussed, including criticism that (1) DAPL traverses Sioux tribal lands; (2) DAPL poses a risk to water supply; (3) DAPL poses a climate risk; (4) ETP retained or supported security teams that combat protestors with excessive force; (5) DAPL was routed and approved with inadequate environmental review or consultation with the Sioux; and (6) DAPL desecrated cultural resources. Am. Compl. ¶¶ 84-112. These categories indisputably relate to issues of profound public importance, and a review of all 79 statements challenged as defamatory in Appendix A demonstrates that every one is of this type.

In addition to the significant First Amendment barriers to using RICO and its treble damages threat to chill speech, plaintiffs cannot evade constitutional free speech protections by reformulating their defamation claims as different causes of action. For this reason, the *Resolute* court looked beyond the plaintiffs' RICO pleading to hold that all of the complained-of statements criticizing the plaintiff's logging practices could be dismissed insofar as they

---

[10] Additional examples of these associational efforts include joint openly-published letters signed by the Greenpeace Defendants and over 500 other environmental advocacy organizations sharing their concerns about the DAPL project with President Obama and international banks. *See* Am. Suppl. App. Tabs 1, 11, 22. The Supreme Court has long recognized the essential First Amendment protections for these collective, public expressions of opinion on matters of public importance. *New York Times Co. v. Sullivan*, 376 U.S. 254, 257 (1964) (petition signed by 64 individuals, many prominent "in public affairs, religion, trade unions, and the performing arts").

"constituted the expression of opinion, or different viewpoints that are a vital part of our democracy." *Resolute*, 2017 WL 4618676, at *9 (internal quotation and citation omitted). Courts in this Circuit similarly dismiss claims based on the same underlying speech that wouldotherwise state a defamation claim, if the defamation claim fails. *See Deupree v. Iliff*, 860 F.2d 300, 305 (8th Cir. 1988) (intentional infliction of emotional distress claim).[11]

### b.  Failure To Plead Statements With Specificity

Every Circuit to have considered the issue has specifically held that the *Twombly/Iqbal* pleading standard must be rigorously applied in defamation actions, including to the pleading of "actual malice," the fault standard that must be met by a public figure such as ETP.[12] As one Circuit aptly explained, "application of the plausibility pleading standard makes particular sense when examining public figure defamation suits" because "there is a powerful interest in ensuring that free speech is not unduly burdened by the necessity of defending against expensive yet groundless litigation." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016). This is in keeping with the long-held view that "summary proceedings are essential in the First Amendment area because if a suit entails 'long and expensive litigation,' then the protective purpose of the First Amendment is thwarted even if the defendant ultimately prevails." *Farah*, 736 F.3d at 534 (quoting *Washington Post v. Keogh*, 365 F.2d 965, 968 (D.C. Cir. 1966)).

---

[11] *See also Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50 , 54-57 (1988); *Farah v. Esquire Magazine*, 736 F.3d 528, 540 (D.C. Cir. 2013) ("Because [plaintiffs'] defamation claim fails, so do their other tort claims based upon the same allegedly defamatory speech"); *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 317, 319-20 (D.C. Cir. 1994) ("[A] plaintiff may not use related causes of action to avoid the constitutional requisites of a defamation claim.").

[12] *See Biro v. Conde Nast*, 807 F.3d 541, 544-45 (2d Cir. 2015); *McDonald v. Wise*, 769 F.3d 1202, 1220 (10th Cir. 2014); *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 614 (7th Cir. 2013); *Mayfield v. NASCAR, Inc.*, 674 F.3d 369, 377 (4th Cir. 2012); *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 58 (1st Cir. 2012). *See also Ragland v. Blue Cross Blue Shield of N.D.*, 2012 WL 5511006, at *2 (D.N.D. Nov. 14, 2012) (slander claim dismissed where plaintiff did not allege defendant "published any information to a third-party").

To prevail in a defamation suit, therefore, ETP must adequately allege and then prove that the statements complained of are (1) defamatory; (2) capable of being proven true or false; (3) of and concerning the Plaintiff; (4) false and (5) in the case of public figures like Plaintiff, made with actual malice.[13] *Stepnes v. Ritschel*, 663 F.3d 952, 963 (8th Cir. 2011); *Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001); *Humann v. KEM Elec. Coop.*, 450 F. Supp. 2d 1006, 1015 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007); N.D. Cent. Code § 14-02-03. In the instant case, Plaintiff's libel claim fails as a matter of law and should be dismissed for three principal reasons. First, the publications at issue are protected expressions of opinion. Second, Plaintiff does not – and cannot – plausibly allege that Greenpeace published the challenged statements with actual malice. Third, the publications are fair and accurate reports of judicial and other official government proceedings.

