# UNITED STATES DISTRICT COURT
## DISTRICT OF NORTH DAKOTA
## WESTERN DIVISION

| | |
|---|---|
| Energy Transfer Equity, L.P., *et al.* | |
| Plaintiffs, | |
| v. | Case No. 1:17-cv-00173 |
| Greenpeace International (aka "Stichting Greenpeace Council"), *et al.* | |
| Defendants. | |

## KRYSTAL TWO BULLS' MOTION TO DISMISS UNDER RULE 12(b)(6) AND MOTION TO QUASH IMPROPER SERVICE UNDER RULE 12(b)(5) AND MEMORANDUM IN SUPPORT

TABLE OF CONTENTS

I. Introduction ................................................................................................. 1

II. The only allegations pled with specificity against Ms. Two Bulls constitute speech or association protected by the First Amendment .............................................. 2

III. Any other allegations against Ms. Two Bulls do not meet Plaintiffs' pleading requirements................................................................................................. 7

IV. Plaintiffs have failed to plead the elements of any claim against Ms. Two Bulls........... 8

  A. Ms. Two Bulls is not plausibly liable under the federal RICO statute.............. 9

   1. Ms. Two Bulls did not engage in *any* racketeering activity, much less a *pattern* of racketeering activity....................................................... 10

   2. Ms. Two Bulls did not direct or manage any RICO enterprise.................. 11

   3. Plaintiffs fail to adequately allege the existence of a RICO enterprise........ 12

   4. Ms. Two Bulls was not a proximate cause of Plaintiffs' injuries................. 13

   5. Ms. Two Bulls is not liable under RICO's conspiracy provision................. 15

  B. Plaintiffs have not plausibly pled a State RICO claim......................................... 16

  C. Plaintiffs have not plausibly pled any common-law conspiracy claims ............. 17

V. Service of process on Ms. Two Bulls should be quashed under Rule 12(b)(5)............. 18

  A. Plaintiffs misrepresented that Ms. Two Bulls had been attempting to evade service ........................................................................................................ 19

  B. Plaintiffs misrepresented their diligence in their efforts to serve Ms. Two Bulls ............................................................................................................ 20

VI. Conclusion.................................................................................................. 23

## I.      Introduction

On August 3, 2018, this Court allowed Plaintiffs to amend their sprawling, 231-page

Complaint, with clear instructions to "name any person or entity directly responsible for the acts

complained of," or who "directly provided monetary support" for those acts, and to ensure its

allegations have factual support. Dkt. 94 at 1. Plaintiffs' amended complaint, filed three days later,

Dkt. 95 ("AC"), adds Krystal Two Bulls as one of several new individual defendants, but asserts only

that she is *directly* responsible for encouraging others to join the DAPL protests—lawful calls to

political activism that are immunized by the First Amendment from forming the basis for civil

liability. Plaintiffs' attempt to recast Ms. Two Bulls' lawful advocacy as racketeering is nothing more

than an attempt to punish and chill political speech Plaintiffs do not like, and runs contrary to

longstanding Supreme Court precedent.

Ms. Two Bulls is an Oglala Lakota and Northern Cheyenne woman, United States Army

veteran, and longtime activist for environmental justice, Indigenous Peoples' rights, and anti-

militarism, who, according to Plaintiffs, "was an organizer and media coordinator for Red Warrior

Camp." *See* AC ¶ 31. After this initial description, the amended complaint mentions Ms. Two Bulls

in only five paragraphs, none of which accuse Ms. Two Bulls of any direct criminal activity. *Id.* ¶¶ 38,

41, 126, 127, 130. Nor is Ms. Two Bulls mentioned in the voluminous appendices of "misleading"

statements. Dkt. 95-1, 95-2. Instead, Plaintiffs allege that Ms. Two Bulls engaged in political speech

encouraging others to protest. None of the speech the complaint attributes to Ms. Two Bulls even

approaches the level of incitement. All of it is protected by the First Amendment's guarantees of

freedom of speech and association. What remains is a conclusory, inadequately pled allegation of a

general conspiracy, and a few barely sketched out state law claims, all of which fail as a matter of

law.

While the claims against Ms. Two Bulls can easily be dismissed under Rule 12(b)(6) as

inconsistent with the First Amendment, or for lack of plausible pleading, the Court need not even reach this question, because Plaintiffs failed to serve Ms. Two Bulls within the 90 days allotted by Rule 4(m). As her supporting declaration indicates, Plaintiffs' hearsay declaration submitted in support of their motion for an extension of that 90 day period makes factual misrepresentations to mislead this Court into believing that Ms. Two Bulls has been evading service, and that Plaintiffs have been diligent in their efforts to serve her. Since both claims are false, service on Ms. Two Bulls should be quashed pursuant to Rule 12(b)(5).

## II.    The only allegations pled with specificity against Ms. Two Bulls constitute speech or association protected by the First Amendment.

Plaintiffs fail to allege any speech or conduct by Ms. Two Bulls that is not protected by the First Amendment. Nowhere does the complaint allege Ms. Two Bulls participated in any illegal act. Rather, the only factual allegations regarding Ms. Two Bulls are that she made statements encouraging protest. But since those statements did not encourage illegal activity, let alone meet the high standard for incitement under *Brandenburg v. Ohio*, 395 U.S. 444 (1969), they are protected by the First Amendment from forming the basis for civil liability under *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). *Claiborne Hardware* similarly forecloses Plaintiffs' conclusory attempt to brand Ms. Two Bulls a conspirator—and hold her liable for the alleged acts of others—based on this protected speech.

After identifying her in paragraph 31, the amended complaint's first two substantive references to Ms. Two Bulls, on page 11, allege:

### 1. Red Warrior Camp, Cody Hall, and Krystal Two Bull [*sic*]

38.    Red Warrior Camp, founded by Defendant Cody Hall and represented by media liaison Krystal Two Bull [*sic*], falsely portrays itself as a coalition of "water protectors" representing 27 tribal nations dedicated to direct action to interfere with the construction of DAPL. In truth, Red Warrior Camp is a front for eco-terrorists recruited, directed, and funded by Greenpeace USA and individuals operating as Earth First!. . . . . Red Warrior Camp successfully recruited, coopted, and directed protestors to employ militant, illegal predicate acts to disrupt DAPL construction

2

> during that time period and *other protesters to engage in various activities designed to distract from, and provide cover for*, these racketeering activities.
> …
> 41.    Red Warrior Camp's illegal tactics was [*sic*] often associated with "calls to action" publicized by Krystal Two Bulls, through Greenpeace USA, among others, *and which was designed to enlist others to engage in activities that would distract from, and provide cover for, their illegal activities. . . .*

Although this description fails to make clear whether Ms. Two Bulls is alleged to be a part of the Red Warrior Camp or some sort of outside intermediary between the protesters and the media ("represented by liaison," "publicized by"), what is clear from the italicized text is an admission that Red Warrior Camp did engage in lawful, nonviolent activities, and that Ms. Two Bulls engaged in calls to *lawful* activism.[1] The fact that her public statements are portrayed (without factual support) as a cover for illegal activities of other unnamed parties simply reinforces the fact that what her statements called for is conceded to be lawful.

