UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| Energy Transfer Equity, L.P., *et al.*<br><br>    Plaintiffs,<br><br>v.<br><br>Greenpeace International<br>(aka "Stichting Greenpeace Council"), *et al.*<br><br>    Defendants. | Case No. 1:17-cv-00173 |

**KRYSTAL TWO BULLS' REPLY IN SUPPORT OF HER MOTION TO DISMISS UNDER RULE 12(b)(6) AND MOTION TO QUASH IMPROPER SERVICE UNDER RULE 12(b)(5)**

The only well-pled allegations against Defendant Krystal Two Bulls describe lawful calls to protest protected by the First Amendment, as shown in her motion to dismiss, Dkt. 121 ("MTD"). Rather than try to refute this showing—or respond to the argument that the sole allegation of agreement in the complaint, paragraph 126, is conclusory and cannot be credited as true—Plaintiffs' Opposition, Dkt. 124 ("Opp."), misrepresents the allegations in the amended complaint, Dkt. 95 ("AC" or "complaint"), and impermissibly seeks to add new ones through exhibits. Plaintiffs recast their theory of Ms. Two Bulls' involvement, from a press liaison seeking to recruit lawful protesters, to the "leader" who "direct[ed] and control[led]" Red Warrior Camp ("RWC"). Opp. at 19, 21. This U-turn concedes their failure to plead Ms. Two Bulls' liability.

Even if the new materials in Plaintiffs' exhibits could be considered, nothing in them supports a RICO claim, or sustains Plaintiffs' guilt-by-association theory. Under *Claiborne Hardware*, even leading an organization whose members engage in illegal acts is insufficient without specific evidence of intent to further those crimes. None of the allegations or the exhibits attached to the Opposition plausibly suggest Ms. Two Bulls possessed violent or unlawful intent; indeed, far from aiding Plaintiffs, the new exhibits show her eschewing violence for "non-violent direct action."

**I.      The Opposition is improperly based on misrepresentations of the complaint and matters outside the complaint.**

Plaintiffs alleged that Ms. Two Bulls made specific statements that do not promote violence, let alone incite it, AC ¶¶ 38, 41, 127, 130, plus one generic, conclusory conspiracy allegation, *id.* ¶ 126. Opp. at 2-8. Now they falsely claim the complaint includes different allegations entirely; a sampling of these misrepresentations is listed in Exhibit A.

The gist of Plaintiffs' nonexistent allegations is that Ms. Two Bulls was the "leader" of RWC, who "authorized, directed, and ratified [its] activities," Opp. at 23, including exercising "direction and control" over alleged vandalism of Plaintiffs' property. *Id.* at 19. That accusation is entirely

1

unsupported by the complaint. Plaintiffs cite AC ¶¶ 31, 126-27, 131-33, 135, & 141, but these paragraphs do *not* allege Ms. Two Bulls was the leader of RWC, or had any control over RWC activities. Indeed, the made-up allegations *are inconsistent with the theory set forth in the complaint*: that by issuing calls for lawful protest, Ms. Two Bulls was "provid[ing] cover for" the illegal actions of others. AC ¶¶ 38, 41; MTD at 3. And while the complaint labels Cody Hall "a leader" of RWC, AC ¶ 30, the next paragraph, naming Ms. Two Bulls, *does not* name her as one.[1] After anointing her "leader" of RWC, Plaintiffs state that she "produced or authorized the publication of [the] videos" described at AC ¶¶ 131-32, and that these videos were intended to—and did—incite violence. Opp. at 8 (citing AC ¶¶ 31, 41); *see also* Opp. at 24 (citing AC ¶¶131-33, 135, 141). But these paragraphs attribute the videos to RWC's "official media team, the Women Warriors Media Cooperative, led by Defendant [*sic*] Manuel," *not* to Ms. Two Bulls.[2]

Plaintiffs' theory that Ms. Two Bulls led RWC and intended or authorized violence is derived primarily from an online article attached as an exhibit to the Opposition. Dkt. 124-1. Such extraneous material outside the complaint cannot defeat a motion to dismiss. *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992). Even if it could be considered, the article—co-authored by Ms. Two Bulls and two others—merely has a biographical note appended that states that she "is a leader and media