### c.    Greenpeace's Challenged Statements Are Protected Opinion

All of Greenpeace's 79 statements are not only true and thus the requisite element of substantial falsity is absent, but they are also non-actionable expressions of opinion, aimed at swaying public views regarding the environmental impact of DAPL, and persuading banks to discontinue serving ETP – quintessential advocacy to persuade the public to voice their own, parallel concerns regarding the potential environmental and cultural consequences of DAPL. Statements of opinion like these are core protected speech and not actionable statement of fact. *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339-40 (1974). Indeed, in assessing whether commentary on a matter of public concern is protected, context is crucial, *Secrist v. Harkin*, 874 F.2d 1244, 1249 (8th Cir. 1989), and here, Greeenpeace's publications are known for advancing the organization's advocacy mission and opinions. Moreover, the

---

[13] Quotations that are not clearly "of and concerning" ETP or even substantially false, are thus not defamatory. Am. Suppl. App. Tab 2 (quoting statements reported in The Guardian article)

challenged publications were part of a heated public debate encompassing large-scale protests and global news coverage where criticism and emphatic speech are the coin of the realm, signaling to readers that they are encountering the statements of an advocate. *Sullivan*, 376 U.S. at 257. Whether a statement is one of opinion is a question of law, *Others First, Inc. v. Better Bus. Bureau of Greater St. Louis, Inc.*, 829 F.3d 576, 581 (8th Cir. 2016), and courts routinely dismiss defamation suits on this basis alone.[14] Where, as here, the publications in suit set out the factual basis for the opinions presented, leaving it for the readers to evaluate for themselves, no defamation claim can lie.

For example, ETP claims that the conclusion in the multi-party "Open Letter to President Obama" that DAPL "would travel through the Standing Rock Sioux Tribe's ancestral lands and pass within a mile of its current reservation," is a false statement of fact. Am. Compl. App. A; Am. Suppl. App. Tab 1. On its face, the statement describes truthfully the path of the pipeline. But even if there is any debate as to the veracity of the challenged statement (based, for instance, on what "ancestral lands" means), the statement is protected as an opinion based on facts disclosed in the letter, including references to the SRST Lawsuit "to block construction of the pipeline," because "the Army Corps of Engineers is violating the National Historic Preservation Act by failing to address the Tribe's concern about the pipeline's impact to sacred sites and culturally important landscapes…." Indeed, the Complaint confirms that SRST hired an expert to identify what, in his opinion, could be characterized as sacred sites. Greenpeace's challenged conclusion based on these disclosed facts is a fairly protected expression of opinion.

---

[14] *Turkish Coal. of Am., Inc. v. Bruininks*, 678 F.3d 617, 624-26 (8th Cir. 2012) (affirming Rule 12(b)(6) dismissal of claims challenging statements of opinion); *Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1337-39 (D.C. Cir. 2015) (Kavanaugh, J.)(same); *Farah*, 736 F.2d at 531 (same); *Dodds v. Am. Broad. Co.*, 145 F.3d 1053, 1065 (9th Cir. 1998) (same); *Levin v. McPhee*, 119 F.3d 189, 194-96 (2d Cir. 1997) (same); *Hill v. Cosby*, 665 F. App'x 169, 173 (3d Cir. 2016) (same).

As for a letter from the Greenpeace Defendants and hundreds of other advocacy groups sent to DAPL-funding institutions, encouraging divestment, Plaintiff takes issue with the statement that ETP's personnel "deliberately desecrated documented burial grounds and other culturally important sites." Am. Suppl. App. Tab 22 at 2. But the location of culturally important sites is a matter of significant ongoing controversy even among experts. And whether a government agency issued an opinion on the matter does not render the signatories' contrary opinion, based on facts disclosed in the letter, actionable. The letter directly relies on the "long standing opposition to the project by the Standing Rock Sioux Tribe," and explains that "desecration of burial grounds" resulted as a consequence of those sites having "not been identified early on" in the DAPL planning process – a timeline probed in litigation between the SRST and the USACE. *See Standing Rock Sioux Tribe v. U.S. Army Corps of Engineers*, 255 F. Supp. 3d 101, 111-12 (D.D.C. June 14, 2017). The statement challenged by Plaintiff is opinion, placed in an advocacy communication endorsed by hundreds of environmental organizations, based on disclosed facts and, as such, is protected.

Statements referencing DAPL's "threats to water sources" merely state the non-actionable opinion that there is a threat, not a certainty, that the potential pollution has already occurred or will occur. *See* Am. Suppl. App. Tab 10 ("[T]his … pipeline[] pose[s] immediate threats to our land, water, and climate."), Tab 14 ("Dakota Access Pipeline … directly threaten[s] the sacred lands and water source of the Standing Rock Sioux Tribe…."). Indeed, these kinds of statements have been found to be protected opinion in other cases. *E.g., Riley v. Harr*, 292 F.3d 282 (1st Cir. 2002) (statement tannery contaminated well water and caused "toxic waste dump" and owner "must have known" of condition of property protected opinion). Moreover, ETP does not claim the assertion is false – just the opposite. ETP argues only that a DAPL spill is unlikely (notwithstanding the multiple spills occurring in the first six months of operation) and does not seriously deny that if a spill occurred, it could be catastrophic. Just as

important is that the challenged statements tying DAPL to climate change risk are clearly expressing the opinion that the existence of oil infrastructure contributes to the climate change problem – a matter of considerable public discourse. *See* Am. Suppl. App. Tab 9 ("Re-routing Dakota Access Pipeline Won't Make it Less Dangerous to the Environment or Climate"), Tab 24 ("the rest of America will face the impacts of catastrophic climate change from burning fossil fuels"). This too has been held to be protected opinion. *Resolute*, 2017 WL 4618676, at *9.

The Complaint alleges the Greenpeace Defendants (and others) made libelous statements that ETP used excessive force on DAPL protestors, but any challenged statements are protected opinion based on facts that were being reported at the time. For example, an article titled "How You Can Help Standing Rock Activists Stop the Dakota Access Pipeline," repeats the widely reported facts that "private security forces set dogs and pepper spray upon a crowd that included young children, injuring 30 activists," and, based on those facts, concludes ETP's "crew have reacted with aggression and violence." Am. Suppl. App. Tab 3; *see also id.* Tab 13. Similarly, Greenpeace's statements that the federal permitting process for DAPL was "rushed" are opinion based on the reported timeline of events.[15] Am. Suppl. App. Tab 23 ("The original permitting for the pipeline was fast tracked without adequate tribal consultation and consent or environmental review."), Tab 27 ("If this administration is going to fast track environmental destruction then relentless resistance will be the response."). Accordingly, most if not all of the complained-of statements are opinions based on referenced facts and the opinions provided the speaker's interpretation of those facts.