Twenty-four pages later, the complaint briefly returns to Ms. Two Bulls, alleging:

> 126.    After Red Warrior Camp led these initial attacks on DAPL property and construction crews, Red Warrior Camp, through Defendant Cody Hall and Krystal Two Bulls, and the Greenpeace Defendants agreed that Greenpeace USA would use its fraudulent campaign to raise money for the continued illegal activities at Red Warrior Camp, including directing fraudulently induced funds to Mr. Hall and using its campaign to solicit direct donations and supplies to Mr. Hall. …

> 127.    Notwithstanding Red Warrior Camp's violent protests leading to its leader's arrest, Greenpeace published a public "call to action" from Red Warrior Camp representative Krystal Two Bulls on their website, stating the Red Warrior Camp "calls on all people from around the world to take action" and "come stand with us" against DAPL. Two Bulls urged, "If you cannot be physically present, you can still take escalated action to stop the pipeline and support our struggle." Even today, Ms. Two Bulls' biography is available on Greenpeace's website. During this period, Greenpeace also sent supplies generated by the donation drives directly to Red Warrior Camp's leader and organizer, Cody Hall, enabling Red Warrior to continue

---

[1] More specific allegations contradict Plaintiffs' vague attempts to link Ms. Two Bulls to any illegal actions at Red Warrior Camp. The complaint alleges that "[b]ecause of the degree of their violent tactics, Red Warrior Camp's members, *other than Cody Hall*, have gone to extreme lengths to hide their identity," AC ¶ 137 (emphasis added), indicating that Two Bulls was not a member since her role and identity were public. Elsewhere, the complaint seems to identify her with a role with Greenpeace, *see* AC ¶ 127. As with the initial claims against Greenpeace, "the factual basis for the claims appears intentionally obscured." Dkt. 88 at 3.

its violent attacks against Energy Transfer.

Paragraph 126 contains a boilerplate allegation of conspiracy against Ms. Two Bulls. As detailed below, *see* Part III, *infra*, this conclusory language is inadequate to plausibly plead conspiracy. The remainder of these two paragraphs alleges only that Ms. Two Bulls engaged in speech that is clearly protected under the First Amendment. Like-minded persons are asked to "take action" and "come stand with us," or, in the alternative, to take action even if they "cannot be physically present." This does not in any way encourage unlawful action—unless one assumes every single DAPL protester or Red Warrior Camp participant was engaged in violence, and as noted above, the complaint itself expressly disclaims any such assumption. *See* AC ¶ 41 (characterizing lawful protest activities encouraged by Ms. Two Bulls as cover for illegal activity).

In any event, the First Amendment precludes this statement from being a basis for civil liability, because it does not even approach the level of incitement demanded by *Brandenburg.* 395 U.S. 444. That case held that the First Amendment protects even advocacy of violence "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id.* at 447. As *Claiborne Hardware* made clear, speech thus protected from forming the basis for criminal prosecution is also immunized from forming a basis for civil liability. 458 U.S. at 927-28; *see also id.* at 926-27, 929 (First Amendment bars imposing civil liability in absence of proof defendant authorized, directed, ratified or directly threatened specific tortious activity or incited imminent violence). The statements in paragraph 127 do not even *encourage* violence, let alone rise to the high level of *incitement* to *imminent* violence. And the complaint does not allege that Ms. Two Bulls' statement actually incited anyone to commit any specific illegal act.

The amended complaint's final mention of Ms. Two Bulls alleges only that:

130.    . . . through Krystal Two Bulls, Red Warrior Camp issued a "communique" seeking "reinforcements from skilled and trained Warriors prepared to evict the Dakota Access Pipeline" to join them in Standing Rock immediately to "kill this Black Snake once and for all.". ….

Taking this allegation as true—it is not; Ms. Two Bulls did not write or issue this communique[2]—it too describes speech protected by the First Amendment. Describing activists as "Warriors,"[3] asking them to go to "Standing Rock immediately," and describing the pipeline as a "Black Snake" that should be "kill[ed]" or "evict[ed]" are not calls to violence, any more than pleas to "kill" a bill are incitements to violence against members of Congress. The use of metaphor to describe the pipeline and the protester recruits does not convert this appeal for more protesters into encouragement to illegal action. *Cf. Claiborne Hardware*, 458 U.S. at 928 (heated rhetoric must constitute incitement to imminent lawlessness to sustain liability). Even under the worst misinterpretation, this statement is not a call for *imminent* lawlessness, *likely* to induce the same, and therefore does not even approach the incitement standard of *Brandenburg*.

Since statements protected by the First Amendment cannot underlie civil liability, all that remains is essentially an accusation of association: Plaintiffs hope to taint Ms. Two Bulls with the unlawful acts of "[a]n extreme minority of DAPL protestors." Dkt. 87 at 5. Thus, Paragraph 126 contains a threadbare allegation that Ms. Two Bulls agreed to join a conspiracy to "campaign to raise money for the continued illegal activities at Red Warrior Camp." AC ¶ 126.  Putting aside the conclusory nature of this conspiracy allegation (which fails under *Iqbal* and *Twombly*, *see infra* Part III), the complaint does not indicate any role Ms. Two Bulls allegedly played in this *conspiracy to raise funds* that is not protected by the First Amendment. As with the original complaint, "it is unclear what each Defendant allegedly did, specifically, to give rise to the asserted claims," (Dkt. 88 at 5), and to

---

[2] Other statements attributed to Ms. Two Bulls in the complaint included her name; the "communique" referred to in paragraph 130 (which is widely available on the Internet) does not, instead being signed by "Black Snake Killaz," and its writing style is entirely distinct from the style of those other statements. (The next paragraph of the complaint makes reference to a heretofore unmentioned "Defendant Manuel [*sic*]" who labeled a video as a "communique." AC ¶ 131. Nowhere else is this individual mentioned or named as a defendant.)