---

[1] Plaintiffs also imply that Ms. Two Bulls created RWC, referring to it as "her group," Opp. at 24, and claiming that she with others "organized" it, Opp. at 7. Ms. Two Bulls is elsewhere described as "co-head" with Cody Hall, Opp. at 15; *cf. id.* at 2, 21 ("a leader"). Where Plaintiffs bother to provide citations, they provide no support. *See* Opp. at 15 (citing AC ¶¶ 126-27 for proposition that Ms. Two Bulls and Cody Hall are "co-heads" of RWC); in fact, paragraph 127 describes Ms. Two Bulls as a "Red Warrior Camp representative" and Cody Hall as RWC's "leader and organizer." Moreover, Plaintiffs presume, without supporting factual allegations, that RWC was sufficiently organized to be controlled by any individual. That is unclear from the complaint, which variously describes RWC as an "encampment", AC ¶ 30, a loose "coalition," a "front," *id.* ¶ 38, a "group of eco-terrorists," *id.* ¶ 67, a "sect" within another group, *id.* ¶ 116, or a group of self-identified individuals, *id.* ¶ 118.

[2] Even if Plaintiffs had properly alleged that Ms. Two Bulls produced or authorized the videos, nothing in these videos could plausibly be incitement under *Brandenburg. Infra* at 9.

2

coordinator at the Red Warrior Camp." Dkt. 124-1 at 5. The article does not suggest that Ms. Two Bulls *actually* directed any violence or *specifically* authorized it. Plaintiffs neither allege nor argue facts showing that RWC had any formal structure at all, let alone that every "leader" was in a position of responsibility over every act taken by all who affiliated themselves with the Camp. And even if Plaintiffs had pled that Ms. Two Bulls was *the* "leader" of a hierarchically-structured organization that held illegal goals, that is not enough; *Claiborne Hardware* dismissed claims against the *actual* leader of a hierarchically-structured organization. *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 920 (1982) ("[I]t is necessary to establish that the group itself possessed unlawful goals *and* that the individual held a specific intent to further those illegal aims." (Emphasis added)).

Plaintiffs cite the same article's call for "militant direct action" as evidence of Ms. Two Bulls' specific intent, Opp. at 2 (quoting Dkt. 124-1 at 4), but they excise the article's next sentence, which refers to "non-violent direct action." Advocating militant non-violent direct action—a concept developed by Gandhi and Martin Luther King, Jr.[3]—is not evidence of illegal intent, nor is advocating "[d]ivestment and reinvestment," the specific tactics referred to in Ms. Two Bulls' call to "attack this Black Snake . . . with a diversity of tactics." Dkt. 124-5. Far more facts are needed to show that a defendant – who did not partake in violence herself – specifically intended to support the violence of (unnamed) third parties. *Cf. Sines v. Kessler*, 324 F. Supp. 3d 765, 783-95 (W.D. Va. 2018) (detailed facts including actual participation in violence were needed to support plausible conspiracy allegations of racially motivated violence); *Doe v. McKesson*, 272 F. Supp. 3d 841, 847

---

[3] "Direct action" refers broadly to activism directed against a problem itself, rather than asking policymakers or others to act. *E.g.*, https://en.wikipedia.org/wiki/Direct_action. King famously used the term in his 1963 *Letter from a Birmingham Jail* ("Nonviolent direct action . . . seeks so to dramatize the issue that it can no longer be ignored.."), *available at* https://goo.gl/qmL7VT, and also advocated "militant non-violence." *E.g. "The Other America"* (speech to Gross Pointe High School, Mar. 15, 1968) ("I've been searching for a long time for an alternative to riots on the one hand and timid supplication for justice on the other and I think that alternative is found in militant massive non-violence."), *available at* https://goo.gl/Qy9wd5.

3

(M.D. La. 2017) (allegations that defendant "led" protest and was "seen and heard giving orders" were insufficient to plead incitement or authorization of violence by other members of protest); *id.* at 852-53 (defendant calling on "people [to] take to the streets as a last resort" was not a basis for liability).