---

[15] And moreover, such statements are not "of and concerning" Energy Transfer, but rather the government's permitting process, and thus cannot form the basis of Plaintiffs' defamation claim (especially where the government cannot sue for defamation). *Schuster v. U.S. News & World Report, Inc.*, 602 F.2d 850, 854 (8th Cir. 1979).

Further, advocacy pieces like Greenpeace's here are quintessential opinion publications. "[W]hen determining initially whether a statement is fact or opinion, it does a disservice to the First Amendment not to consider the public or political arena in which the statement is made and whether the statement implicates core values of the First Amendment." *Janklow v. Newsweek, Inc.*, 788 F.2d 1300, 1303 (8th Cir. 1986). Accordingly, the context of the publication is critical. *Id.* at 1302. *See also Price v. Viking Penguin, Inc.*, 881 F.2d 1426 (8th Cir. 1989); *Secrist v. Harkin*, 874 F.2d 1244 (8th Cir. 1989); *Deupree v. Iliff*, 860 F.2d 300 (8th Cir. 1988). Each of the publications remaining in suit is attributed to Greenpeace, which is well-known and identified with environmental advocacy. The publications include various obvious statements of opinion, such as "We're here to tell TD Bank that destroying indigenous land and poisoning the water of thousands of people is bad for business,"" Am. Suppl. App. Tab 18.[16] Advocacy pieces like these are similar to a newspaper's op-ed page, understood by reasonable readers to be inherently opinion-based.[17]

Fourteen of the 35 Greenpeace publications at issue are press releases,[18] which in the context of a political campaign "signal political opinion" just "as a newspaper editorial or political cartoon" would. *Secrist*, 874 F.2d at 1249. Indeed, "debate on public issues should be uninhibited, robust, and wide-open," *Sullivan*, 376 U.S. at 270, and courts go so far as to say that "language in the political arena" can even be "vituperative" or "inexact," *Watts v. United States*, 394 U.S. 705, 708 (1969).Thus, accusations made "in the contest of political, social or philosophical debate" are understood to be opinion. *Ollman*, 750 F.2d at 987 (*en banc*); *see also id.* at 1013 (MacKinnon, J., concurring); *Koch v. Goldway*, 817 F.2d 507, 509 (9th Cir. 1987).

---

[16] *See also, e.g.*, Am. Suppl. App. Tab 27 ("If this administration is going to fast track environmental destruction then relentless resistance will be the response.").

[17] *Ollman v. Evans*, 750 F.2d 970, 985 (D.C. Cir. 1984); *Secrist*, 874 F.2d at 1249 ("The 'literary context' factor includes the type of forum or 'social context' in which the statement was made, the category of publication, its style of writing, and the intended audience."). *Cf. Janklow v. Newsweek, Inc.*, 759 F.2d 644, 651-52 (8th Cir. 1985), *on reh'g*, 788 F.2d 1300 (8th Cir. 1986).

[18] Am. Suppl. App. Tabs 8, 10, 12, 16, 18, 20, 23, 24, 26, 30, 31, 32, 33, 35.

Here too, Greenpeace's political advocacy is understood, in context, to be statements of opinion. Indeed, the press releases are placed directly in the context of responding to public statements of government officials, such as President Obama, Am. Suppl. App. Tab 8, the U.S. Army Corps of Engineers, *id*. Tabs 12 & 30, then-President-Elect Trump, *id*. Tab 24, and a court ruling allowing DAPL to resume construction, *id*. Tab 31; or to comment on North Dakota-based DAPL protests, *id*. Tabs 10 & 32, an investor's divestment from companies backing DAPL, *id.* Tab 20, a bank's public statements of concern over the DAPL, *id*. Tab 26, and a statement in support of a Washington, D.C. protest march, *id*. Tab 35. Press releases such as these are readily understood as statements of opinion in the context of public debate.

The seven Tweets in suit are part of the vibrant political debate that takes place over social media and are recognized in appropriate circumstances as opinion.[19] The Complaint places the Tweets squarely in the context of a campaign to advocate regarding DAPL and ETP's pipeline operations and practices. A reader would naturally understand accusations and slogans made on Twitter, in a political context, reflect subjective disagreements because it is a forum for the pithy exchange of opinions. "Not only commentators, but courts as well have recognized that online blogs and message boards are places where readers expect to see strongly worded opinions rather than objective facts." *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696-97 (2012)(collecting cases). This principle applies even more strongly to Twitter, where users are limited to 280 characters to post off-the-cuff thoughts in a continually updating stream. *See, e.g., Jacobus v. Trump,* 55 Misc. 3d 470, 484, 51 N.Y.S.3d 330, 343 (N.Y. Sup. Ct. 2017), *aff'd,* 2017 N.Y. Slip Op. (1st Dep't Dec. 12, 2017). Accordingly, Greenpeace tweets with slogans such as "We have rights, and one of those rights is the right to clean water," Am. Suppl. App. Tab 2, "Re-routing Dakota Access pipeline won't make it less dangerous to the environment or our climate!," *id*. Tab

---

[19] Am. Suppl. App. Tabs 2, 9, 13, 17, 19, 21, 27.