[3]  It is hardly surprising that a protest calling itself the "Red Warrior Camp" would refer its protesters as "Warriors"; that does not imply violence, or anything beyond committed protest.

the extent that Plaintiffs believe Ms. Two Bulls did anything besides making statements, this is not made clear in the amended complaint. Such allegations would fail to fulfill the pleading requirements applicable to conspiracy claims in an ordinary case; they certainly fail to satisfy the more searching analysis demanded in First Amendment cases. When a claim involves "activity that is otherwise protected by the First Amendment, courts [addressing a Rule 12 motion] must use 'precision' in determining who may be held liable for the tortious conduct so that the guarantees of the First Amendment are not undermined." *Doe v. McKesson*, 272 F. Supp. 3d 841, 844 (M.D. La. 2017). *See also Sines v. Kessler*, 324 F. Supp. 3d 765, 783-84 (W.D. Va. 2018) (because of pleading requirements and the First Amendment, plaintiffs could not plausibly plead that all rally attendees "were part of one overarching conspiracy").

Where a political advocacy campaign involves both protected expression and illegal activity, individuals' First Amendment rights are not limited—and they cannot be held liable—simply because their partners in expressive activity violated the law in furtherance of their joint campaign. *Claiborne*, 458 U.S. at 908, 915-20, 926-27, 934. "Civil liability may not be imposed merely because an individual belonged to a group, some members of which committed acts of violence. For liability to be imposed by reason of association alone, it is necessary to establish that the group itself possessed unlawful goals and that the individual held a specific intent to further those illegal aims." *Id.* at 920. Such intent "must be judged according to the strictest law." *Id.* at 919 (internal quotation omitted); *see also Scales v. United States*, 367 U.S. 203, 224 (1961) ("In our jurisprudence guilt is personal.").

Thus, the Court must look at Ms. Two Bulls' *specific* acts to determine whether they are illegal or protected. *Claiborne*, 458 U.S. at 916-17, 924-26, 933-34. Plaintiffs' theory that Ms. Two Bulls' alleged role as a "media liaison" is enough to hold her liable as a co-conspirator cannot survive even the most cursory review, let alone review with the "extreme care" that *Claiborne Hardware* requires. 458 U. S. at 915-16, 926-27. Just as Plaintiffs cannot allege every member of the DAPL protests

6

supported or engaged in violence, they cannot allege every protester associated with Red Warrior Camp did. Nothing in the complaint would allow the attribution of criminal actions of other participants in the protests to Ms. Two Bulls. No factual allegation so much as suggests that Ms. Two Bulls intended to promote violence in any way. Since the Supreme Court has soundly rejected the guilt by association at the heart of Plaintiffs' claims, all claims against Ms. Two Bulls must be dismissed under the First Amendment.

### III.   Any other allegations against Ms. Two Bulls do not meet Plaintiffs' pleading requirements.

Aside from protected speech and association, the Amended Complaint alleges no facts regarding Ms. Two Bulls that meet the requirements of specificity and plausibility. The Court ordered Plaintiffs to plead "concise and direct allegations against each named Defendant[ ]," Dkt. 88 at 5, and they have not done so.

The only allegation concerning Ms. Two Bulls individually, that is not solely concerned with her speech and association, is the vague suggestion that she "agreed that Greenpeace USA would use its fraudulent campaign to raise money for the continued illegal activities at Red Warrior Camp." AC ¶ 126. This is no different from the conclusory allegation in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), that the defendants there "agreed not to compete with one another." *Id.* at 551. "[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *Id.* at 557. On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). Simply alleging that a defendant "agreed to" a wrongful act "amount[s] to nothing more than" a conclusory "recitation of the elements" of a claim, which is "not entitled to be assumed true." *Ashcroft v. Iqbal*, 556 U.S. 662, 681-82 (2009); *see also id.* at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The complaint is devoid of facts regarding this alleged agreement; it cannot be credited.

7

Moreover, where a plaintiff's theory of liability "is merely possible rather than plausible," as it is here, Plaintiffs must "do more than allege facts that are merely consistent with both their explanation and defendants' competing explanation," they must also plead facts that "tend[ ] to exclude the [other] possibility." *Petzschke v. Century Aluminum Co.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Here, although Defendants allege Ms. Two Bulls agreed to a scheme to fund illegal acts, they plead no *facts* indicating that she actually participated in this scheme, other than through her protected speech and association. This does not tend to exclude the most plausible explanation: that Ms. Two Bulls was merely exercising her First Amendment rights in parallel with others organized around the same subject matter.

The complaint additionally makes a number of conclusory allegations about "defendants" or the "Enterprise" generally, without specifying who has taken what action;[4] nowhere does it suggest that Ms. Two Bulls engaged in any illegal or violent conduct. This does not "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[L]umping" her together with other defendants in "one category," "results in the reader being unable to determine the exact theory of liability as to each separate defendant." *Wong v. Bann-Cor Mortg.*, No. 10-1038-CV, 2011 U.S. Dist. LEXIS 61548, at *40-41 (W.D. Mo. June 9, 2011).

## IV.    Plaintiffs have failed to plead the elements of any claim against Ms. Two Bulls.

Plaintiffs assert five claims against Ms. Two Bulls (these five are brought against "all defendants"): Counts 1-3, the federal and state Racketeering Influenced and Corrupt Organizations Act ("RICO") claims; count 8, a generic common-law conspiracy claim; and count 7, a trespass claim. None of these claims is supported by facts adequate to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[4] This applies with equal force to allegations about actions taken by "Red Warrior Camp." Although Ms. Two Bulls is specifically linked to a few of Red Warrior Camp's public statements, there are no allegations that she took part in any of its other activities, including any illegal activities.