## II.   Plaintiffs fail to establish the many missing elements of their RICO claims.

While the Opposition clarifies that Plaintiffs' RICO theory is strikingly broad—Ms. Two Bulls is responsible for *any alleged* acts of *any* un-named individual allegedly associated with Red Warrior Camp—it fails to refute the many flaws in Plaintiffs' RICO claim, which Ms. Two Bulls exposed in her motion to dismiss. Plaintiffs gesture towards theories of agency and conspiracy, but do not point to specific facts or non-conclusory allegations suggesting an agreement to commit the alleged illegal activity or Ms. Two Bulls' control over the unnamed individuals who allegedly committed those acts. *Sines*, 324 F. Supp. 3d at 784 ("Plaintiffs must allege each Defendant entered into an agreement with a specific co-conspirator to engage in racially motivated violence . . . .").

Ms. Two Bulls is not liable under 18 U.S.C. § 1962(c). **First**, Plaintiffs allege no coherent enterprise. The Opposition abandons the complaint's theory that the "enterprise" was intended to drive up donations, *compare* MTD at 12 *with* Opp. at 15. The unifying goals they now suggest do not suffice. If the goal was to harm Plaintiffs and DAPL through fraud and property destruction, Opp. at 15, then Plaintiffs have not pled a proper RICO enterprise, as it cannot be "essentially defined" by the racketeering activity. *Stephens, Inc. v. Geldermann, Inc.*, 962 F.2d 808, 816 (8th Cir. 1992).[4] If the enterprise's goal was a broader "anti-development, anti-fossil fuel agenda," Opp. at 15, Plaintiffs have not pled a proper RICO enterprise, because there must be "some sort of discrete existence and

---

[4]   A RICO enterprise organized around a fixed event or moment in time is also inconsistent with the statute's purposes. *Cf. Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) ("RICO does not cover all instances of wrongdoing. Rather, it is a unique cause of action is concerned with eradicating organized, long-term, habitual criminal activity." (Internal quotations omitted)).

structure uniting its members in a cognizable group." *Nelson v. Nelson* 833 F.3d 965, 968 (8th Cir. 2016). Plaintiffs have not pled facts showing that this broader "anti-development, anti-fossil fuel" enterprise had a structure, or what roles different alleged enterprise members supposedly played.

**Second**, Plaintiffs have failed to show that Ms. Two Bulls directed the alleged enterprise. MTD at 11. Plaintiffs' only argument—that Ms. Two Bulls' alleged role in RWC shows that she had a role in directing the enterprise, Opp. at 16—fails both because they have not pled she led RWC, for the reasons noted above, and because RWC is not the alleged enterprise. *Nelson*, 833 F.3d at 969 (services for a member of the enterprise are not "automatically" services for the enterprise itself). Indeed, Plaintiffs as much as admit that she was not acting for the enterprise, by arguing that Ms. Two Bulls' efforts were in service of "Red Warrior Camp's agenda." Opp. at 15.

**Third,** Plaintiffs have not shown racketeering activity by Ms. Two Bulls. Even if it were appropriate to name the criminal statutes she allegedly violated for the first time in the Opposition, they have not shown plausible violations of these late-named predicate acts. Plaintiffs argue that "Red Warrior Camp violated the Patriot Act by executing acts of arson and bombings of federal lands and property used in interstate commerce," and that Ms. Two Bulls can be held liable for this violation because she "directed Red Warrior Camp's actions." Opp. at 18. But again, Plaintiffs did not actually allege any such direction by Ms. Two Bulls. And Plaintiffs have only conclusory allegations that "Red Warrior Camp" was responsible for bombings or arson, AC ¶¶ 76, 142, with no detail identifying when, where, what was targeted, or who actually carried it out. *Cf. Rini v. Zwirn*, 886 F. Supp. 270, 299 (E.D.N.Y. 1995) ("Pleadings which fail to indicate the persons, dates and methods of extortion . . . are plainly inadequate to support a civil RICO predicate act."). Plaintiffs make no factual allegations that Ms. Two Bulls knew or intended to further *any* criminal acts, much less "knowing," "inten[tional]" provision of support for any of the specific federal terrorism offenses listed in 18 U.S.C. § 2339A(a)—the material support provision they cite for the first time in

5

their Opposition as a predicate act.