9, and "Militarized response to peaceful protest and indigenous rights is indefensible," *id*. Tab 17, are protected speech expressed in a medium universally recognized for pointed commentary.[20]

Finally, the complained-of statements that, for example, ETP was "willing to destroy Standing Rock's … water supply," Am. Suppl. App. Tab 23, along with other strong language such as DAPL is "a project that tramples Indigenous rights and pushes us closer to climate disaster," *id*. Tab 6, constitute the type of "colorful" language given wide latitude under the First Amendment. *Underwager v. Channel 9 Australia*, 69 F.3d 361, 367 (9th Cir. 1995). The Supreme Court has confirmed time and again that the First Amendment protects vigorous speech on matters of public debate, and Eighth Circuit courts have only added to this body of law. *See, e.g., Brodkorb v. Minn.*, 2013 WL 588231, at *14 (D. Minn. Feb. 13, 2013). The *Resolute* court criticized the plaintiff's "overly literal approach to obviously overemphatic speech," affirming that evocative language is "protected speech." *Resolute*, 2017 WL 4618676, at *9. Because environmental issues generally, and climate change debate in particular, are notoriously contentious topics, recipients of these publications would expect emphatic language from Greenpeace. ETP complains that referring to DAPL as "devastating to Native communities and lands," Am. Suppl. App. Tab 8, is defamatory (even criminally fraudulent), but such charged statements, based on disclosed facts, is indisputably signal nonactionable opinion.

### d.   ETP Cannot Plausibly Plead Statements Made With Actual Malice

Even if the complained-of statements were not protected opinion (and they are), the Complaint fails to state a claim as a matter of law because it does not allege the requisite high degree of fault on the part of Greenpeace. As a public figure, ETP does not and cannot plausibly

---

[20] Some Tweets merely describe activities of other protestors, including one quoting a pipeline protestor: "'We have rights, and one of those rights is the right to clean water.'" Am. Suppl. App. Tab 2, and one describing a protest in Washington, D.C., *id*. Tab 21. ETP does not show how such descriptive statements are defamatory, or even how Plaintiff was harmed by these Tweets.

plead actual malice. The First Amendment makes clear that a public figure plaintiff may recover for injury to reputation only on clear and convincing proof of "actual malice," a state of mind the Supreme Court has defined as a subjective awareness of the truth through "a showing that a false publication was made with a high degree of awareness of probable falsity," and that the defendant "in fact entertained serious doubts as to the truth of his publication." *St. Amant v. Thompson*, 390 U.S. 727, 731 (1968) (internal quotations omitted).

The alleged defamatory speech in this case clearly addresses matters with which the public has legitimate concern. The public is legitimately interested in all manner of environmental harm and the treatment of Indigenous communities.[21] And, ETP's practices as a pipeline operator have been the subject of substantial media reporting. In *Gertz*, the Supreme Court discussed the distinction between private and public figures, noting two fundamental differences. First, public figures usually have greater access to the media, which gives them "a more realistic opportunity to counteract false statements than private individuals normally enjoy." 418 U.S. at 344; *see also Hutchinson v. Proxmire*, 443 U.S. 111, 136 (1979) ("[R]egular and continuing access to the media … is one of the accouterments of having become a public figure."). Second, "public figures … voluntarily exposed themselves to increased risk of injury from defamatory falsehoods concerning them." *Gertz*, 418 U.S. at 345. In short, public figures "invite attention and comment." *Hutchinson*, 443 U.S. at 134. The essentiality of demanding the highest standard of fault for public figures has been thoroughly embraced under North Dakota law. *Riemers v. Mahar*, 748 N.W.2d 714 (N.D. 2008).

There is no question that ETE and ETP are publicly-traded, highly visible corporations

---

[21] *See, e.g., Mott v. Anheuser-Busch, Inc.*, 910 F. Supp. 868, 874 (N.D.N.Y. 1995) ("admitted violations of environmental regulations implicate issues of environmental safety and public health," and are issues of public concern), *aff'd*, 112 F.3d 504 (2d Cir. 1996); *Container Mfg. Inc. v. CIBA-GEIGY Corp.*, 870 F. Supp. 1225, 1234-35 (D.N.J. 1994) (storage of chemicals "pose potentially severe health environmental risks to society" and is an issue of public concern).

that must plead and prove "actual malice."[22]  Am. Compl. ¶¶ 26-27. *See Compuware Corp. v. Moody's Inv'rs Servs.*, 499 F.3d 520, 525 (6th Cir. 2007); *Reliance Ins. Co. v. Barron's*, 442 F. Supp. 1341 (S.D.N.Y. 1977).[23] Indeed, ETP already implicitly conceded that it is a public figure in past briefing. ECF No. 65, Opp. 69-70.