### A.  Ms. Two Bulls is not plausibly liable under the federal RICO statute.

Plaintiffs do not plausibly allege that Ms. Two Bulls is liable under RICO. While Plaintiffs'
claims fail even ordinary pleading standards, "courts have long held civil RICO complaints to a
somewhat higher standard of pleading and required a plaintiff to 'specifically identify and factually
plead, each element of a viable RICO claim.'" *Crest Constr. II, Inc. v. On Time Auto*, No. 07-0728, 2010
U.S. Dist. LEXIS 88798, at \*3-4 (W.D. Mo. Aug. 27, 2010) (quoting Gregory P. Joseph, Civil RICO:
A Definitive Guide § 23, at 207 (3rd ed. 2010)). Even before *Twombly* and *Iqbal*, RICO claims were
"not allowed to float freely on a sea of bombast" and courts "need not credit bald assertions,
periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." *Id.* (quoting
*Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)). And a RICO claim alleging fraud must be
pleaded with particularity under Rule 9(b). *Crest Constr.*, 660 F.3d at 353.

Plaintiffs assert direct and conspiracy liability under 18 U.S.C. § 1962(c)-(d). For direct
liability, the "requirements of 1962(c) must be established as to each individual defendant." *Craig
Outdoor Advert., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). So, as this Court held,
"[t]o plausibly allege a RICO violation, Energy Transfer must show the existence of an enterprise
that was engaged in interstate commerce; [Defendant's] association with the enterprise; [her]
participation in the conduct of the affairs of the enterprise; and that [her] participation was through
a pattern of racketeering activity." Dkt. 87 at 4. Plaintiffs have not plausibly pled any of these
elements. Nor have they plausibly pled, as they must, that Ms. Two Bulls' conduct proximately
caused or contributed to any injury cognizable under RICO. *See Holmes v. Sec. Investor Prot. Corp.*, 503
U.S. 258, 267-268 (1992). Nor is Ms. Two Bulls liable under RICO's conspiracy provision, because
there are no allegations that she agreed to commit any predicate acts nor that she intended others do
so. *See United States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014).

1.    **Ms. Two Bulls did not engage in *any* racketeering activity, much less a *pattern* of racketeering activity.**

Direct liability under Section 1962(c) fails because Ms. Two Bulls did not commit any predicate acts, let alone a pattern of racketeering activity. As this Court recognized, RICO only assigns liability if the defendant participates in the management or operation of an enterprise through "predicate RICO acts." Dkt. 87 at 5 (citing *Reves v. Ernst & Young,* 507 U.S. 170 (1993)). And the statute makes clear this must be done through a "pattern of racketeering activity." 18 U.S.C. § 1962(b); *Gunderson v. ADM Inv'rs Servs., Inc.,* 85 F. Supp.2d 892, 916-917 (N.D. Iowa 2000).

*First*, the Amended Complaint does not identify which crimes Ms. Two Bulls allegedly committed. Unlike most other Defendants, Ms. Two Bulls is not mentioned in Plaintiffs' recitation of the alleged racketeering activities of the Enterprise. *See* AC ¶¶ 191-203.[5] Plaintiffs' RICO claims against Ms. Two Bulls fail for this reason alone.

*Second*, the complaint contains no facts that plausibly establish that Ms. Two Bulls violated any criminal law. As noted above, the only specific facts regarding her actions are that she made "calls to action," including distributing a "communique" with colorful language. AC ¶¶ 41, 127, 130. None of this speech constitutes a criminal predicate act under RICO. Ms. Two Bulls could not have committed fraud, because none of the alleged statements are factual in nature, such that they could be considered false or misleading. Indeed, Ms. Two Bulls' alleged statements are not included in Plaintiffs' appendices of "misleading statements." *See id.* ¶ 202; Dkt. 95-1, 95-2. Nor is there any allegation that Ms. Two Bulls trespassed, committed any violence or destroyed any property. A pattern requires "at least two" acts, 18 U.S.C. § 1961(5); Plaintiffs plead none.

---

[5] As noted above, *supra* Part III, generic references to the "Enterprise" or "Red Warrior Camp" are insufficient.

### 2.    Ms. Two Bulls did not direct or manage any RICO enterprise.

Even if Ms. Two Bulls had committed any predicate acts, she can only be liable if her own "predicate RICO acts rise to the level of participation in the management or operation of the enterprise." Dkt. 87 at 5; *accord Reves*, 507 U.S. at 185. It is not enough that Ms. Two Bulls' conduct allegedly aided or assisted the RICO enterprise. *See Abbott Labs v. Adelphia Supply USA*, No. 15-CV-5826, 2017 U.S. Dist. LEXIS 1007, at *24-25 (E.D.N.Y. Jan. 4, 2017) (collecting cases). The complaint is devoid of facts suggesting that she had any "degree of control over the operation or management of" the enterprise. *Dahlgren v. First Nat'l Bank*, 533 F.3d 681, 690 (8th Cir. 2008).

Indeed, Plaintiffs have pled nothing suggesting that Ms. Two Bulls took any "additional steps" for the "enterprise" whatsoever. *Dahlgren,* 533 F.3d at 690. They allege that the Enterprise's "common purpose" was to "generate increased donations to the Enterprise members." AC ¶ 227. But although Ms. Two Bulls made statements on behalf of Red Warrior Camp, exercising her First Amendment rights, there are no allegations of any steps that she took to further the alleged common purpose; in other words "nothing in the complaint reveals how one might infer that" her actions "were undertaken on behalf of the *enterprise.*" *United Food & Commercial Worker Unions & Emp'rs Midwest Health Bens. Fund v. Walgreen Co.*, 719 F.3d 849, 854 (7th Cir. 2013). Instead, her actual alleged activities – making statements calling for protest against DAPL – "are entirely consistent with" Ms. Two Bulls "going about [her] own business" of protesting the pipeline. *Id.* at 855; *see also Nestlé Purina PetCare Co. v. Blue Buffalo Co.*, 181 F. Supp. 3d 618, 631-32 (E.D. Mo. 2016); *Guaranteed Rate, Inc. v. Barr*, 912 F. Supp. 2d 671, 687 (N.D. Ill. 2012).

The only facts alleged indicate that Ms. Two Bulls engaged in public statements against DAPL, including calling on others to oppose the pipeline. These allegations establish no individual steps taken on behalf of the enterprise, let alone control over it.

### 3.   Plaintiffs fail to adequately allege the existence of a RICO enterprise.

Plaintiffs' RICO claims fail for an even more basic reason – they do not allege an enterprise that meets the requirements of RICO. Plaintiffs allege an association-in-fact of a number of individuals, entities, and non-entities. AC ¶ 187. However, they still must plausibly plead "(1) a common purpose that animates the individuals associated with [the RICO Enterprise]; (2) an ongoing organization with members who function as a continuing unit; and (3) an ascertainable structure distinct from the conduct of a pattern of racketeering." *United States v. Lee*, 374 F.3d 637, 647 (8th Cir. 2004). *See also Crest Constr.*, 660 F.3d at 354-55 (the enterprise must "exist [even if] the predicate acts [were] removed from the equation"). Largely for the reasons already articulated by the Greenpeace Defendants, the complaint fails to meet these requirements. *See* Dkt. 101-3 at 10-15; Dkt. 102 at 6-10.