**Fourth,** even if Plaintiffs alleged predicate acts, Ms. Two Bulls' conduct involved only a single event, over a matter of weeks or months, and "predicate acts extending over a few weeks or months . . . do not satisfy [RICO's "pattern"] requirement." *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 242 (1989). A pattern involves criminal acts "over a substantial period of time" or a "specific threat of repetition extending indefinitely into the future." *Id. See also Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000) (involvement in "one scheme with a singular objective" refutes pattern). Plaintiffs could not show *Ms. Two Bulls'* conduct meets this test; their argument about the conduct of the "enterprise" is irrelevant. Opp. at 17.

**Fifth**, Plaintiffs have not shown that they "suffered an injury proximately caused by [Ms. Two Bulls'] violation of § 1962." *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 556 (S.D.N.Y. 2014). There are no facts suggesting Ms. Two Bulls told anyone to commit violence or that anyone committed violence *because* of Ms. Two Bulls; Plaintiffs completely ignore the *intervening* decisions of the third-parties who allegedly committed criminal acts. MTD at 14; *Claiborne Hardware*, 458 U.S. at 924-27.

As for RICO's conspiracy section, 18 U.S.C. § 1962(d), Plaintiffs simply assert that Ms. Two Bulls is liable as a conspirator. But they must *show* a specific agreement whereby Ms. Two Bulls agreed to commit criminal predicate acts herself, or knew and intended for someone else to do so. *Morin v. Trupin*, 747 F. Supp. 1051, 1067 (S.D.N.Y. 1990). The only reference to any "agreement" at all is AC ¶ 126, and Plaintiffs do not even attempt to deny that this is a conclusory allegation that does not meet the *Twombly/Iqbal* standard. MTD at 17. Alleging a "mere agreement to commit the predicate acts is not sufficient to support a charge of conspiracy under § 1962(d)." *Glessner v. Kenny*, 952 F.2d 702, 714 (3d Cir. 1991) (internal quotation marks omitted).

### III.     No state-law claim is adequately pled.

Plaintiffs admit Ms. Two Bulls can only be held liable for trespass if she "intentionally"

caused someone else to trespass. Opp. at 24. To meet this standard, Plaintiffs pretend that the complaint "alleges that Ms. Two Bulls recruited individuals, raised funds and supplies, organized, and otherwise aided and abetted [RWC]'s trespass on Energy Transfer's construction sites to obstruct construction." Opp. at 24 (citing ¶¶31, 38-41, 120-27, 130-33, 135, 141). The cited paragraphs allege no such thing. Not even the conclusory conspiracy allegation of ¶ 126 suggests that Ms. Two Bulls intended for anyone to trespass. Plaintiffs have not pled intent or causation. Similarly, Plaintiffs admit that common law conspiracy requires pleading facts that plausibly suggest "[a] meeting of the minds on the object or course of the action." Opp. at 25. As with RICO conspiracy, their bare allegation of agreement is insufficient.

## IV.     All of Ms. Two Bulls' conduct is wholly protected by the First Amendment.

Plaintiffs argue that "acts of trespass, violence, and destruction of . . . property are not protected by the First Amendment." Opp. at 21. But there are no allegations that Ms. Two Bulls did *any* of those things. Aside from the conclusory statement in AC ¶ 126, Plaintiffs allege only that Ms. Two Bulls made lawful calls for protest. Their attempt to attribute all acts of trespass and violence that allegedly occurred at those protests to her on this basis clearly fails under *Claiborne Hardware*.[5]

Plaintiffs wrongly suggest that their allegation that Ms. Two Bulls acted in violation of RICO and other state laws strips her of First Amendment protections. To the contrary, the First Amendment provides a defense to any claim, including RICO. Thus, in *Nat'l Org. for Women, Inc. v. Scheidler*, 510 U.S. 249 (1994), the Supreme Court considered RICO allegations of a nationwide conspiracy to shut down abortion clinics through a pattern of racketeering activity. The potential

---

[5]     Even if it were adequately pled, the agreement alleged in ¶ 126 does not strip Ms. Two Bulls of First Amendment protections. Her petitioning activity–for example, advocacy directed at the Army Corps of Engineers to stop pipeline construction–cannot be the basis of liability, even when done as part of a broader unlawful scheme. *R. R. Presidents Conference v. Noerr Motor Freight*, Inc., 365 U.S. 127 (1961); *United Mine Workers of Am. v. Pennington*, 381 U.S. 657 (1965). *See also Sosa v. DIRECTV, Inc.*, 437 F.3d 923 (9th Cir. 2006) (applying *Noerr-Pennington* doctrine to RICO claim).