ETP is thus required to plead facts showing Greenpeace acted with actual malice by clear and convincing evidence – but it cannot plausibly do so. *See Gertz*, 418 U.S. at 331-32. The "actual malice" standard imposes a heavy burden on plaintiffs. It "is not measured by whether a reasonably prudent man would have published, or would have investigated before publishing." *St. Amant*, 390 U.S. at 731. Rather, the plaintiff has the burden of pleading and ultimately proving that the defendant made the statements with a "high degree of awareness of their probable falsity." *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964). As the D.C. Circuit has explained this bedrock Constitutional principle, a public figure can only support a libel claim with allegations that the defendant was subjectively aware the story was "(1) fabricated; (2) so inherently improbable that only a reckless person would have put [it] in circulation; or (3) based wholly on an unverified anonymous telephone call or some other source that [plaintiff] has obvious reason to doubt." *Lohrenz v. Donnelly*, 350 F.3d 1272, 1283 (D.C. Cir. 2003). "'For [the actual malice] standard to be met, the publisher must come close to wilfully blinding itself to the falsity of its utterance.'" *Tavoulareas v. Piro*, 817 F.2d 762, 776 (D.C. Cir. 1987) (*en banc*) (citation omitted). ETP cannot clear this high hurdle, even at the pleading stage. Moreover, in the

---

[22] ETP is also a limited purpose public figure based on the public controversy concerning its pipeline management, and the alleged defamatory statements are germane to its participation in the controversy. *See Stepnes*, 663 F.3d at 964; *Resolute*, 2017 WL 4618676, at *5.

[23] Corporations subject to regulation by state or federal authorities invite public scrutiny by voluntarily entering such businesses. *See Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1393-94 (8th Cir. 1997) (highly regulated corporations public figures); *Brown & Williamson Tobacco Corp. v. Jacobson*, 713 F.2d 262, 273 (7th Cir. 1983) (dictum) ("there seems no reason to classify a large corporation as a private person.").

wake of *Iqbal* and *Twombly*, a plaintiff cannot state a claim simply by making conclusory assertions of the elements of actual malice, which is all ETP does here. Federal courts in the Eighth Circuit and across the country routinely dismiss defamation cases for failure to state a claim where, as here, the plaintiff fails to plead specific facts to make actual malice plausible.[24]

Because the challenged statements expressly rely on previously published articles in reputable publications and statements in official court records, scientific reports, and government reports, ETP cannot plausibly meet the "daunting" standard of actual malice and instead conclusively demonstrates Greenpeace's lack of actual malice as a matter of law. Reliance on previously published material from reputable publications precludes ETP from pleading actual malice. *See, e.g., Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1297 (D.C. Cir. 1988). For example, numerous challenged publications cite and hyperlink to the sources upon which they rely, including news coverage of the DAPL protests,[25] news coverage of bank divestments from companies that backed DAPL,[26] news reports that protestors were met with excessive force,[27] and official United Nations statements on Indigenous peoples' rights.[28] Reliance on these reputable sources defeats actual malice, as a matter of law.[29]

---

[24] *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50 (1st Cir. 2012); *Mayfield*, 674 F.3d at 378; *Egiazaryan v. Zalmayev*, 2011 WL 6097136, at *8 (S.D.N.Y. Dec. 7, 2011); *Hanks v. Wavy Broad., LLC*, Civ. 2012 WL 405065, at *12 (E.D. Va. Feb. 8, 2012); *Pan Am. Sys., Inc. v. Hardenbergh*, 871 F. Supp. 2d 6, 17 (D. Me. 2012); *Diario El Pais, S.L. v. Nielsen Co., (US)*, 2008 WL 4833012, at *6-7 (S.D.N.Y. Nov. 6, 2008); *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761-62 (D. Md. 2015); *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 288 (S.D.N.Y. 2013); *Parisi v. Sinclair*, 845 F. Supp. 2d 215 (D.D.C. 2012); *Deripaska v. Associated Press*, 2017 WL 4685297, at *5 (D.D.C. Oct. 17, 2017); *Fairbanks v, Roller*, 2018 WL 2727897 (D.D.C. June 6, 2018).

[25] Am. Suppl. App. Tab 2 (https://www.theguardian.com/us-news/video/2016/aug/29/north-dakotaoil-access-pipeline-protest-video).

[26] *Id.* Tab 20 (https://www.nrk.no/sapmi/sparebank-1-selger-seg-ut-fra-omstridt-oljerorledning1.13239446).

[27] *Id.* Tab 22 (http://nymag.com/daily/intelligencer/2016/11/hundreds-injured-in-dakota-accesspipeline-protest.html) (https://www.washingtonpost.com/news/morningmix/wp/2016/11/01/dakota-access-protesters-accuse-police-of-putting-them-in-dog-kennelsmarking-them-with-numbers/?utm_term=.f2550f15b9f9).

ETP claims that Greenpeace made false statements with the intent of injuring its reputation and interfering with its business relationships, Am. Compl. ¶ 227, but a defamation defendant's "intent" is insufficient to establish actual malice. *Pauling v. Globe-Democrat Publ'g Co.*, 362 F.2d 188, 198 (8th Cir. 1966). Nor do the political motivations of the speakers establish actual malice. *Campbell*, 255 F.3d at 569. To plead actual malice, ETP must allege facts sufficient to give rise to a reasonable inference that the alleged false statements were made with knowledge that they were false or with reckless disregard of whether they were false. *Id.*; *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73 (N.D. 1991). This analysis applies only to the actual person who uttered the statement (or the party with control over the publication). *Resolute*, 2017 WL 4618676, at *8. The Complaint does not allege – and cannot allege – facts suggesting Greenpeace entertained any serious doubts that the 79 challenged statements published regarding ETP's pipeline operations were true.

Although ETP may have wanted Greenpeace to tell ETP's side of the story, the Greenpeace Defendants had no legal obligation to include information ETP would have preferred they include, so long as their statements were not false. *Janklow v. Newsweek, Inc.*, 759 F.2d 644, 647-48 (8th Cir. 1985). It is the function of advocates to hold the powerful to account, not to disseminate their marketing materials. Choice of what to include in Greenpeace's advocacy is an

---

[28] *Id.* Tab 7 (http://www.ohchr.org/EN/Issues/IPeoples/Pages/Declaration.aspx).