While Defendants allege that the Enterprise's common purpose was to fraudulently generate donations to Enterprise members, *see* AC ¶¶ 78, 209, 227, 232, they do not allege that Ms. Two Bulls benefited from any donations, or any facts suggesting that she shared this purpose. And just like BankTrack, she was not associated with any alleged Enterprise in terms of its "course of conduct." Dkt. 87 at 5. Instead, "[n]one of [her] actions promoted, assisted, or condoned violent criminal conduct." *Id.* Thus, even assuming that Plaintiffs have pled an Enterprise with a common purpose and course of conduct, they have not plausibly pled that Ms. Two Bulls shared that purpose or course of conduct. The facts alleged show only that Ms. Two Bulls had the goal of stopping DAPL, which diverges from the alleged purpose of other alleged Enterprise members. Such "divergent goals" of members "is a 'fatal problem' to a RICO claim." *Craig Outdoor Adver., Inc. v. Viacom Outdoor, Inc.*, 528 F.3d 1001, 1027 (8th Cir. 2008). [6]

---

[6] This Court has previously observed that the original Defendants were united by their goal of stopping DAPL, but rejected the notion that all groups who shared this goal were part of an

Plaintiffs also fail to plead any facts demonstrating that the alleged Enterprise operated as a continuing unit, including any facts evincing consensus regarding means, hierarchy or structure. Parallel *conduct*, such as opposition to DAPL, by itself does not push an allegation of common purpose or conspiracy from possible to plausible. *See Twombly*, 550 U.S. at 553-54; *cf.* Dkt. 103-1 at 10-15. While Plaintiffs allege that various members collaborated on certain specific actions, alleging that entities "regularly worked with" each other is insufficient to "permit the court to draw the reasonable inference that these entities coordinated or 'function[ed] as a continuing unit as shown by a hierarchical or consensual decision making structure'" necessary for a RICO enterprise. *Stanissis v. DynCorp Int'l LLC*, Civ. No. 14-CV-2736, 2015 U.S. Dist. LEXIS 172412, at *11-12 (N.D. Tex. Dec. 29, 2015) (quoting *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015)).

### 4. Ms. Two Bulls was not a proximate cause of Plaintiffs' injuries.

Because Ms. Two Bulls neither participated in nor assisted any acts to damage Plaintiffs' property, nor caused Plaintiffs to lose any financing, her acts did not proximately cause the alleged injuries. RICO demands "a more stringent showing of proximate cause than would be required at common law." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 179 (2d Cir. 1999); *accord* Gregory P. Joseph, Civil RICO: A Definitive Guide, at 56 (3d ed. 2010). A direct relationship between a defendant's racketeering activity and Plaintiffs' injuries is required; the foreseeability of an injury is not enough. *Hemi Grp., LLC v. City of N.Y.*, 559 U.S. 1, 12-13 (2010); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006); *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268-70 (1992). The causal link must exist for each defendant's racketeering acts. *See Fenner v. General Motors*, 298 F. Supp. 3d 1037, 1075 (E. D. Mich 2018).

---

"enterprise," because "there was no association regarding course of conduct." Dkt. 87 at 4-5. While it is fair to assume that all the groups wanted to stop DAPL, so did millions of other Americans. RICO liability does not attach to "every person who shares a common cause with extremists who act out criminally." *Id.* at 5.

Plaintiffs allege two types of damages: direct property damage and impaired access to financial markets. AC ¶ 184. The causal chain between Ms. Two Bulls' conduct and either injury is far too indirect and speculative to satisfy RICO's strict causation requirements, with multiple intervening acts by others that "break the chain of causation." *Moore*, 189 F.3d at 179; *see also Brandenburg v. Seidel*, 859 F.2d 1179, 1190 (4th Cir. 1988) (RICO causation was too "attenuated" where multiple "intervening direct causes" "had to transpire thereafter" in order to cause the injuries).

Plaintiffs' theory is that Ms. Two Bulls' "calls to action" were intended to enlist activists to engage in lawful activity that would "distract from, and provide cover for" others' illegal acts. AC ¶ 41. But even if these statements were not clearly protected speech, Plaintiffs have pled no facts that indicate such an intent, or that any specific individual or group committed illegal acts at the protests because of Ms. Two Bulls. And even if a causal link were pled between Ms. Two Bulls' statements and any property damage, the intervening decision of third parties to engage in criminal activity would sever that chain. *See e.g.*, *Ashley County v. Pfizer*, 552 F.3d 659, 670-71 (8th Cir. 2009) (proximate cause was lacking where independent criminal acts by methamphetamine cooks independent of defendant pharmaceutical manufacturers breaks the chain of causation); *City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill. 2d 351, 410-11 (2004) (gun manufacturers were not proximate cause of gun crime because third-party criminal act was the direct and intervening cause).

Nor did Ms. Two Bulls cause any loss of financing. She is not alleged to have had any communications with Plaintiffs' financiers, and certainly none involving any false or misleading statements. To the extent that Plaintiffs have alleged any concrete loss relating to financing, those losses certainly do not stem directly from Ms. Two Bulls, but involved multiple intervening decisions by third parties.

**5.      Ms. Two Bulls is not liable under RICO's conspiracy provision.**

Ms. Two Bulls can be liable under 18 U.S.C. § 1962(d) only if she (1) "*personally agreed to commit two predicate acts* in furtherance of the enterprise or [(2)] agree[d] to participate in the conduct of the enterprise with the *knowledge* and *intent* that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise." *United States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014) (emphasis added, internal quotations omitted). Plaintiffs plausibly allege neither.

There are zero facts and not even a conclusory allegation in the Amended Complaint suggesting Ms. Two Bulls agreed to commit any predicate acts, such as drug dealing, money laundering, fraud or violence. Plaintiffs fail the first option.