7

applicability of a First Amendment defense was not presented, but Justice Souter's concurrence clarified that "[c]onduct alleged to amount to . . . RICO predicate acts may turn out to be fully protected First Amendment activity, entitling the defendant to dismissal on that basis." *Id.* at 264. The district court subsequently struck all complaint allegations that pertained to protected speech alone, even though they were alleged to be one component of a wider conspiracy. *See Nat'l Organization for Women, Inc. v. Scheidler ("NOW II")*, 897 F. Supp. 1047, 1083-88 (N.D. Ill. 1995). *See also Savage v. Council on Am.-Islamic Relations, Inc.*, No. C 07-6076 SI, 2008 WL 2951281, at *10-12 (N.D. Cal. July 25, 2008) (First Amendment protects defendants' speech-related activities even if defendants were alleged to be part of a worldwide RICO conspiracy with terrorist organizations).[6]

Plaintiffs cite a handful of cases for the notion that speech can sometimes give rise to liability, Opp. at 22, but those cases are inapposite. Ms. Two Bulls did not solicit illegal activity, *Goodwin v. United States,* 869 F.3d 636 (8th Cir. 2017), or intentionally abet a crime with detailed instructions on its commission and concealment. *Rice v. Paladin, Inc.,* 128 F.3d 233, 245, 250-51, 266 (4th Cir. 1997). Similarly, *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949), involved picketing carried out for a "sole, unlawful immediate objective," while Ms. Two Bulls is only alleged to have published calls for protest. Moreover, while *Giboney* rejected the argument that expression should not be "restrained because of the possibility of separating the . . . conduct into illegal and legal parts," *id.*, *Claiborne*'s requirement that liability can only be imposed when an individual holds "a specific intent to further… illegal aims" limits this holding. 458 U.S. at 920. Plaintiffs' allegations against Ms. Two Bulls do not fall in the extremely narrow exceptions—for speech that purposefully aids or abets or is itself criminal conduct—when none of their allegations against Ms. Two Bulls

---

[6] Plaintiffs cite *United States v. Larson* for the proposition that RICO conspiracies do "not implicate the First Amendment." Opp. at 22 (*citing* 807 F. Supp. 2d 142, 165 (W.D.N.Y. 2011), *aff'd sub nom. United States v. Kirsch*, 903 F.3d 213 (2d Cir. 2018)). But *Larson* held no such thing; the Court merely denied dismissal on the pleadings, noting the absence of sufficient evidence to determine whether the *well-pled allegations* of extortion and conspiracy involved protected conduct. *Id.* at 165.

8

pertain to unlawful conduct.

Finally, while Plaintiffs are correct that incitement of imminent lawlessness or "preparing a group for violent action and steeling it to such action" may lead to liability, *Brandenburg v. Ohio*, 395 U.S. 444, 448 (1969) (internal quotation marks omitted), their allegations do not meet that standard. MTD at 4-5. As noted above, neither their complaint nor their extraneous exhibits shows facts that Ms. Two Bulls directed or called for imminent illegal activity.[7] Every specific fact pertains only to protected speech and association; all claims against Ms. Two Bulls must be dismissed.

## V.     Plaintiffs fail to explain their lies and delay; service must be quashed.

Plaintiffs present no evidence to rebut the showing that they misrepresented material facts in seeking an extension of service. *Cf.* Dkt. 121-1. Indeed, they lied about Ms. Two Bulls again when seeking a second extension of time to serve other Defendants. *Compare* Dkt. 120 (claiming that Ms. Two Bulls "acknowledged that she had been evading service" when she was served) *with* Dkt. 122-1 (she did not). Nor do Plaintiffs attempt to justify their lack of diligence between August 7 and sometime in October. Plaintiffs' own new exhibits confirm that Ms. Two Bulls' publicly available address during the service period was in her tiny hometown of Lame Deer, Dkt. 124-7 & 124-2; yet they do not explain why they failed to look for her there.