[29] *Klayman v. City Pages*, 2015 WL 1546173, at *16-17 (M.D. Fla. Apr. 3, 2015) (no actual malice when relied on judicial opinions and public filings), *aff'd*, 2016 WL 3033141, at *5 (11th Cir. May 27, 2016) ("Evidence that an article contains information that readers can use to verify its content tends to undermine claims of actual malice."); *CACI Premier Tech. v. Rhodes*, 536 F.3d 280, 292 (4th Cir. 2008) (no actual malice where relied on official reports); *Montgomery v. Risen*, 197 F. Supp. 3d 219, 260 (D.D.C. 2016), *aff'd on other grounds*, 875 F.3d 709 (D.C. Cir. 2017).

editorial judgment which a defamation plaintiff cannot dictate and with which courts do not interfere. *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 258 (1974).[30]

### e.    Greenpeace's Statements Are Privileged

ETP's defamation claims also should be dismissed because the challenged statements are privileged fair reports of judicial and official governmental proceedings. The privilege protects against defamation and related claims where, as here, a publication accurately summarizes statements in court records and government reports. N.D. Cent. Code § 14-02-05; *Humann v. KEM Elec. Coop.*, 450 F. Supp. 2d 1006, 1016 (D.N.D. 2006), *aff'd*, 497 F.3d 810 (8th Cir. 2007); *Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 77 (N.D. 1991). Even if the underlying information ultimately proves false, the privilege applies if "the reports were substantially accurate" and "concern a governmental proceeding." *White v. Fraternal Order of Police*, 909 F.2d 512, 527 (D.C. Cir. 1990). Whether the privilege applies is a question of law courts routinely decide on a motion to dismiss by comparing the publication in suit with official records, subject to judicial notice.[31]

---

[30] The Greenpeace Defendants had no duty to retract their statements even after, *e.g.*, the State Historical Preservation Society found no cultural resources on the DAPL route. Am. Compl. ¶ 117. The issue was still contested by SRST and its expert, subject to ongoing litigation, and a point of public controversy. What constitutes sacred land is a subject for "[t]he academy, and not the courthouse." *Resolute*, 2017 WL 4618676, at *9. Further, that Greenpeace did not subsequently retract its previous statements is irrelevant to what they knew at the time of publication when actual malice is measured. *Sullivan*, 376 U.S. at 286; *McFarlane v. Sheridan Square Press, Inc.*, 91 F.3d 1501, 1515 (D.C. Cir. 1996); *Kahl v. Bureau of Nat'l Affairs,* 856 F.3d 106, 118 (D.C. Cir. 2017) (Kavanaugh, J.).

[31] Courts routinely dismiss defamation suits where the statements are privileged fair reports. *See, e.g., Lee v. TMZ Prods. Inc.*, 2017 WL 4675710, at *5 (3d Cir. Oct. 17, 2017); *Wilkow v. Forbes, Inc.*, 2000 WL 631344 (N.D. Ill. May 15, 2000), *aff'd*, 241 F.3d 552 (7th Cir. 2001); *Hargrave v. Washington Post*, 2009 WL 1312513, at *1 (D.D.C. May 12, 2009), *aff'd*, 365 F. App'x 224 (D.C. Cir. 2010); *Catchai v. Fort Morgan Times*, 2015 WL 6689484, at *4 (D. Colo. Nov. 3, 2015), *judgment entered*, 2015 WL 6689485 (D. Colo. Nov. 3, 2015); *Bothuell v. Grace*, 2017 WL 892343, at *6 (E.D. Mich. Feb. 16, 2017), *report and recommendation adopted sub nom. Bothuell v. Grace*, 2017 WL 878026 (E.D. Mich. Mar. 6, 2017); *DMC Plumbing & Remodeling, LLC v. Fox News Network, LLC*, 2012 WL 5906870, at *6 (E.D. Mich. Nov. 26, 2012).

Numerous publications in suit are privileged fair reports of judicial or official government proceedings, including reports on the SRST Lawsuit, *see* Am. Suppl. App. Tabs 1, 3, 31, and reports on the official federal government process for permitting the pipeline, *see id.* Tabs 3, 8, 9, 12, 26, 28, 30. Greenpeace's publications reporting on each of these proceedings plainly fall within the scope of the fair report privilege, *White*, 909 F.2d at 527 (privilege "extends broadly to the report 'of any official proceeding,'" including allegations or findings that prompt such proceedings), and ETP thus cannot claim liability for Greenpeace's privileged statements. *See Michaelis v. CBS, Inc.*, 119 F.3d 697 (8th Cir. 1997) (liberally construing qualified privilege for fairly and accurately reporting judicial proceedings). Indeed, Greenpeace's attributions could hardly be more explicit. *See* Am. Suppl. App. Tab 1 (describing SRST Lawsuit); Tab 3 (hyperlinking ABC News report on action of "three federal agencies"); Tab 8 (responding to President Obama's statements); Tab 12 (reporting USACE announcement); Tab 28 (reporting impact of President Trump's memoranda); Tab 30 (hyperlinking USACE documents).[32]