Plaintiffs also fail the second; they have not plausibly alleged that Ms. Two Bulls knew and intended for someone else to commit any predicate acts. The closest Plaintiffs come is their infirm allegation that Ms. Two Bulls "agreed" that Greenpeace would direct fraudulently induced funds to Mr. Hall for "continued illegal activities at Red Warrior Camp." AC ¶ 126. As noted above, *supra* Part III, this conclusory allegation cannot be credited. [7] And since mere association, knowledge of the conspiracy or even presence during "conspiratorial discussions" is insufficient to prove a RICO conspiracy, *Rosemann v. St. Louis Bank*, 858 F.3d 488, 500 (8th Cir. 2017), it is likewise insufficient for Plaintiffs to allege that Ms. Two Bulls merely associated with the alleged RICO Enterprise or its members. Plaintiffs must plead additional facts that plausibly suggest that Ms. Two Bulls *knew* and *intended* that one of the members of the Enterprise would carry out violence and/or fraud. *See Goren v. New Vision Int'l*, 156 F.3d 721, 732 (7th Cir. 1998).

Plaintiffs present no facts indicating that Ms. Two Bulls knew of beforehand, or intended,

---

[7] *Cf. A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 347 (4th Cir. 2011) (conspiracy allegations were insufficient when the plaintiff "fail[ed] to allege with any specificity the persons who agreed to the alleged conspiracy, the specific communications amongst the conspirators, or the manner in which any such communications were made"); *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678, 681-82.

any alleged fraud, violence or other illegal activity. While Ms. Two Bulls might have shared with Red Warrior Camp members the legitimate goal of halting DAPL, there is no factual allegation showing she agreed that the goal would be accomplished via racketeering activity or violence. There is no information about where, why, how, or with whom the agreement occurred. The Plaintiffs do not allege any facts showing Ms. Two Bulls personally benefited from this scheme or explain why, in the absence of that benefit, it is plausible she would take part in this scheme. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 596-97 (1986) (noting that "if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy").

Unable to plead facts that show an explicit agreement, Plaintiffs cite one interaction between Greenpeace and Ms. Two Bulls—when Greenpeace published Ms. Two Bulls' call for action. AC ¶ 127. This single factual allegation cannot support a conspiracy to defraud donors using fabricated environmental issues.[8] The only actions attributed to Ms. Two Bulls are statements calling for people to support the movement against DAPL and "take action," AC ¶ 127, or metaphorically calling for the "evict[ion]" of DAPL and the death of the "Black Snake." AC ¶ 130. None of these statements evinces a violent or fraudulent intent. Plaintiffs describe Ms. Two Bulls as an "organizer and media coordinator for Red Warrior Camp," AC ¶ 31, but organizing and coordinating media does not imply violence, and they plead no facts demonstrating that she directed or had any responsibility for any unlawful activity or that her position plausibly shows that she specifically intended that members of Red Warrior Camp commit illegal acts.

### B.   Plaintiffs have not plausibly pled a State RICO claim.

Since North Dakota's RICO statute "closely resembles" the federal statute, *Burr v. Kulas*, 564 N.W.2d 631, 636 (N.D. 1997), Plaintiffs' failure to adequately allege the RICO elements equally bars

---

[8] Nor do Plaintiffs have standing to raise such a claim on behalf of Greenpeace's allegedly defrauded donors. *See* Dkt. 103-1 at 19-20.

Plaintiffs' state law claim. This includes, for example, the fact that Plaintiffs have not alleged that Ms. Two Bulls engaged in a "pattern of racketeering activity." *Id.*

This claim also fails for additional reasons. The statute requires Plaintiff to plead with particularity that the alleged predicate acts are criminal—that is, a plaintiff must allege either a prior conviction or probable cause—both absent here. *Neubauer v. FedEx Corp.*, 849 F.3d 400, 408 (8th Cir. 2017) (quoting *McColl Farms, LLC v. Pflaum*, 837 N.W.2d 359, 369 (N.D. 2013) (merely "stating an act is criminal is not enough to make it true"). Further, "racketeering" under North Dakota law requires an act "committed for financial gain," and there is no allegation that Ms. Two Bulls acted for financial gain. N.D.C.C. § 12.1-06.1-01(2)(f); *see McColl Farms*, 837 N.W.2d at 369.

### C.    Plaintiffs have not plausibly pled any common-law conspiracy claims.

Plaintiffs' claim that Ms. Two Bulls is liable for conspiring to commit trespass and tortious interference with business relations also fails. AC ¶ 259. Such a claim under North Dakota law requires a "meeting of minds on the object or course of action," "[o]ne or more unlawful or overt acts," and "damages as the proximate result thereof." *In re N. Dakota Pers. Injury Asbestos Litig. No. 1*, 737 F. Supp. 1087, 1096 (D.N.D. 1990); *see also*, *Burris Carpet Plus, Inc. v. Burris*, 785 N.W.2d 164, 179 (N.D. 2010).

As noted above, *supra* Part III, Plaintiffs have not plausibly pled that Ms. Two Bulls was part of any agreement to commit any tortious acts. Their bare allegation of an "agreement," AC ¶ 126, is insufficient to establish a "meeting of minds." Plaintiffs allege nothing more than that members of a group that Ms. Two Bulls was associated with committed illegal or tortious acts. This does not establish her liability.

### D.    Plaintiffs do not allege that Ms. Two Bulls has committed any trespass.

Under North Dakota law, an individual commits a trespass if she "'intentionally and without a consensual or other privilege . . . enters land in possession of another or any part thereof or causes

17

a thing or third person so to do.'" *McDermott v. Sway*, 78 N.D. 521, 529-30 (1951) (quoting Restatement (First) of the Law of Torts § 158).[9] Aside from conclusory statements against all "Defendants" in Count VII, AC ¶¶ 253-54, Plaintiffs nowhere allege that Ms. Two Bulls entered Energy Transfer's property, or anyone else's. Indeed, they do not even allege that Ms. Two Bulls was physically present in North Dakota. And, as noted above, Ms. Two Bulls' general "calls to action" against DAPL—none of which are alleged to have encouraged, solicited, or directed anyone to commit any illegal acts—cannot be the basis of liability for the illegal acts of others. Ms. Two Bulls is not alleged to have taken any action that would assist others in committing trespasses.