Were Plaintiffs' assertions true, one would expect them to provide an affidavit from their investigator or process server. *See e.g.* Dkt 115-1 & 115-2 (process server affidavits for other individual defendants). Counsel's unsworn assertion that the hearsay they previously submitted "accurately reflect[s] the facts conveyed by these investigators to Plaintiffs' counsel," Opp. at 25, does not even acknowledge the content of the lie they attempt to defend and is unconvincing.

That Ms. Two Bulls knew that she had been named in this suit does not excuse Plaintiffs'

---

[7]     Incitement also fails because none of the unlawful incidents alleged was "closely linked in time and place" to the communique or the call to action. *NOW II,* 897 F. Supp. 1047 at 1086.

9

lies and negligence. *See Adams v. AlliedSignal Gen. Aviation Avionics*, 74 F.3d 882, 885-86 (8th Cir. 1996) ("if [defendant] was improperly served, the district court lacked jurisdiction over that defendant whether or not it had actual notice of the lawsuit"). Nor are Plaintiffs saved by their claim that the Motion to Quash is "moot" because they have attempted even more untimely service on Ms. Two Bulls by another means.

While Rule 4(m) dismissals are ordinarily without prejudice, the Court can and should issue stronger remedies, especially in the face of Plaintiffs' utter lack of explanation for and misrepresentations about their failure to pursue service diligently. Coupled with their flouting of the Court's Orders to plead "concise and direct allegations against <u>each</u> named Defendant," Dkt. 88 at 5, and "have evidentiary support for the factual contentions," Dkt. 94 at 1, Plaintiffs' conduct allows the Court to invoke Rule 41(b) to dismiss the complaint with prejudice for lack of prosecution, failure to comply with the rules, and violation of court orders. *See, e.g., Boyle v. Am. Auto Serv., Inc.*, 571 F.3d 734, 743 (8th Cir. 2009). This is not the first time these Plaintiffs have made such misrepresentations,[8] removing any defense of good faith or excusable neglect.

## CONCLUSION

This Court has already given Plaintiffs the chance to amend and specifically allege liability against each defendant. They have failed to do so with respect to Ms. Two Bulls. And the fact that even their improper reliance on extraneous materials would be inadequate if credited shows that any amendment would be futile. The claims against Ms. Two Bulls should be dismissed with prejudice.

---

[8] When Plaintiffs sought to explain their failure to timely serve Earth First!, they claimed that three "members" of Earth First! went "underground" to evade service. Dkt. 89 at 8. This was also untrue. Grayson Bauer Flory was represented by counsel, and had filed a declaration with the Court, and the others made public statements about their location or were listed in the White Pages. *See* Dkt. 80-1; Andrew Kaplan, "Alachua County Man Trains Focus on Pipeline's Risk for Environment," Gatehouse News, 2018, available at http://gatehousenews.com/in-the-path-of-the-pipeline/protests/ (mentioning Tsolkas' move to Gainesville the prior year); https://www.whitepages.com/name/Marion-C-Dejong/Boynton-Beach-FL/qj9bdq4.

Dated: January 25, 2019                                    Respectfully submitted,

/s/ *MacKennan Graziano*                           /s/ *Shayana Kadidal*
MacKennan Graziano                                  Shayana Kadidal
kenna@earthrights.org                               shanek@ccrjustice.org
Marco Simons                                        Rachel Meeropol[*]
marco@earthrights.org                               rachelm@ccrjustice.org
Sean Powers                                         Astha Sharma Pokharel[*]
sean@earthrights.org                                asharmapokharel@ccrjustice.org

EARTHRIGHTS INTERNATIONAL              CENTER FOR CONSTITUTIONAL RIGHTS
1612 K Street NW, Suite 401                         666 Broadway, Floor 7
Washington, DC 20006                                New York, NY 20012
202-466-5188                                        212-614-6438

                                                    Robin S. Martinez
                                                    rmartinez@mtrlaw.net
                                                    MARTINEZ TOBIN & REDMAN LLC
                                                    1828 Swift, Suite 101
                                                    North Kansas City, Missouri 64116
                                                    816-979-1620

---

[*] Not admitted to the Bar of the United States District Court for the District of North Dakota.

11