### 4.    The Tortious Interference Claims Should Be Dismissed

To state a claim for tortious interference with business, a plaintiff must plead "(1) the existence of a valid business relationship or expectancy; (2) knowledge by the interferor of the relationship or expectancy; (3) an independently tortious or otherwise unlawful act of interference by the interferor; (4) proof that the interference caused the harm sustained; and (5) actual damages to the party whose relationship or expectancy was disrupted." *Atkinson v. McLaughlin*, 462 F. Supp. 2d 1038, 1057-58 (D.N.D. 2006) (citing *Lochthowe v. C.F. Peterson Estate*, 692 N.W.2d 120, 126 (N.D. 2005). The requirement of an "independently tortious" act means that a plaintiff must "prove that the defendant's conduct would be actionable under a

---

[32] Hyperlinking constitutes sufficient attribution for purposes of the fair report privilege. *Adelson v. Harris*, 973 F. Supp. 2d 467 (S.D.N.Y. 2013); *Adelson v. Harris*, 402 P.3d 665 (Nev. 2017).

recognized tort." *Id.* (citing *Trade 'N Post, LLC v. World Duty Free Ams., Inc.*, 628 N.W.2d 707, 720 (N.D. 2001)). Even if defamation is alleged as that act, tortious interference requires the pleading and proving of four elements in addition to defamatory statements in order to constitute an independent tort. *Atkinson*, 462 F. Supp. 2d at 1058-59.

Plaintiff's tortious interference claim, like its defamation claims, must be pled and proved against each Defendant. Yet Plaintiff lumps all Defendants together, and also lumps Defendants with other non-parties as if it could import its (fatally flawed) RICO allegations of a far-flung web of conspirators into its defamation claim. For example, ETP alleges that Defendants "directly incited, directed, funded, trained and provided supplies for acts of terrorism in violation of the U.S. Patriot Act, including (i) attempted and actual destruction of the pipeline; (ii) arson of property used in interstate commerce, including the pipeline, vehicles, and construction equipment; (iii) arson and bombing of federal property during violent attacks against law enforcement near DAPL construction sites; and (iv) damaging federal property, including by burning federal lands and leaving 835 dumpsters of trash and debris at protest camps."  Am. Compl. ¶ 191. As discussed *supra* at 13, there are no allegations that Greenpeace or Brown engaged in such so-called "terrorist" acts – all such allegations are about third parties. *See* Am. Compl. ¶¶ 26-35 (identifying Defendants and Doe Defendants). Similarly, ETP alleges that the unlawful acts by Defendants that support a tortious interference claim include "[o]rganizing and carrying out hundreds of protests," Am. Compl. ¶ 248, yet these allegations lump together a large number of non-parties and Doe Defendants, conflate events held at various locations, do not identify which entities participated in which protest event, and do not explain how peaceful protests were unlawful. More critically, Plaintiffs never plead any of the requisite elements against Greenpeace.

It is hardly surprising that Plaintiff's tortious interference claim thus boils down to a claim that Defendants' expressive activities were defamatory. But for all the reasons the

defamation claims fails, *supra* § A.3, so must the tortious interference claim. *Farah*, 736 F.3d at 540; *Beverly Hills Foodland, Inc. v United Food & Commercial Workers Union, Local 655*, 39 F.3d 191, 196-97 (8th Cir. 1994). Additionally, with respect to the last two elements of an interference claim, because Plaintiff fails to plausibly plead proximate cause and direct damages under its RICO claims based on the same allegedly false statements, ETP cannot show a causal relation between those statements and any harm it suffered.[33]

### 5.    The Criminal Trespass Claims Should Be Dismissed

Criminal trespassing includes entering any place, without license or privilege to do so, when notice against trespass is given by actual communication by the individual in charge of the premises or remaining on the property of another without authority after being requested to leave the property by a duly authorized individual. N.D. Cent. Code § 12.1–22–03. ETP alleges willful entry of the pipeline's property without consent, yet fails to allege or identify anyone from Greenpeace to have engaged in a trespass. Am. Compl. ¶ 253. The North Dakota criminal trespass statute does not recognize a separate crime for "aiding and abetting" criminal trespass, as ETP alleges in the alternative, Am. Compl. ¶ 254, and there do not appear to be any cases applying such a theory under North Dakota law. In any case, ETP does not specify which lands were trespassed, who trespassed, or even connect the Greenpeace Defendants to the "large group of protestors led by Red Warrior Camp," who supposedly "trespassed on federal lands and Dakota Access

---

[33] ETP's civil conspiracy claim, Am. Compl. ¶¶ 258-263, requires "a combination of two or more persons acting in concert to commit an unlawful act or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another and an overt act that results in damage[s]." *Kuhn v. Chesapeake Energy Corp.*, 2012 WL 4442798, at *5-6 (D.N.D. Sept. 25, 2012). "To constitute a concerted action, the plaintiffs [need] to present evidence of a common plan to commit a tortious act, the participants knew of the plan and its purpose, and the participants took substantial affirmative steps to encourage the achievement of the result." *Ward v. Bullis*, 748 N.W.2d 397, 407-08 (N.D. 2008). ETP has not plausibly pled a cognizable underlying tort, that defendants were acting in concert to commit such a tort, that they agreed to any common plan, or that ETP was damaged.

property." Am. Compl. ¶ 205. ETP's criminal trespass claim fails as a matter of pleading.