## V.  Service of process on Ms. Two Bulls should be quashed under Rule 12(b)(5).

Finally, service on Ms. Two Bulls should be quashed because Plaintiffs sought and received an extension of time to serve Ms. Two Bulls based on factual misrepresentations. Plaintiffs' Motion Requesting an Extension of Time to Serve is based on their claim, in a hearsay declaration, that they could not serve Ms. Two Bulls within Rule 4(m)'s 90 day deadline because she was evading service, while they were diligently attempting to serve her. Dkt. 117 at 10. This is entirely untrue, as set forth in the Declaration of Ms. Two Bulls, attached hereto as Ex. A (hereafter "Two Bulls Decl."). Furthermore, this is part of a pattern of dilatory tactics used by Plaintiffs in naming and serving Defendants in this action. At this point, Plaintiffs should not be excused for their misrepresentations.

The amended complaint naming Ms. Two Bulls was filed on August 6, 2018, and Plaintiffs' 90-day deadline ran on November 5, 2018. That day, Plaintiffs sought a 45-day extension to serve Defendants, arguing that "good cause" excused their failure to effect timely service of process. Dkt.

---

[9] Plaintiffs label this claim "Criminal Trespass." AC ¶¶ 252-57. Trespass may be a crime, *see* N.D. Cent. Code § 12.1-22-03(5), but that crime has no civil liability provisions. While "[v]iolation of a statute may be both a crime and a tort," *Fargo Women's Health Org. v. FM Women's Help & Caring Connection*, 444 N.W.2d 683, 684 (N.D. 1989), this is not a case where violation of a statutory standard is relevant to a claim such as negligence, *see id.* at 685, and so the criminal statute is irrelevant.

114 at 9. On December 5, a month after the deadline and four months after the complaint was filed, Ms. Two Bulls was served. Dkt. 116. On December 12, this Court granted the November 5 request for extension. Dkt. 117. Because Ms. Two Bulls did not have an adequate opportunity to bring the factual misrepresentations contained in Plaintiffs' motion to this Court's attention before the extension was granted, she proceeds on this Motion to Quash; to the extent necessary, she seeks reconsideration of the Court's December 12 order.[10]

A showing of good cause, which allows Plaintiffs an extension of time to serve under Rule 4(m), requires "at least 'excusable neglect'—good faith and some reasonable basis for noncompliance with the rules." *Adams v. AlliedSignal General Aviation Avionics*, 74 F. 3d 882, 887 (8th Cir. 1996) *quoting Lujano v. Omaha Public Power Dist.*, 30 F.3d 1032, 1035 (8th Cir. 1994). Importantly, it is the plaintiff's burden to establish good cause. *Beyer v. Pulaski Cnty. Jail*, 589 F. App'x 798, 799 (8th Cir. 2014). By presenting factual misrepresentations that are unsupported by evidence, Plaintiffs have shown neither good faith nor a reasonable basis for noncompliance. Furthermore, they have disobeyed this Court's order that, moving forward, they should have "evidentiary support for their factual contentions." Dkt. 94 at 1. For these reasons, Ms. Two Bulls respectfully urges this court to grant her motion to quash service under Fed. R. Civ. P. 12(b)(5), and, if necessary, to reconsider its order granting Plaintiffs' Motion for Extension of Time to Serve.  Dkt. 117.

### A. Plaintiffs misrepresented that Ms. Two Bulls had been attempting to evade service.

Plaintiffs assert that their "inability to serve defendants is a direct result of defendants' efforts to avoid service." Dkt. 114 at 2. As to Ms. Two Bulls, this assertion is based not on any evidence but primarily on Plaintiffs' counsel's stated belief that she was staying in hotels under assumed names. *Id.* This belief, in turn, is allegedly based on the word of unnamed "investigators"

---

[10] This court has the power to reconsider non-final orders. *See Auto Servs. Co. v. KPMG, LLP*, 537 F.3d 853, 857 (8th Cir. 2008).

said to have informed Plaintiffs that this is true of all four defendants. *Id.* at 10 (*citing* Dkt. 108 ¶¶ 11-16, Dkt. 115 (Recine Decl.) ¶¶ 5, 15-23, Ex. 3). There is no sworn statement from any investigator establishing any basis for this belief, only Ms. Recine's self-interested hearsay.

This allegation is utterly false: Ms. Two Bulls has not made any attempt to evade service. For the first months of the service period she lived in her hometown of Lame Deer, where she maintained a permanent mailing address. Two Bulls Decl. ¶ 2. In October she moved in with her partner in nearby Billings, Montana, and she filed a change of address notice to the post office. *Id.* at ¶ 4. She also returned to Lame Deer every week to perform work relevant to her college program. *Id.* She traveled for various events – including public events – for work and pleasure, as usual. *Id.* at ¶ 7. In fact, her public Facebook posts noted her air travel to Phoenix, where she was served at the airport. *Id.* at ¶ 8. During the service period, Ms. Two Bulls spent only short periods of time away from home, staying for example at a hotel in Rapid City, South Dakota while attending a marathon, and when her relative was hospitalized nearby; she also stayed at a hotel in Sand Creek, Colorado for another run. *Id.* at ¶ 6. Contrary to the hearsay allegation that all four newly-named defendants moved between hotels using false names, she reserved these rooms under her own name. *Id.* Plaintiffs' convenient "belief" that *four* individual defendants are all evading service by *all* staying in unnamed hotels, on unnamed dates, under "assumed names" appears designed to mislead the court.

**B.  Plaintiffs misrepresented their diligence in their efforts to serve Ms. Two Bulls.**

Plaintiffs claim that they have made a "diligent—indeed extraordinary—effort" in attempting to serve Ms. Two Bulls, without success. Dkt. 114 at 10. But this, too, is false. They claim to have conducted "research," Dkt. 114 at 7, which presumably includes the "internet research" referred to in Ms. Recine's declaration. Dkt. 115 ¶ 4. If this is true, it is unfathomable how Plaintiffs could have taken so long to effectuate service. If one simply Googles "Krystal Two Bulls" the first result is a profile on the Greenpeace USA website that states, among other things, "Krystal Two

Bulls is an Oglala Lakota/Northern Cheyenne woman from Lame Deer, Montana."[11] In fact, Plaintiffs' complaint references this profile, and multiple other publicly available sources confirm this fact.[12] If one then Googles "Krystal Two Bulls" and "Lame Deer" together, the third result is an address search website indicating that her mailing address is P.O. Box 1138, Lame Deer, Montana, 59043.[13] One can determine these facts in under a minute. Lame Deer is on the Northern Cheyenne Reservation, and the address was Ms. Two Bulls' mailing address for over twenty years. Two Bulls Decl. ¶ 2. Since moving to Billings in October, she has filed a change of address notice with the post office so that any mail sent to this P.O. box is automatically forwarded to her in Billings. *Id.* at ¶ 4. According to the 2010 census, Lame Deer is a town of only about 2000 people,[14] yet Plaintiffs do not seem to have deployed their investigators there, nor even attempted to serve Ms. Two Bulls by certified mail at her P.O. box. *See* Fed. R. Civ. P. 4(e)(1) (allowing service on individual by means authorized under law of state where district court is located); N.D. R. Civ. P. 4(d)(2)(A)(iv) (allowing service by "any form of mail or third-party commercial delivery addressed to the individual to be served and requiring signed receipt and resulting in delivery to that individual").