**B.      The Court Should Dismiss GPI and Charles Brown for Lack of Jurisdiction Pursuant to Rule 12(b)(2)**

Based on the allegations in the Amended Complaint, personal jurisdiction over GPI and Charles Brown is inconsistent with due process. [34] First, Defendant GPI is organized and located in the Netherlands. Am. Compl. ¶ 28. As a foreign party not amenable to service pursuant to the RICO service provisions, this Court's jurisdiction over GPI under RICO depends on application of the North Dakota long-arm statute. *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1181-84 (C.D. Cal. 1998) (rejecting "national contacts" test in RICO case where service could not be effected under RICO service provisions). As this Court has noted, "[w]hen determining whether personal jurisdiction over a party is consistent with due process, a court considers five factors: (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation-ship of those contacts with the cause of action; (4) the state's interest in providing a forum for its residents; and (5) the convenience or inconvenience to the parties."  BankTrack Order 10-11.

Here, ETP has not come close to showing minimum – or indeed any – contacts between GPI and North Dakota. The Amended Complaint does not allege GPI transacts business in North Dakota either directly or through agents; took any actions within the state; derives substantial revenue in the state; is registered to do business in the state; or has consented to personal

---

[34] As the Greenpeace Defendants previously argued, *see* ECF No. 40-1 at 55-61, if the Court does not otherwise dismiss this action, it may exercise its discretion to transfer venue under 28 U.S.C. § 1404(a), as each factor in the relevant analysis supports transfer to either the District of Columbia or the Northern District of California. The location of witnesses in this case – the factor generally afforded the greatest weight by courts, *Zidon v. Pickrell*, 344 F. Supp. 2d 624, 634 (D.N.D. 2004) – weighs in favor of transfer to the District of Columbia where the authors of the publications at issue work out of Greenpeace's offices. None of the statements were initially published in this Judicial District. *See* Am. Suppl. App. Second, judicial economy favors transfer given the parallel SRST litigation pending in the D.C. District Court. Third, North Dakota law does not apply to ETP's defamation claims because the locus of the Greenpeace Defendants' speech activities at issue is their offices, not North Dakota. *See supra* 9.

jurisdiction. GPI's only alleged ties to the United States are its general organizational relationships with GP Inc. and GP Fund. Am. Compl. ¶¶ 52-53. Further, for the same reasons expressed in the Court's Order dismissing BankTrack, the other four factors also suggest that exerting jurisdiction over GPI would offend due process.[35] BankTrack Order 11-13.

With respect to Defendant Brown, the attempt to impose this Court's jurisdiction on a defendant so removed from any relationship with this State, or any unlawful activity anywhere, is outrageous. Brown resides in Virginia. Am. Compl. ¶ 36. He is alleged to have engaged in campaigns in Louisiana and Pennsylvania, not North Dakota, Am. Compl. ¶¶ 16, 64, 165, but there are no plausible allegations that he engaged in any criminal activity, or participated in a RICO enterprise.[36] *See supra* 6, 13.  ETP does not allege the existence of, much less the nature and quality of, any other contacts whatsoever between Brown and North Dakota.

## CONCLUSION

Efforts by large corporations to chill speech critical of their business practices are nothing new. Even here, where ETP attempts to wrap its defamation claims against non-profit advocacy groups and their employees in the mantle of an alleged criminal conspiracy, the First Amendment demands scrutiny of those claims to secure the rights of speech and association that are necessary and vital to a robust marketplace of ideas. Careful examination of Plaintiff's re-asserted claims reveals that not only do they constitute a transparent attempt to subvert critical speech, but despite its 263-paragraph Amended Complaint, those claims still fail to state a claim under the law.

---

[35] For example, just as with respect to BankTrack, ETP pleads no facts that GPI made any statements in North Dakota or intended to cause injury there; indeed, not a single one of the 79 statements challenged by Plaintiff is even attributed to GPI. And, any alleged reputational harm to Plaintiff would not primarily accrue in North Dakota, because ETP is not based there. *See supra* 6.
[36] Given the absence of plausible allegations that Brown participated in a RICO enterprise, any purported jurisdiction under the RICO statute would not serve the "ends of justice." 18 U.S.C. § 1965(b).

This 4th day of September, 2018.


Respectfully submitted,

                                        /s/   *Lacy H. Koonce, III*

Derrick Braaten, ND Bar # 06394          Lacy H. Koonce, III (admitted *pro hac vice*)
BAUMSTARK BRAATEN LAW                     DAVIS WRIGHT TREMAINE, LLP
PARTNERS                                  1251 Avenue of the Americas, 21st Floor
109 North 4th Street, Suite 100           New York, NY 10020-1104
Bismarck, ND 58501                        (212) 603-6467
701-221-2911                              lancekoonce@dwt.com
derrick@baumstarkbraaten.com
                                         Laura Handman (admitted *pro hac vice*)
                                         Lisa Zycherman (admitted *pro hac vice*)
                                         DAVIS WRIGHT TREMAINE, LLP
                                         1919 Pennsylvania Avenue, NW, Suite 800
                                         Washington, DC 20006-2401
                                         (202) 973-4200
                                         laurahandman@dwt.com
                                         lisazycherman@dwt.com

                                         Thomas R. Burke (admitted *pro hac vice*)
                                         DAVIS WRIGHT TREMAINE LLP
                                         505 Montgomery Street, Suite 800
                                         San Francisco, CA 94111
                                         (415) 276-6500
                                         thomasburke@dwt.com

                                         *Attorneys for Defendants Greenpeace*
                                         *International ,Greenpeace, Inc. and Charles*
                                         *Brown*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 4, 2018, I have served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

/s/ *Lacy H. Koonce, III*

Lacy H. Koonce, III (*Pro Hac Vice*)