Instead of taking these obvious steps, Plaintiffs submitted a declaration indicating that they believed Ms. Two Bulls resided at one or more addresses in the town of Colstrip, Montana. Dkt. 115 ¶¶ 15-18. Ms. Two Bulls has never lived in Colstrip, nor even spent the night there. Two Bulls Decl. ¶ 5. Indeed, the address search website referenced above lists over a dozen prior addresses for Ms. Two Bulls, including overseas military addresses from her service in the U.S. Army, but it does not

---

[11] Krystal Two Bulls, https://www.greenpeace.org/usa/bios/krystal-two-bulls/ (last visited Dec. 21, 2018).

[12] AC ¶ 127; *see also,* The Land I Trust, Sierra Club, Aug. 8, 2018, available at https://simplecast.com/s/c02e4a21?t=0m0s (podcast featuring Ms. Two Bulls, recorded in Lame Deer).

[13] Krystal R Two Bulls, https://www.fastpeoplesearch.com/address/1138-po-box_lame-deer-mt-59043 (last visited Dec. 21, 2018).

[14] United States Census Bureau, https://factfinder.census.gov/faces/nav/jsf/pages/community_facts.xhtml (Search for "Lame Deer CDP, Montana") (last visited Dec. 21, 2018).

include any addresses in Colstrip.[15] It is not clear why Plaintiffs could not easily determine Ms. Two Bulls' mailing address from the publicly available information, and Plaintiffs' declaration does not include sufficient information to explain why they believed she was living in Colstrip (a town outside of the Northern Cheyenne Reservation, *Id.* at ¶ 5).

Despite their claim of diligence, Plaintiffs apparently made no service efforts between August 17 and sometime in October. They sent process servers to two Albuquerque addresses in early August—addresses that public records indicated were not Ms. Two Bulls' current residence[16]— and then did nothing until "October." Dkt. 115 ¶ 15. This vague reference to an entire month could mean that they began further efforts as little as a week before their deadline. They give no explanation for waiting so long before making additional service efforts.

Plaintiffs have used dilatory tactics throughout this action.[17] Their failure to serve Ms. Two Bulls and their misrepresentations regarding why are just the most recent examples. This pattern and their failure to serve Ms. Two Bulls at her publicly-available address demonstrate that Plaintiffs did not act in good faith and did not have a reasonable basis for noncompliance with the rules. *See Peer v. Vilsak*, 563 Fed. Appx. 504, 506 (8th Cir. 2014) (affirming dismissal where plaintiff filed to provide sufficient explanation for failure to timely serve); *Kurka v. Iowa County, Iowa,* 628 F.3d 953, 959-60 (8th Cir. 2010) (affirming district court's decision to dismiss for untimely service given that plaintiff was not diligent and not forthright with the court); *Colasante v. Wells Fargo Corp.*, 81 Fed. Appx. 611,

---

[15] Krystal R Twobulls, https://www.fastpeoplesearch.com/krystal-r-twobulls_id_G-2140414102383445997 (last visited Dec. 21, 2018).

[16] *Id.*

[17] Plaintiffs named Earth First!, a non-entity, as a defendant; attempted to serve a non-party journal; failed to identify and serve the John and Jane Does listed in their complaint despite a court order in August requiring them to do so within 30 days; failed to name parties, including Ms. Two Bulls, for a year despite their very public roles in protests against the Dakota Access Pipeline; and failed to serve those parties within 90 days as required by law. Such dilatory tactics are a known feature of SLAPP suits. *See, e.g.,* What is SLAPP?, https://www.protecttheprotest.org/category/resource-categories/what-is-slapp/ (last visited Dec. 21, 2018) (noting feature of strategic lawsuits against public participation is "[a]ttempts to remain in court as long as possible: Is the plaintiff engaged in procedural maneuvers that appear intended to drag out the case or drive up costs...?").

614 (8th Cir. 2003) (affirming district court's determination that inattention to procedural rules was not excusable neglect). For these reasons, Ms. Two Bulls' Motion to Quash Service should be granted, and, to the extent necessary, this Court should reconsider its Order granting Plaintiffs' request for an extension of time to serve. At the very least this Court should demand direct evidentiary support for: any investigator's belief that Ms. Two Bulls ever resided in Colstrip, where she has never spent a single night; any investigator's belief that all four new Defendants are evading service by specifically living in hotels under assumed or alternate names; and Plaintiffs' failure to Google Ms. Two Bulls' address.

## VI.    Conclusion

For the foregoing reasons, the claims against Defendant Krystal Two Bulls should be dismissed, and/or service upon her should be quashed.

Dated: December 21, 2018                     Respectfully submitted,


/s/ Marco Simons                            /s/ Shayana Kadidal
Marco Simons                                Shayana Kadidal
marco@earthrights.org                       shanek@ccrjustice.org
MacKennan Graziano                          Rachel Meeropol[*]
kenna@earthrights.org                       rachelm@ccrjustice.org
Sean Powers[*]                              Astha Sharma Pokharel[*]
sean@earthrights.org                        asharmapokharel@ccrjustice.org
Rick Herz[*]                                CENTER FOR CONSTITUTIONAL RIGHTS
rick@earthrights.org                        666 Broadway, Floor 7
EARTHRIGHTS INTERNATIONAL                    New York, NY 10012
1612 K Street NW #401                        212-614-6438
Washington, DC 20006
202-466-5188                                Robin S. Martinez, MO #36557/KS #23816
                                            THE MARTINEZ LAW FIRM, LLC
                                            1150 Grand Blvd., Suite 240
                                            Kansas City, Missouri 54106
                                            816.979.1620 telephone
                                            816.398.7021 facsimile
                                            Email: robin.martinez@martinezlaw.net

---

[*] Not admitted to the Bar of the United States District Court for the District of North Dakota.